Case NO. 2023-2347

**UNITED STATES COURT OF APPEALs**

**FOR THE FEDERAL CIRCUIT**

**RECEIVED**

DEC 1 4 2023

**NAZIR KHAN**

United States Court of Appeals
For the Federal Circuit

Plaintiff-Appellant

**IFTIKHAR KHAN**

PLAINTIFF

**ARTIVION INC;**

Defendant-Appellee

2023-2347

On appeal from the United States District Court for the Northern District of Georgia

In civil action number 1:21-CV-2291-SCJ

District Court Judge Steve C. Jones

Corrected Brief of Plaintiff-appellant with Appendix

Dated:

Oral Hearing Requested:

Nazir Khan

150 Glenmora Drive

Burr Ridge

60527

Cell: 312-590-0589

Email: Nazirkhanmd2003@yahoo.com

Infringement Claims of patent US 8.747,344

1. Literal Claim 13 of patent 344 under 35 U.S.C. 112 para (f) based on identical function of Claimed invention and Accused HeRO Graft and Structural equivalent §112(f)

2. Direct infringements under 35 U.S.C. §271(a)

3. Induced infringement under 35 U.S.C §271(b)

4. Contributory infringement under 35 U.S.C §271(c)

5. Willful infringement

## TABLE OF CONTENTS

BACKGROUND..................................................................................................................5

JURISDICTIONAL STATEMENT.....................................................................................1

TIMELINESS OF APPEAL...............................................................................................1

STATEMENT OF ISSUES................................................................................................1

STATEMENT OF THE CASE...........................................................................................5

SUMMARY OF ARGUMENT..........................................................................................2

DISCUSSION/ARGUMENT...........................................................................................13

INFRINGEMENT CLAIMS.......................................................................................13-20

CONCLUSION................................................................................................................25

RELIEF......................................................................................................................25-26

# TABLE OF AUTHORITIES

**Statutes**

35 U.S.C. 112 para (f)...................................................................................1, 9, 4, 13, 14, 16

35 U.S.C. 271 (a)...........................................................................................1,4, 6, 18, 25

35 U.S.C. 271 (b)..........................................................................................2,4, 6, 19, 25

35 U.S.C. 271 (c)....................................................................................2,4, 6, 10, 19, 25, 26

35 U.S.C. 112 para 1............................................................................................22

*Odetics Inc. v. Storage Tech Corp*, 185F.3d 1259,1267,51.USPQ2d 1229(Fed.cir 1999)................16

*Pennwalt Corp v Durand-wayland-waylandinc,* 833F.2d 931,934,4USPQ2d 1737,1739(Fed

cir1987)..................................................................................................16

Violation of Plaintiff's Constitutional Rights under Art1 clause8 sec8 and 14th Amendment of

Constitution due process clause.....................................................................................22

*Raniere vs. Microsoft Corp. 887 F.3d 1298 (Fed. Cir. 2018)*.........................................24, 26

*Fiber, LLC. V. Ciena Corp., No. 2019-1005 (Fed. Cir. Nov. 21, 2019)*....................................25

**Certificate of Interest**

**Party of interest: Nazir Khan**

**STATEMENT OF RELATED CASES**

One related case is from the United States District Court for the District of Utah in case No 2:21-cv-00337-HCN-CMR. Identical infringement claims of patent US 8,747,344 B2. Case is docketed in the Federal Circuit Court as 2023-2329 on appeal.

**JURISDICTIONAL STATEMENT**

Plaintiff has Jurisdiction in the District Court of Georgia Atlanta Division under 28 U.S.C. §1338 regarding patent infringement case. Federal Circuit Court of Appeals has Jurisdiction filing in the United States under 28 U.S.C. §1295(a)(1). Filing date of timeliness of appeal. Notice of appeal was filed on 08/18/2023 in the United States Postal Office and was docketed on 08/21/2023 Dkt. No: 50. The appeals docket No.: 2023-2347 was assigned on August 31, 2023.

to District Court's judgment order 46-47 dated 08/04/2023.

**STATEMENT OF ISSUES PRESENTED FOR REVIEW**

A) Infringement Claims of patent US 8.747,344

6. Literal Claim 13 of patent 344 under 35 U.S.C. 112 para (f) based on identical function of Claimed invention and Accused HeRO Graft and Structural equivalent §112(f)

7. Direct infringements under 35 U.S.C. §271(a)

1

8.  Induced infringement under 35 U.S.C §271(b)

9.  Contributory infringement under 35 U.S.C §271(c)

10. Willful infringement

11. Sanctions under 35 U.S.C §285 deferred by the District Court (Dkt 75 entered on 11/20/2023)

12. Violations constitutional rights under Art 1 clause 8, sec 8, and 14th amendment of constitution due process clause

13. Doctrine of Equivalent estoppel

14. Production of Document under Fed R. Civ P.34 of patent on HeRO Graft and number of devices where Cryolife, Inc. sold from December 2008 until May 2, 2016. Doc. No. [15], 1. Denied as premature

## SUMMARY OF ARGUMENTS

1.  Court's Judgment Order DKT 28   field 8/4/023 seeAppx18 granting plaintiff's complaint in part on plaintiff's claims on literal infringement claim 13 of patent 344 and Direct infringement claim, motion to dismiss filed by Cryolife, Inc. (Doc No12) was granted on induced and willful infringement claims without prejudice, Court ordered see Appx20, plaintiff to replead all claims in amended complaint. Plaintiff complied filed  amended

2

complaint with change of caption replacing Cry0lifeincinc with Artivion, Inc. see DKT 31 ,Appx86.

2. The amended complaint (D0C 31) was dismissed by the District Court on the basis of Collateral estoppel ,in related litigation of Utah court in case No2:21-cv-00337-HCN-CMR Where plaintiffs amended complaint 15 with all claims were dismissed on the ground Doctrine of equivalent estoppel .Doctrine of equivalent estoppel did not exist as is evident Under supreme court ruling in Festo ,Estoppel arises only if Plaintiff amends complaint ,surrender the equivalent to over come Prior Art and uses defendants equivalent for the sake of patentability., Compiling with patent act 35USC112para(a) Here plaintiff had Limitation of Cuff Connector disposed about Connecting Graft and venous out flow catheter that goes in to Right Atrium    see Diagram Exhibit A Fig1 Appx50 and Defendants Prior art of Squitieri had a limitation of Metallic Connector Disposed in Connecting Graft and venous out flow catheter which goes in to vein see Exhibit A Fig2 Appx51 ,plain tiff did not surrender to Examiners Rejection of Squitieri rejection of **Disposed in rejection**, appealed to united states patent and Trade Markoffice Trial patent Trial and appeals Board who reversed examiners rejection of s based on Squitieri Disposed in limitation ,a all claims1-20 granted seeAppx78. Therefore Prosecution history of estoppel did not exist   Courts dismissal amended complaint on the basis of Collateral estoppel was Wrong, District Court erred in its decision with mis use of discretionary standard ,this court should reverse decision of dismissal Amende complain (Doc 31 ). Allow all five infringement claims of amended complaint namely Literal infringement claim of patent344 under 35

3

USC112para(f),Direct infringement claim under 35USC 271(a) induced

infringement claim under 35USC271(b),Contributory Infringement Claim under

35USC 271 (c) and willful infringement claim

3 Plaintiff s motion for Reconsideration Appx55 was denied by district court

denied the motion on the basis of Collateral estoppel ,Court erred in its decision with

misuse of discretionary authority Collateral estoppel was wrong this Court should

reverse decision on Motion for reconsideration (DOC 55) Appx33.


4    Plaintiff's Constitutional Violations under Art1 clause8 section8, and 4th amendment of

Constitution. Were Violated by Artivion inc, patent 344 was granted by the office of

Director patent and trade mark office as a new and Useful Art with exclusive Rights till

2028 from fillining date of parent paten 591 namely 3/29/ 20o4. Artivion inc (formerly

called Cryolife inc started manufacturing Accused HeRO Graft from may 15th 2012 till

May 4th 2016 when it sold the accused Product to Merit Medical inc . Cryo Life Inc ( now

called Artivion inc) did not reduce prior Art of squitieri to practice where venous out

flow catheter is in the vein, unlike venous out flow catheter o Claim 13 0f patent 344

where venous out flow catheter is in Right Atrium avoiding 80% Shunt failure . Cryolife

stealed ,claimed patent 344 venous out flow catheter in the construction of Accused

HeRO graft, HeRo graft I an unpatented copied Claim 13 of patent 344  Cryo life made

,sold Herograft during patent term without plaintiffs permission thus violating plaintiffs

constitutional rights under Art 1 clause8,sec 8 of the constitution.Patent344 is

aproperty right under clause 8 of constitution  plaintiffs were deprived of property

4

rights under14 th Amendment of constitution, Court .This court should damage
Artivion inc under its inherent power for stealing patent 344 and sanction Defendant
Attorney KATHRYN A VANCE,KATRINA MQUICKER for helping company Artivion Inc in
stealing patent 344.for an amount this court deems fit

5   Artivion has no patent on Accused HeRO graft and therefore has no standing . District
Court Judge Steven C.Jones should have dismissed their motions and sanction
Defendant under 35USC §285. See United states Court of appeals decision in Raniere V.
Microsott  887F.3d 1298(Fed.cir,2018) Affirming  Texas District Courts ,decision for
sanctioning plaintiff Raniere under §285 for having no patent ,no s

.

### STATEMENT OF THE CASE

### BACKGROUND

Plaintiff filed a patent infringement lawsuit in the United States District Court of Georgia
case No.: 1:21-cv-02291-SCJ on 06/01/21 alleging five infringement claims of Patent No.:
US 8,747,344 B2 issued on June 10th, 2014. This patent is a continuation patent and is in
suite. . The beneficial effect is from March 29th, 2004, the date of filling patent 591. The
patent term given by the United States Patent and Trademark Office extends from March
29, 2004 till 2028. In the complaint Document 1 filed on6/1/2021 see Appx81, also in

5

amended complaint 31seeAppx86   field on9/01/2022, plaintiff alleged five

infringement claims:

    I.    Claim I. Literal infringement of Patent 344, claim 13 under 35. U.S.C. §112,

        para 6. Seeking relief of $6,000,000 from CryoLife, Inc.

    II.    Claim II. Direct infringement under 35 U.S.C. §271(a) seeking relief of

        $2,000,000 from CryoLife, Inc.

    III.    Claim III. Induced infringement under 35 U.S.C. §271(b). Plaintiff seeking

        relief of $2,000,000.

    IV.    Claim IV. . Intentional copying in violation of 35 U.S.C. §271(c). Plaintiff

        seeking relief of $1,000,000.

    V.    Willful infringement of Patent 344. Plaintiff seeks from CryoLife, Inc. damages

        of $1,000,000.

Defendant CryoLife, Inc. see Dkt. 12 filed on 09/03/2021 see Appx83   filed a motion to dismiss

for failure to state a claim with Brief in Support by CryoLife, Inc. The District Court Judge in its

decision Dkt. 28 filed on 08/04 2022 see APPX18    allowed claim I and II but did not allow III, IV

and V claims on the basis some procedural defect and directed the plaintiff to file an amended

the complaint with the name change from CryoLife, Inc. to Artivion, Inc., see Court order

enteredon8/4/2022 Appx20 .. Plaintiff in compliance filed an amended complaint Dkt. 31 on

09/01/2022 see Appx86. The amended complaint {35-3}    was denied on 08/04/ 2023

seeAppx29. on the ground of **collateral estoppel.** Court stated, As the collateral estoppel issue

is determinative, the Court declines to consider the remaining grounds of defendant's motion. The case stands dismissed with prejudiceseeAppx29. Plaintiff timely filed Notice of Appeal on 08/18/2023 docketed on 08/21/2023 Dkt.50 see Appx89. The case remains deactivated pending the judgement on the plaintiff's Motion for Reconsideration  DKT 55 Appx90, judgement Order , see USCA Order 58 filed on 08/31/2023 Appx90. The case will be reactivated upon entry of the order disposing of the last such outstanding motion re: 50. the Court denied Motion for Reconsideration, see court order entered on oct13th 2023 see Appx33, Appx34 and on 10/16/2023 documents were forwarded to USCA re 68 USCA. Plaintiff filed timely notice appeal for the Appeals Court review.on8/21//2023DKT50 Appx89.

## COMPARISION OF DIFFERENT DEVICES

A) **Claimed invention (Patent 344)** SEE exhibit A Fig I of Complaint 1 Appx50, also specification patent sheet 2of3 US8,747 ,344 B2 Fig2, Appx62.  see Also  Comparison of Different devices  Appx79

Claimed device Khan Hybrid Arteriovenous shunt of patent 344 is a Hemodialysis device, used for cleaning blood of impurities, toxins in Chronic Kidney failure patients. Has three parts. A Graft, Cuffed connector Disposed about and venous out flow catheter,  see  FIG I, FIG 2 of specification patent 344  Fig 1 Appx61,Appx62  see also specification    of patent 344 Appx 60 at col 4line 30-65 Appx 65.  )    A Graft connected to an artery (2-8mmin diameter preferably 6mm) represented by No 11 in specification, **a Cuff Connector represented as No13 in specification Disposed about (see col 4, line50-55,) Appx65, the catheter should be sufficient**

7

**to allow for the proper fit of the catheter in in diameter cuff 13)** connecting Graft and Venous

outflow Catheter represented by No12 in specification, venous out flow catheter goes in to

Right Atrium OF the heart. Disposed about limitation is present in specification.

### GENESIS OF Khan Hybrid

### ARTERIOVENOUS SHUNTPATENT (344) Why it was invented and patented.

**Answer is provided below**

"In classical Arteriovenous shunts developed in 1976 for hemodialysis, see Fig 1v Appx57,

which are used today, Graft is Connected to an artery and to vein directly without connector,

the vein wall gets damaged from high arterial pressure, vein reacts causing neointimal

Hyperplasia, stenosis, clotting of the vein and Shunt failure 80 % of cases. This prompted

plaintiffs Iftikhar khan and Nazir khan ,two Illinois  physicians  to invent Khan Hybrid

Arteriovenous  shunt **where Venous out flow catheter represented   by No 12 of claimed**

**invention see specification Fig 2 Appx62  is used to By passes vein ,catheter goes through the**

**vein in to Rt Atrium, the blood Flows in to Right  Atrium without coming in contact with vein**

**wall  thereby avoiding 80 %  shunt failure see**  specification col1  line 30-35 Appx64 also,Fig2

Col 5 line 45-65 specification of patent us 8,747 344B2 issued on june10,2014"). Cuff is disposed

about inlet end of venous outflow catheter is shown in specification at col 4 line 50-55, where it

says the  "catheter diameter should be sufficient to allow for  the proper fit of the catheter in

the cuff 13", see Appx65, thus specification shows that cuff is disposed about connecting graft

and venous out flow catheter. **Method of operation**, an act of dialysis to remove impurities

from Kidney failure patients, **see FIG 2 col 5   line 45-65 specifications of patent 344.**  Appx66,

8

also parts Fig2, Appx62. showing Khan Hybrid Arteriovenous shunt (claimed invention device consists of Graft, venous outflow catheter going in to Right atrium of Heart No 14 and two are connected a cuff connector disposed about (see specification col 4 line50-55). See Fig 2 specification, June10,2014 sheet 2of 3, US,8,747,344B2, diagrammatically depicted in (Exhibit A FIG 1) see Appx50

**ACT of Hemodialysis Described by corresponding structure Fig 2 in specification of patent 344 at col 5 line 45-65 in the upper extremity. Appx66**

The Impure pure blood is taken from the graft by dialysis cannula (needle with attached tubing) to the Dialysis Machine, after purification the purified blood is taken to the Graft where it is transmitted via a cuff connector to venous out flow catheter which deposits the blood in the Right Atrium thus avoiding 80 % Shunt failure. **The core of the Invention is direct Flow of Blood from the Graft to Rt Atrium to avoid 80% Shunt failure,** thereby maintaining long patency of the Shunt This is achieved by Venous out flow No 11 of claimed invention.

**B)  Prior Art of Squitieri device** (see Exhibit A FIG 2 Appx51) and also see chart of comparison devices see Appx78, Squitieri's patents US 6,582,409, and US RE 44,639 E Abstracts of the invention, Device has 3 parts: Graft, Metallic disposed in  connector,  venous out flow catheter that goes in to vein    **the blood flows in to the vein** where it will have 80% failure Rate. Artivion, Inc. is an assignee of prior Art of Squitieri, This art is indefinite under  35 USC para 1 and para2,one skilled in the Art will easily infer while reading specification that claimed structure  cannot be made  under written  description ,requirement, enable requirement   and best mode requirement  because it lacks the Venous out flow component, of claimed invention

No11.The graft and venous out flow catheter are connected by a metallic connector which is **disposed in** see exhibit A FIG 2 Apxx51.theconnector transmits blood from the Graft to Venous out flow catheter **to be deposited in to vein**

C **Accused device HeRO Graft of Artivion, Inc.** see Exhibit A Fig 3 Appx52, also 3parts HeRO Graft Appx53 ,depicting 3 parts of HeRO Graft produced by Artivion, Inc. at Web site for patient information) .

HeRO graft   ( Hemodialysis Rapid Out flow ) is a Hemodialysis apparatus, performing function of hemodialysis that is cleaning the blood of impurities in Chronic kidney failure patients. Function is identical to that Claim 13 of patent 344. **Hero Graft has, no patent. No claims, no specifications** Artivion, Inc. did not reduce to practice the prior art of Squitieri, but made HeRO graft stealing venous out flow catheter No 11  of plaintiff's patent 344, violating statue 35 USC271(c). Graft has 6 mm diameter like claim 13 of patent 344 Specification  (2-8mm preferably 6mm). Venous out flow has 5mm diameter, same as claim 13 of patent 344,(2-7mm preferably 5mm) metallic connector **is disposed in** connecting graft and venous out flow catheter see EXHIBIT A FIG 3 in complaint 1 Appx52. Method of dialysis described on web site in simulation and in practice  is identical of claim 13 of patent 344specification Fig2 shown in Exhibit A Fig 3 and specification co l 5 line 45-65, blood is taken from graft t by dialysis cannula, to the machine, purified blood is brought back to the graft by dialysis cannula, then transmitted to venous out flow catheter via metallic **disposed in** connector to venous out flow catheter for deposition of purified blood into Right atrium.

**In summary**

10

Claim 13 of patent 344 is an apparatus claim performing the function of hemodialysis, Graft

(6mm) and venous out flow catheter (5mm) literally have identical diameter of HeRO graft

where Graft is (6mmin Diameter) and venous out flow is (5mmin diameter). Function is

identical of HeRO Graft, both devices perform function of hemodialysis. Both devices have equal

diameter of Graft and venous outflow catheter except Connector disposition, **where Cuff**

**connector is disposed about** in claimed invention, connecting Graft and venous out flow

catheter where **as in Accused HeRo Connector is a metallic one disposed in** between Graft

and venous out flow catheter, **thus connector disposition is an insubstantial change**. Because

both transmit blood from Graft to venous out flow catheter to be ,,deposited blood in Rt atrium

see EXHIBITA FIG1 Appx50, also Exhibit A FIG 3,Appx52, also diagram at Appx79

.demonstrating ,**claimed invention and accused HeRo Graft are structurally similar with in**

**substantial change in connector disposition which is equivalent under statue 112 para (f)**

## DISCUSSION

Standard of Review

Summary judgment is appropriate "if the pleadings, depositions, answers to
interrogatories, and admissions on file, together with the affidavits, if any, show that
there is no genuine issue as to any material fact and that the moving party is entitled to
a judgment as a matter of law." Fed.R.Civ.P. 56(c). "The evidence of the nonmovant
is to be believed, and all justifiable inferences are to be drawn in his favor." See
Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). We review a district
court's grant of a motion for summary judgment without deference, applying the
summary judgment standard anew. See Atmel Corp. v. Information Storage Devices,
Inc., 198 F.3d 1374, 1378, 53 U.S.P.Q.2d 1225, 1227 (Fed. Cir. 1999).

Determining whether an accused process or device infringes a patent claim is a two-step process. "The first step is claim construction, which involves ascertaining the scope and meaning of the claims at issue, while the second step involves determining whether the claims as construed read on the accused device." Streamfeeder, LLC v. Sure-Feed Sys., Inc., 175 F.3d 974, 981, 50 U.S.P.Q.2d 1515, 1519 (Fed. Cir. 1999). Claim construction is a question of law, see Cybor Corp. v. FAS Techs., Inc., 138 F.3d 1448, 1451, 46 U.S.P.Q.2d 1169, 1174 (Fed. Cir. 1998) (en banc), while infringement, either literal or under the doctrine of equivalents, is a question of fact, see Bai v. L L Wings, Inc., 160 F.3d 1350, 1353, 48 U.S.P.Q.2d 1674, 1676 (Fed. Cir. 1998).

Whether the language of a claim is to be interpreted according to 35 U.S.C. § 112, ¶ 6, i.e., whether a claim limitation is in means-plus-function format, is a matter of claim construction and is thus a question of law, reviewed de novo. See Personalized Media Communications, LLC v. ITC, 161 F.3d 696, 702, 48 U.S.P.Q.2d 1880, 1886 (Fed. Cir. 1998). Once a court establishes that a means-plus-function limitation is at issue, it must construe that limitation, thereby determining what the claimed function is and what structures disclosed in the written description correspond to the "means" for performing that function. These issues are likewise questions of law, reviewed de novo. See Chiuminatta, 145 F.3d at 1308, 46 U.S.P.Q.2d at 1755-56.

# *Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co.*

*Festo Corp. v Shoketsu Kinzoku Kogyo Kabushiki Co.*, 535 U.S. 722 (2002), was

a United States Supreme Court decision in the area of patent law that examined the

relationship between the doctrine of equivalents (which holds that a patent can

be infringed by something that is not literally falling within the scope of

the claims because a somewhat insubstantial feature or element has been substituted)

and the doctrine of prosecution history estoppel (which holds that a party who makes a

change to a patent application to accommodate the requirements of patent law cannot

claim infringement by equivalents of an element that was narrowed by that change).

## Background of the case

Festo Corporation (petitioner) possessed patents for an industrial device. After Festo began marketing its device, Shoketsu Kinzoku Kogyo Kabushiki Co. (SMC, respondents) entered the market with a device that used *one two-way sealing ring* and a *nonmagnetizable sleeve*. Festo Corporation already owned two similar patents (although their initial patent application was rejected) for this industrial device. Festo filed suit, claiming that SMC's device was sufficiently similar that it infringed Festo's patents under the doctrine of equivalents. Festo's claim had been amended during prosecution for, at the very least, compliance with 35 U.S.C. §112 (claim structure, see Jepson claims), and thus Shoketsu claimed that prosecution history estoppel should bar Festo from asserting equivalents.

The United States District Court for the District of Massachusetts held that Festo's amendments were not made to avoid prior art, and therefore the amendments were not the kind that give rise to estoppel. A panel of the Federal Circuit affirmed. 72 F. 3d 857 (1995). The Supreme Court granted *certiorari*, vacated, and remanded in light of an intervening decision in *Warner-Jenkinson v. Hilton Davis Chemical Co.*. After a decision by the original panel on remand, 172 F. 3d 1361 (1999), the Federal Circuit ordered rehearing *en banc*, 187 F. 3d 1381 (1999). The court sitting *en banc* held that claim amendments made for compliance with the Patent Act presented a complete bar to claiming equivalents.

## Court's decision

The Supreme Court vacated the ruling made by the Federal Circuit, holding that such amendments do *not* create an absolute bar, but instead must be examined in light of the reason for the change. In the unanimous opinion, Justice Kennedy explained that it was not whether prosecution history estoppel applied to amendments, but to what extent the amendment surrendered coverage of the claim. If the change was made to clarify a translation, for example, the inventor should suffer no reduction in rights. But if the change was made to keep the patent from overlapping with another patent, then the applicant will be presumed to have given up the right to complain about anything broader than the patent claim itself.

In particular, the Court held that patentee's decision to narrow claims through amendment in order to comply with the Patent Act automatically assumes surrender of the territory between the original claim and the amended claim, i.e., a presumption of surrendering all equivalents for the particular claim limitation that was narrowed by the amendment. The Court thus placed the burden on the applicant as to showing what equivalents were not surrendered.

The Court conceded, however, that there are some cases where the amendment cannot be viewed as surrendering a particular equivalent. "The equivalent may have been unforeseeable at the time of the application; the rationale underlying the amendment may bear no more than a tangential relation to the equivalent in question; or there may be some other reason suggesting that the patentee could not reasonably be expected to have described the insubstantial substitute in question. In those cases the patentee can overcome the presumption that prosecution history estoppel bars a finding of equivalence.

**ARGUMENTS**

**LITERAL CLAIM 13 OF PATENT 344 UNDER 35 U.S.C 112 PARA(f)**

**Literal claim13 of patent 344 is representative of the claims on appeal   states as'**

13. A system for performing hemodialysis on a patient
comprising:
  a. an arteriovenous shunt means comprising:
  i. an arterial graft means comprising a body, a lead end and
     a terminal end, wherein said lead end is operable for
     subcutaneous connection to an artery by anastomosis
     and has a first diameter; and
  ii. a-single lumen venous outflow catheter means compris-
     ing an intake end and depositing end, wherein said
     depositing end is operable for insertion through a vein
     into the right atrium of the heart and has a second diam-
     eter different from said first diameter; and
  iii. a cuff means comprising an inlet and an outlet, wherein:
  1. said cuff is disposed about said terminal end of said
     subcutaneous graft; and
  2. said cuff is disposed about said intake end of said venous
     outflow catheter; and
  3. wherein the cuff provides a secure fit for said arterial
     graft first diameter and said venous outflow catheter
     second diameter; and
  b. a hemodialysis apparatus.

Literal claim 13 of patent 344 is an apparatus claim, meets requirements of statue 35U.S.C 112

para(f) that is governed by specification, provides:

"An element in a claim for combination may be expressed as a means or step for performing a

specified function without recital of structure, material or acts in support thereof and such

claim shall be construed to cover the corresponding structure, material or acts described in the

specification and equivalents thereof".

 Three elements of claimed invention, of claim 13 of patent 344, consists of Graft, cuff

connector disposed about, and Venous out flow catheter, in combination are means, for

performing specified function of hemodialysis (cleaning blood of impurities, Toxins in chronic

kidney failure patients). The claim 13 of patent 344 is written in means plus function format,

means plus function limitation and acts of dialysis is described by corresponding structure in

specification Fig 2 col 5, line 45-65, see Appx64. Accused HeRo graft performs identical function

14

of performing hemodialysis. Specification Fig2. describes method of dialysis when apparatus

claim 13 of patent 344 is implanted in upper extremity. Bood flows from high pressure Brachial

artery in to flexible Graft. the graft is accessed by dialysis cannula, the blood is then filtered

through a dialysis machine, toxins removed, and purified blood is returned to the flexible Graft

via other dialysis cannula close to cuff, the purified blood then returned via venous out flow

catheter and deposits directly in to Right Atrium see Exhibit A Fig 1 Appx50. **A key advantage of**

**the embodiments of this   invention is the complete avoidance of stenosis which contributes**

**to 80 % of failure rate of various vascular access methods.** The high-pressure blood returning

from hemodialysis s is guided directly in to right atrium all vein wall contact is avoided. Accused

Device HeRO performs identical function of Hemodialysis by implanting Hero graft in to upper

extremity and process of act of Hemodialysis is exactly same as described by corresponding

structure in the specification FIG 2 Appx66.see Exhibit A Fig Fig1, Appx50, and EXHIBIT A Fig3,

Appx52.

 **Legal standard**

Federal circuit has stated that "Literal infringement of a claim with means plus clause requires

that accused device perform a function identical to that identified in the means clause see

Micro Chem inc. v. great plains chem co, 103F3d1538,1547, 41 USPQ 2d 1238,1245-46 (Fed

cir1997). If it performs identical function, an accused  device literally infringes a claim  element

under§112 para6 only if it insubstantially different from the corresponding structure in patent

specification see Chiuminatta 1998 *Concrete concepts, Inc. v. Cardinal* Indus, Inc.;145F.3d 1303

1309 46 uspq2d 1752, 1756(Fed Cir1998). The insubstantial difference analysis requires a

determination of "whether the way, the accused performs the claimed function and the result of that performance are substantially different from the way the claimed function is per formed by the corresponding structure described in the specification or its result" Odetics Inc. v storage Tech Corp, 185F.3d 1259, 1267,51 us uspq2d 1225 1229-30 (Fed. cir 11999) Quoting 35 U.U.S.§112 para 6".

As function is identical in claim 13 patent 344 and HeRo graft and acts of process of dialysis as disclosed in specification FIG 2    of specification col 5 line 45-65     is identical of accused HeRO Graft, the way and Results are the same under Chiuminatta, Connector disposition is in substantial, Both are equivalent  under the statue 112 para(f)  , both perform the function of transmitting blood from the graft to the venous out flow catheter.  **Hero graft infringes upon claim 13 of patent 344** (see odetics Inc. v. Storage Tech Corp,185F.3d 1259,1267,51. USPQ2d 1229(Fed.cir 1999) Pennwalt Corp v Durand-wayland-waylandinc,833F.2d 931,934,4USPQ2d 1737,1739(Fed cir1987) (en banc).**In its First  Order entered on8/4/202- see Appx1-14  District** Court Judge allowed Literal claim 13 of patent344 without applying Doctrine of **equivalent estoppel**

**This claim in amended complaint DKt31 Appx86  was  dismissed by the District Court Judge on the ground of c ollateral estoppel which did not exist( Per patent trial appeals Boarddecision see Appx71,Appx77,Appx78, under Festo enquiry** .Claim 13 of paten 344 is a literal claim under 35 USC 112 para (f) . Federal  Circuit  court has stated that because  §112 para6 equivalent **analysis is performed under the mantle of literal infringement ,the restrictions placed on the doctrine equivalent by Festo will not apply.** Thus even if an applicant amends a

16

means plus function for the purpose of patentability that claim element will nevertheless be entitled to its equivalent unde§112 para6 District , Court mad an error with misuse of discretionary standard, in its order entered on8/4/2023 in dismissing Amended complaint and all Five infringement claims on the basis of collateral estoppel .This court should reverse , allow plaintiffs relief of 6000,000 entered in amended complaint. It appears that Georgia court judge did not review Judgement of Patent Trial and appeals Board in application No10/812 ,380 filed on3/29/2004,Appeal No2012-006569 see Appx72 – 78,where PTAB stated that plaintiff did not surrender Disposed about limitation , reversed Examiners rejection of disposed in limitation of prior art of Squitieri see Appx71-78 and also under Festo enquiry plaintiff did not make any amendment to surrender dispose about limitation for the sake patentability and did not add Disposed in limitation in claims 1-20 of patent 344 , .so doctrine of equivalent estoppel did not exists under Festo authority as ruled by supreme court in FESTO CORP V.SHOKETSU KINZOKU KOGYO KABUSHIKI CO, LTD,ET al (2002.)

**LITERAL CLAIM AND DOCTRINE OF equivalent Claim**

Plaintiffs did not seek relief under literal claim based on element by element analysis because of connector disposition **Cuff connector is disposed about** in claimed invention connecting Graft and Venous out flow catheter ,**in accused Hero graft metallic connector is dispose in** connecting graft and venous out flow catheter both are equivalent under statue 112sec para6. Plaintiff did not seek relief under Doctrine of equivalent where Function, Way and Results have to be substantially same in the claimed invention and accused invention, has broader scope Here Function of Claimed invention and accused graft are identical way and

17

Results are identical  the requirements of Doctrine of equivalent are not met.  Literal claim 13 of patent 344 is a restrictive claim   having no broader scope as does claim under Doctrine of equivalent and therefore plaintiff did not seek relief under Doctrine o equivalent.  Plaintiff seeked relief on literal  claim13 of patent 344 under means plus function limitation under 35 USC 112 para6.

**Claim-II is a direct infringement claim under 35 U.S.C. §271(a).**

The plaintiffs have exclusive rights on patent 344 granted by United States Patent and Trademark office see Appx59 covering letter from Deputy Director USPTO. During a patent term which extends from March 29 2004 to 2028 within adjustable time under 35 U.S.C. 154(b) by 1407 days. This Court in its Order  case No19-1952dated  August 13.2020 Khan v Cryolife, Inc. stated on p4 that khans have exclusive rights on 344 patent. Artivion, Inc., formerly called CryoLife, Inc., made and sold copied unpatented HeRo graft from May 15t 2012 till May 4th2016 during patent term without permission from plaintiffs HeRO graft  is a copied unpatented device of Claim 13of patent 344. Thus HeRO  graft   directly infringed claim13 patent 344 under §271(a). **Under Legal standard of revie whosoever makes and sells a patented invention during patent term is liable under 35 U.S.C. §271(a).** .District court Judge in its Prior decision Order  entered on 8/4/2022 seepage29,Appx18 ,allowed Direct  infringement claim 11. But in amended complaint 3o denied Direct infringement claim under Collateral estoppel of Utah Court. Under united states patent Trial Appeals Board decision seeAppx71-78  and Festo enquiry Doctrine of equivalent estoppel did not exist ,District  Court Judge  made an error in judgement

with mis use of discretionary standard This court should reverse Judgement , allow plaintiff relief of $ 2000,000.

**Claim-lll is an inducement infringement claim under 35 U.S.C. §271(b).**

Artivion, Inc., formerly called CryoLife, Inc.  sold three parts of the HeRo graft to the hospitals and clinics to make HeRO graft by the physicians for implantation into the patients thus causing inducement infringement of 13of patent344. District Court Judge in its judgement Order entered 8/4/2023 dismissed Claim-lll. On the basis of collateral doctrine of Equivalent Estoppel and such a decision is erroneous and doctrine of Equivalent Estoppel did not apply. Under patent Trial Appeals Board decision, see Appx71-78, and Festo enquiry  regarding restrictions placed by Fest under  Doctrine of Equivalent Estoppel.   District Court Judge made an error in judgement with misuse of discretionary authority. This court should reverse.  allow., Plaintiff s damage of $2,000,000 from Artivion, Inc.

**Claim-lV infringement under 35 U.S.C. §271 (c).**

**Legal standard.** Anyone who offers to sell or sells or imports of some thing that is patented knowing that component was especially made for use in an infringement.

Artivion, Inc. stole venous outflow catheter of claim 13 of patent 344 # 11, in the construction of accused HeRO Graft. The prior art of Squitieri lacked the venous outflow catheter that goes into the right atrium. In Squitieri's prior art the catheter goes into the vein thus infringing claim13 of patent 344 under 35 U.S.C. §271(c). Denial of claim 1v in amended complaint31Appx 86 was improper under Collateral Estoppel did not exist, under patent Trial appeals Board decision see appx71-78 and Festo enquiry. District court Judge made an error in Judgement order field

19

on8/4/2023 dismissing claim under Collateral estoppel of Utah Court see Appx29, dismissed the case with prejudice. And misused its discretionary authority standard, appeals court should reverse and allow plaintiff relief of 1000.000(1million dollars from Artivion. Inc).

**Claim V of willful infringement**, plaintiff has two patents: parent patent US 8,282,591 B2 issued on Oct. 9, 2012 and continuation patent US 8,747,344 B2 issued on June 10, 2014. Artivion, Inc. knew of these two patents and deliberately manufactured and sold unpatented HeRO graft from May15th 2012 till May 4th 2016. constituting willful infringement. District Court Judge in made an error in its Judgement order enteredon8/4/2023 dismissing Claim V on the basis of Collateral estoppel of Utah Court. (related Litigation) that did not exist under PTAB decision and Festo enquiry. District Court Judge erred in its judgement with misuse of discretionary authority. This court should reverse plaintiff seeks $1,000,000 damage to be tribled if plaintiff prevails.

 **In the motion for reconsideration DKT 55** entered on8/24/2023, under Rule 59(e) and 60(b) plaintiff submitted to the Court a copy of the decision of the Patent Trial and Appeals Board's decision (copy enclosed see Appx72-78) to alter or amend decision   Collateral estoppel does not exists   . District Court denied motion for re consideration in its order on 10/13/2023 see Appx30 -34 District court made an error with mis use of discretionary standard, Collateral estoppel did not apply under Patent Trial Boards decision and Festo enquiry. Appeals Board should reverse District court's decision, grant Motion for reconsideration.


**DOCTRINE OF EQUIVALLENT ESTOPPEL DID NOT EXIST, DISMISSAL OF COMPLAINT AND FIVE INFRINGEMENT CLAIMS WITH PREJUDICE ON THE BASIS OF COLLATERAL ESTOPPEL APPX28**

20

**WAS A CLEAR ERROR IN LAW BASED ON SUPREME COURT RULING IN FESTO AND PATENT TRIAL APPEAL'S BOARD DECISION APPX71-78. THE DISTRICT COURT JUDGE MISUSED HIS DISCRETIONARY AUTHORITY. THIS COURT SHOULD REVERSE DISTRICT COURT'S ORDER FILED ON AUGUST 4, 2023 APPX29**

During prosecution of the original Appl. No.: 10/812/380 filed on march ,29,2004 Examiner made a rejection based   on Prior art of Squitieri's patent No6,582 ,409 B1 filed on June24,2003 where a connector metallic **disposed, in** connecting Graft and venous out flow catheter, the catheter remains in vein and blood flows in to vein see abstract of the invention. In response to rejection, plaintiff amended  the application with two limitations filed on 7/25/-2007.

1.  The cylindrical cuff disposed about Limitation connecting arterial graft and the venous outflow catheter in disposed way
2.  The blood low is directly deposited into the right atrium, in claimed invention, Squitieri does not disclose depositing the blood directly in to the right atrium

 Plaintiff Nazir Khan did not surrender the disposed about limitation, appealed decision to patent Appeals Trial and Patent Board Appeal No2012-006569 application No10/812,380 see Appx72-78. Plaintiff presented himself for oral argument on June 5, 2021. The Patent Trial and Appeals Board reversed examiner's rejection. The Board stated that the Examiner has not provided reasoning with some rational underpinning sufficient to show that one of ordinary skill in the art would have had reason to modify Squitieri's catheter to include a cuff having an outlet end *disposed about* and connected to an intake and of the venous outflow catheter. The Appeals Board reversed examiner's rejection and all the claims 1-20 see Appx 72 -78 were

allowed. And the application matured in to patent us8,282591 B2 issued on Oct 9,2012 Patent

US8,747,344 B2 is a continuation patent of parent paten issued onjune10,2014. The Board of

Patent Appeals and interferences allowed **the cuff disposed about limitation**, connecting the

arterial graft to the venous outflow catheter, the surrender of subject matter did not occur, and

plaintiff was able to overcome the examiners rejection of **Disposed in based on prior art of**

**Squitieri.** The trial and Appeals Board decision is on merits and doctrine of Equivalent Estoppel

does not apply. See (appx 72-78), restriction of Festo did not apply 8because plaintiff did not

amend prior art of Squitieri to keep **Disposed in** limitation in all 1-20 of patent344 for the sake

of patentability.  Prior art of Squitieri does not meet requirement of patent act, 35 USC 112 para

1 because   of lack of enable requirement and best mode requirement comparing specification

of   claimed invention patent 344.it lacks venous out flow catheter that will reach Right atrium.

Therefore, Squitieri does not disclose direct deposit of blood in to Right Atrium of the Heart.

prior art of Squitieri is an indefinite art under claimed   specification under 35 USC 112 para (b).

SPECIFICATIONS read on accused HeRO Graft therefore Accused HeRO infringes upon claim 13

of patent 344 under 53USC112 para1.  District Court made an error in its judgement order with

misuse of discretionary standard entered on8/4/2023 see Appx 21-29, dismissing amended

complaint 30 with prejudice and dismissal of all V patent infringement claims of patent344

based collateral estoppel of related litigation of Utah court. This Court should reverse, allowing

relief on all 5 patent 344 claims and reverse dismissal of amended complaint 30 with prejudice.


**CONSTITUTIONAL VIOLATIONS OF PLAINTIFFS RIGHTS ON PATENT 344**

Under Art 1 clause 8, section 8 and 14th Amendment of constitution due process clause plaintiff's constitutional   RIGHTS are violated by Artivion, Inc. Company.

**Art 1. Sec8, clause 8.**

**States {The congress shall have power…} To promote the progress of science and useful arts by securing for limited Times to authors and inventors the exclusive Right to their respective writings and discoveries**. under constitution congress created patent laws statues, ,and united states patent Trade mark and interference office to give patents to those inventors  who discover a useful  and new invention for  public use  and give them exclusive rights for a limited time so that patent owner can make profit from his invention with this incentive he can  make more new invention  When patent344 was issued on June 10,2014  by united states patent  and Trademark office covering letter  signed by Michelle Lee  deputy Director of patent and Trade mark o office  see Appx59  stated this patent is a useful and new invention  and patent owner has exclusive right to exclude others for making or selling or importing in to united states the invention for a limited time that is 20yrs plus adjustable time plaintiffs had patent term till 2028 from  march 29,2004.In Parent patent 591. Director of Patent wrote on the covering letter that patent 591 is anew and useful invention patent owners have exclusive rights to exclude others from making or selling the invention or importing the said invention in to USA during patent term. Patent term for parent and continuation patent remains 20yrs plus adjustable period of 1497days. For both patents term remained same extending from march 29,2004 till 2028. District Court Judge in Chicago litigation Virginia M. Kendall stated that plaintiffs have exclusive right on their patent 344, in case No !:18 cv-05368 and also in precedent ruling, United States

Court of appeals for the Federal circuit in case No20191952 ,20192394 stated in background section "Khans are Illinois physicians have exclusive rights to patent 344 in their complaint filed august on august 7,2018 khans alleged defendant  Corporations Hospitals and  physicians directly or indirectly infringed claim 13of the patent 344 by manufacturing or implanting into patients the accused HeRO Graft shunt" the allegations have come True ,Defendant Artivion, Inc. during patent  term manufactured  copied HeRO graft from May 15th  2012 till May 4th 2016 sold  to various hospitals/ clinics three parts of HeRO graft  SEE Fig 3 Appx 53 ,to make  and implant  in to patients HeRo Graft

 Artivion, Inc. stole away Patent344 in the name of accused HeRo Graft during patent term, made HeRO Graft without Permission, Benefited from steeled patent 344. Paid about $17 million to Hemosphere company for purchasing HeRO graft. Artivion Inc. company, violated constitutional rights of plaintiff, under Art 1 clause 8 section 8 and also patent 34 is an intellectual property under clause 8 of Constitution, and under !4th amendment of Constitution due process clause, patent 344 is a constitutional   intellectual property of plaintiffs, rights were violated by Company Artivion, Inc. by taking away patent 344   in the name of HeRo graft   for their profit. HeRO Graft has no patent and Artivion, Inc. has no standing in this litigation, and should have been dismissed early in the litigation (see Raniere v. Microsoft887F 3d 1299(fed cir 2018).

This Court should heavily damage Artivion, Inc for stealing patent 344. and    sanction and take disciplinary action against Artivion attorney Kathryn A. Vance, Katrina M. Quicker helping big company like Artivion, Inc. to take away patent 344. Such Courts action **will be of National**

**importance** this will deter District Courts in helping big companies to take away new and useful invention of others and destroy expectations of inventors and discourage Inventors to make more new and useful arts Here District Court of Georgia openly helped Artivion, Inc. to steal patent t 344. This should stop there will be no more medical inventions in in USA in Pursuit of science for making a useful and new art for the benefit of public constitution Art 1clause8 sec 8 is thus violated This Court Under its Inherent authority should damage Artivion, Inc. company for an amount, court seems proper so that in future Artivion, Inc. will be deterred from stealing others medical inventions and District court Judges will learn from this court's action not to help Companies to steal others patents. Defendant attorney Kathryn A. Vance and Katrina M. Quicker should be disciplined and sanctioned by the Court under its inherent power for helping Big Companies like Artivion, Inc. to take away patent 344 and sanction patent owner under §285.

## CONCLUSION

Accused HeRO Graft infringes claim 13 of patent 344, literally under 35 USC 112para (f)based on identical function of claimed device and accused HeRO Graft, means plus function limitation. Structural equivalent with insubstantial change. The corresponding structure that performs the act of hemodialysis is described in the specification of patent 344, col 5, line 45-65, Appx66 see *Fiber, LLC. V. Ciena Corp., No. 2019-1005 (Fed. Cir. Nov. 21, 2019).*

Hero graft infringes claim 13 of patent 344 Directly under35USC271(a) and indirectly of induced infringement under 35USC 271(b) ,and 35USC 271(c) in addition under willful infringement Artivion Inc willfully made HeRO Graft knowing plaintiffs two patents 591,344

existed in2012 and2014. Dismissal of Amended complaint ( DOC31 Appx86 ) and Five

infringement Claims with prejudice on the basis of Collateral estoppel Utah CourtAppx29

is a gross legal error under Festo authority and Trial patent appeals Board decision Appx71-78.

This court should reverse ,and allow requested relief. Plaintiff's constitutional rights were

violated by Artivion, Inc. under article 1, clause 8, §8 of Constitution. Cryolife, Inc. now called

Artivion, Inc. stole venous outflow catheter of claim 13 patent 344 in making accused HeRO

graft during the patent term, depriving the plaintiff of the profit that the Cryolife made from

May 15 2012 till May 4 2016. Patent is a property right under clause 8 of the Constitution.

Plaintiff was deprived of the property right under 14th Amendment of the Constitution. The

HeRO graft has no patent and Artivion, Inc. has no standing in this lawsuit. The District Court

Judge should have dismissed their case and sanctioned Artivion, Inc. under 35 U.S.C. §285 see

the United States Court of Appeals for the Federal Circuit Court decision in ***Raniere vs.***

***Microsoft Corp. 887 F.3d 1298 (Fed. Cir. 2018).***

### RELIEF

Plaintiff prays that Court should grant relief on Five infringement claims:

1.      Claim-I under 35 U.S.C. para 6 $6,000,000

2.      Direct infringement Claim-II $2,000,000

3.      Inducement infringement claim $2,000,000

4.      Willful infringement $ 1,000,000 to be trebled if plaintiff pre vails

5.      Infringements under 35 USC 271 (c) for $1,000,000

6.    Punitive damage for $2,000,000

7.    Appeals Court under its inherent authority should damage Artivion, Inc. for plaintiff's violation of constitutional rights for an amount Court deems proper

Court should grant royalty for six years at rate of 10% for the products sold by the Artivion, Inc from May 15   2012   till May4th ,2016      when it sold Hero graft  to Merit medical company for 18.3 million dollars.

Court should allow the lost profits under Federal Circuit Court Ruling under Panduit Factors under factor i. Plaintiff should have made all the profits from patent 344 if Merit Medical would not have used the accused copied un patented HeRO Graft. Plaintiff would have made the infringing sales that were made by Artivion, Inc. Under factor two of Panduit absence of acceptable non-infringing alternatives there was no other company who could make patent 344 as a non-infringing alternative. Plaintiff requests the court to grant lost profits and provide royalty on the Hero graft devices that Artivion, Inc. has sold May 15, 2012.till May4th 2016

Submitted TODAY     2023     By

                    /S/   Nazir Khan

                    150 GLENMORA DRIVE

                    BURRIDGE, IL 60527

                    CELL 312 590 -0589

                    EMAIL: nazirkhanmd2003@yahoo.com

**CERTIFICATE OF COMPLIANCE**

This is to certify that Appeal Brief contains 7287 words and under penalty of perjury, the words

are correct to the best belief of the petitioner.

Signed 12/12/2023

*X̶ḡ̶ƙ̶ Cecan .*

by Nazir Khan

**CERTIFICATE OF SERVICE**

This is to certify That a COPY OF Appeal Brief was sent to Defendant attorney on 12/12/2023 on

ADDRESS

KATRINA M. QUICKER

Georgia Bar No. 590859

KATHRYN A. VANCE

Georgia Bar No. 783480

QUICKER LAW, LLC

900 Circle 75 Parkway

Suite 100

Atlanta, GA 30339

T: 678-750-0450

F: 470-533-1182

kquicker@quickerlaw.com Kvance@quickerlaw.com

# APPENDIX

APPENDIX

Table of Contents

District Court Order on Defendant's Cryolife motion………………………………………………Appx1

to dismiss (Doc No 12) granted in part without prejudice, denied in part

- Name change from Cryolife to Artivion, Inc.
- Plaintiff to file amended complaint

District Court Judge's order on Defendant Artivion, Inc.'s Motion to Dismiss…………………..Appx21

Plaintiff's amended complaint (35-3), dismissed the case with prejudice on

the basis of collateral estoppel

District Court's order denying Plaintiff's Motion for Reconsideration………………………………Appx30

Plaintiff's complaint (Doc 1)……………………………………………………………………………………Appx35

Exhibit A Fig 1 Claimed Invention Hybrid Arteriovenous Shunt………………………………….Appx50

Exhibit A Fig 2 Squitieri Device……………………………………………………………………………….Appx51

Exhibit A Fig 3 HeRO Vascular Access Device…………………………………………………………….Appx52

HeRO Graft: Exhibit B Fig 5………………………………………………………………………………..….Appx53

Fig 1 of Specifications Patent 344…………………………………………………………………………….Appx54

Fig 2 of Specification Patent 344…………………………………………………………………….………..Appx55

Exhibit B………………………………………………………………………………………………………………Appx56

Exhibit B Fig IV...................................................................................................................Appx57

Exhibit C............................................................................................................................Appx58

Letter from the Director of the United States Patent and Trademark Office.......................Appx59

Describing Patent 344 as a Useful and New Invention

with Exclusive Rights During Patent Term

Patent US 8,747,344 B2.....................................................................................................Appx60

Decision of the Board of Patent Appeals and Interferences................................................Appx71

Comparison of Different Devices.......................................................................................Appx79

Civil Docket for Case #: 1:21-cv-02291-SCI......................................................................Appx80

TABLE OF APPENDIX

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

NAZIR KHAN,
IFTIKHAR KHAN
 CIVIL ACTION FILE NO.
   Plaintiffs,
 1:21-CV-2291-SCJ v.

CRYOLIFE, INC. AND HEMOSPHERE,

   Defendants.

## ORDER

This matter appears before the Court on Defendant CryoLife, Inc's Motion to Dismiss (Doc. No. [12]); Plaintiffs' Motion to Compel (Doc. No. [15]; Plaintiffs'

Motion for Summary Judgment (Doc. No. [21]); and Defendant CryoLife's

Request for a Protective Order (Doc. No. [25]).[1]

---

[1] All citations are to the electronic docket unless otherwise noted, and all page numbers are those imprinted by the Court's docketing software.

I.      **BACKGROUND**

On June 1, 2021, Plaintiffs Nazir Khan and Iftikhar Khan filed this civil action for patent infringement against Defendants CryoLife, Inc. ("CryoLife") and Hemosphere. Doc. No. [1].[2] The patent at issue is for a Hybrid Arteriovenous shunt, Patent No. US 8,747,344 B2.[2] Doc. No. [1], 26 (hereinafter "'344 Patent").[3] The patent abstract states: "[a]n apparatus for positioning a graft and catheter

---

[2] In the Complaint, Plaintiffs state that Hemosphere, Inc. ("Hemosphere") went out of business after May 15, 2012 and CryoLife, Inc. bears the responsibility for the damages of Hemosphere, Inc. Doc. No. [1], 2. Pursuant to Federal Rule of Civil Procedure 21, the Court deems it proper to drop Defendant Hemosphere as a party to this case and proceed with CryoLife as the sole defendant. The Court further notes that after completion of the briefing, Defendant CryoLife, Inc. submitted a notice that its name has now changed to "Artivion, Inc." Doc. No. [27]. For purposes of this Order, the Court will utilize the name CryoLife, Inc. ("CryoLife") so that the Order is consistent with the briefing.

---

[2] Plaintiffs attached a copy of the patent at issue to their Complaint and filed additional clear copies at Doc. No. [16], which the Court has considered pursuant to Federal Rule of Civil Procedure 10(c). "[T]he Court may [also] take judicial notice of matters of public record, including publicly available patents and patent applications, without converting a motion to dismiss into a motion for summary judgment." Omnicomm Corp. v. AT&T Mobility, LLC, No. 1-11-CV-4264-AT, 2013 WL 12247764, at *4 n.9 (N.D. Ga. Apr. 22, 2013)

[3] In its briefing, Defendant CryoLife refers to the patent at issue as the "Asserted Patent." In contrast, Plaintiffs use the term "'344 Patent," "claimed device," and "claimed invention" to refer to the patent at issue. The Court will utilize the term "'344 Patent."

2

operable for subcutaneous access to the vascular system of the patient." Id. The date of the patent is June 10, 2014. Id.[4] The inventor is listed as Nazir A. Khan. Id.

Plaintiffs' Complaint in this civil action sets forth the following claims against Defendant CryoLife: (1) Literal Infringement of Claim 13 of the '344 Patent under 35 U.S.C. § 112, ¶ 6; (2) Direct Infringement under 35 U.S.C. § 271(a); (3) Induced Infringement; and (4) Intentional Copying and Willful Infringement of the '344 Patent. Doc. No. [1], 7–13.

More specifically, Plaintiffs state that they are licensed physicians and surgeons in Illinois. Id. at 3. They further state that they have the exclusive right to exclude Defendant CryoLife from making, using, selling, or offering to sell the invention of the '344 patent "as the copied and unpatented HeRO Graft."[5] Id.

Plaintiffs state that CryoLife "literally infringed upon" the '344 Patent and

"willfully copied the patent" by making and selling the unpatented HeROgraft.

Id. at 2, 5.

---

The Complaint also contains historical allegations concerning CryoLife and Hemosphere being assignees of Prior Art of the Squitieri Device that has two patents, US 6,582,409 B1 (dated June 24, 2003) and US RE44,639 E (dated

December 10, 2013). Doc. No. [1], 4 (hereinafter "Prior Art"). Plaintiffs allege that

"[i]n both of these patents[,] the blood after hemodialysis goes only into the vein."

Id. Plaintiffs state that in their patented device, blood after hemodialysis is "deposited in the right atrium of the heart, and the cuff connector connecting the venous outflow catheter and the arterial." Id.

On September 3, 2021, Defendant CryoLife moved to dismiss the

Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). Doc. No. [12]. The grounds of the motion are: (1) Plaintiffs allege that CryoLife literally infringed the Asserted Patent while admitting—

---

[4] There is language in the patent that states that it is a "[c]ontinuation of application No. 10/812,380 filed on Mar. 29, 2004, now Pat. No. 8,282,591." Doc. No. [1], 26.

[5] Throughout the Complaint, Plaintiffs use different variations of the style/capitalization of the term "HeRO," while Defendant uses the style of "HeRO." For purposes of consistency, the Court has utilized the "HeRO" style of the term.

3

repeatedly in multiple forums— that a necessary limitation of each claim is missing from the accused HeRO graft device; (2) Plaintiffs appear to contend that the HeRO graft infringes the '344 Patent under a doctrine of equivalents theory; however, prosecution history estoppel forbids a patentee—under a doctrine of equivalents theory—to recapture what it surrendered or disclaimed during the patent prosecution in order to obtain the patent; (3) because Plaintiffs' direct infringement claims fail,

<div align="center">4</div>

their induced infringement claims necessarily fail; (4) because Plaintiffs' direct and induced infringement claims fail, their willful infringement claims necessarily fail; and (5) because Plaintiffs' direct infringement, induced infringement, and willful infringement claims fail, their request for damages necessarily fails. Doc. No. [12-1], 9–11.[7]

On September 13, 2021, Plaintiffs filed their Motion to Compel. Doc. No.

[15]. On October 12, 2021, Plaintiffs filed their Motion for Summary Judgment.[6] Doc. No. [21].[7] In its response to the summary judgment, Defendant requested a protective order. Doc. No. [25].

All pending motions are now ripe for review.

---

[7] In its Motion to Dismiss, Defendant CryoLife asserts that Plaintiffs' allegations of literal direct infringement are "difficult to follow." Doc. No. [12-1], 22. As noted at the conclusion of this Order, the Court has deemed it proper to order repleading.

## II.    LEGAL STANDARD

Federal Rule of Civil Procedure 8(a) requires a complaint to contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Pleadings do not require any particular technical form. Fed. R. Civ. P. (8)(d)(1). However, labels, conclusions, and

---

[6] A review of the Motion for Summary Judgment (Doc. No. [21]) shows that it poses additional responses in opposition to Defendant CryoLife's Motion to Dismiss—so, in the interest of caution, the Clerk docketed Plaintiffs' October 12, 2021 filing twice, *i.e.*, as a response to the Defendants' Motion to Dismiss (Doc. No. [20]) and as a Motion for Summary Judgment (Doc. No. [21]. The same document is at both docket entries. Because the "response" at Doc. No. [20] is outside of the response period provided for by the applicable rules of procedure, the Court has given no consideration to Doc. No. [20] as it relates to the pending Motion to Dismiss. The Motion for Summary Judgment (Doc. No. [21]) will be addressed infra.

[7] The record shows that Plaintiffs filed a "Certificate of Correction" on October 13, 2021 to correct typos in their initial summary judgment motion. Doc. No. [23].

<div align="center">5</div>

formulaic recitations of the elements of the case of action "will not do." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007).

Pursuant to Federal Rule of Civil Procedure 12(b)(6), a defendant may move to dismiss a complaint for failure to state a claim upon which relief may be granted. Fed. R. Civ. P. 12(b)(6).

"To decide whether a complaint survives a motion to dismiss, [courts] use a two-step framework." McCullough v. Finley, 907 F.3d 1324, 1333 (11th Cir. 2018). First, the court identifies "the allegations that are 'no more than conclusions,'" [as] [c]onclusory allegations are not entitled to the assumption of truth. Id. (citations omitted). "Second, after disregarding conclusory allegations, [the Court] assume[s] any remaining factual allegations are true, [identifies the elements that the plaintiff must plead to state a claim] and determine[s] whether those factual allegations 'plausibly give rise to an entitlement to relief.'" Id.; see

6

also Ashcroft v. Iqbal, 556 U.S. 662, 675 (2009) (beginning the 12(b)(6) analysis

"by taking note of the elements a plaintiff must plead to state a claim . . . .") and Speaker v. U.S. Dep't. of Health & Human Servs. Ctrs. for Disease Control & Prevention, 623 F.3d 1371, 1379 (11th Cir. 2010) ("In ruling on a 12(b)(6) motion, the Court accepts the factual allegations in the complaint as true and construes them in the light most favorable to the plaintiff.") and Fed. R. Civ. P. 8(e) ("Pleadings must be construed so as to do justice.").

A complaint will be dismissed for failure to state a claim only if the facts as pled do not state a claim that is plausible on its face. Iqbal, 556 U.S. at 678; Twombly, 550 U.S. at 555–56. In order to state a plausible claim, a plaintiff need only plead "factual content that allows the court to draw the reasonable inference" that the defendant is liable for the misconduct alleged. Iqbal, 556 U.S. at 678. "Asking for plausible grounds . . . does not impose a probability requirement at the pleading stage; it simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence" of the claim. Twombly, 550 U.S. at 556. A complaint "requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements." Id. at 545. Although Rule 8(a)(2) does not require a complaint to contain "'detailed factual allegations,'" the Rule does, however,

7

demand "more than an unadorned, the-defendant-unlawfully-harmed-me-

accusation." Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 545). [10]

---

[10] As discussed infra, the Federal Circuit has clarified the appropriate Rule 12(b)(6) standard for patent cases in Bot M8 LLC v. Sony Corp. of America, 4 F.4th 1342, 1353 (Fed. Cir. 2021) as follows:

[A] plaintiff "need not 'prove its case at the pleading stage.'" Nalco, 883 F.3d at 1350 (quoting Bill of Lading, 681 F.3d at 1339). A plaintiff is not required to plead infringement on an element-by-element basis. Id. ("[T]he Federal Rules of Civil Procedure do not require a plaintiff to plead facts establishing that each element of an asserted claim is met."); see Disc Disease Sols. Inc. v. VGH Sols., Inc., 888 F.3d 1256, 1260 (Fed. Cir. 2018) (finding that a plaintiff need not plead every element, but must only give the alleged infringer fair notice of infringement). Instead, it is enough "that a complaint place the alleged infringer 'on notice of what activity . . . is being accused of infringement.'" Lifetime Indus., Inc. v. Trim-Lok, Inc., 869 F.3d 1372, 1379 (Fed. Cir. 2017) (quoting K-Tech Telecomms., Inc. v. Time Warner Cable, Inc., 714 F.3d 1277, 1284 (Fed. Cir. 2013)). To the extent this district court and others have adopted a blanket element-by-element pleading standard for patent infringement, that approach is unsupported and goes beyond the standard the Supreme Court articulated in Iqbal and Twombly. See Twombly, 550 U.S. at 556, 127 S.Ct. 1955 ("[A] well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely.") (internal quotation marks and citation omitted).

The relevant inquiry under Iqbal/Twombly is whether the factual allegations in the complaint are sufficient to show that the plaintiff has a plausible claim for relief. Iqbal, 556 U.S. at 679, 129 S.Ct. 1937. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than

8

When, as here, a complaint is filed by a *pro se* plaintiff, it is "held to a less stringent standard than pleadings drafted by attorneys and will, therefore, be liberally construed." Tannenbaum v. United States, 148 F.3d 1262, 1263 (11th Cir. 1998). Nonetheless, *pro se* plaintiffs are subject to the same law and rules of court as a litigant represented by counsel. See Moon v. Newsome, 863 F.2d 835, 837 (11th Cir. 1989); Trawinski v. United Techs., 313 F.3d 1295, 1299 (11th Cir. 2002); see also Ottah v. Fiat Chrysler, 884 F.3d 1135, 1141 (Fed. Cir. 2018) (applying this same standard to a *pro se* plaintiff-filed patent case).

---

a sheer possibility that a defendant has acted unlawfully." Id. at 678, 129 S.Ct. 1937. In other words, a plausible claim must do

> more than merely allege entitlement to relief; it must support the grounds for that entitlement with sufficient factual content. Id. "[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555, 127 S.Ct. 1955. The level of detail required in any given case will vary depending upon a number of factors, including the complexity of the technology, the materiality of any given element to practicing the asserted claim(s), and the nature of the allegedly infringing device.

Bot M8 LLC, 4 F.4th at 1352–53; see also Arlaine & Gina Rockey, Inc. v. Cordis Corp., No. 02-22555-CIV, 2004 WL 5504978, at *17 n.5 (S.D. Fla. Jan. 5, 2004) ("Decisions by the U.S. Court of Appeals for the Federal Circuit provide controlling authority on the aspects of this case that are unique to patent law. Decisions by the Eleventh Circuit govern issues that are not unique to patent law . . . .") (citations omitted).

9

## III.    ANALYSIS

### A.    Motion to Compel

In their Motion to Compel, Plaintiffs seek the production of copies of the following documents: (1) a copy of any patent of HeRO graft that CryoLife and Hemosphere has—other than the assigned patent of Squitieri's Prior Art and (2) the number of HeRO graft devices that CryoLife has sold from December 2008 until May 4, 2016. Doc. No. [15], 1.

Plaintiffs do not cite a statute or rule as grounds for their motion and under the local rules, discovery has not yet begun in the absence of an answer. See LR

26.2(A), NDGa. To this regard, Plaintiffs' Motion to Compel (Doc. No. [15]) is

**DENIED** as premature.

### B.    Motion to Dismiss

The Court will now consider each of the grounds of the pending Motion to Dismiss as it relates to Plaintiffs' claims for literal infringement, direct infringement, induced infringement, willful infringement, and damages.

10

## 1.    *Literal Infringement*

In their Complaint, Plaintiffs assert claims for literal infringement based on equivalents (pursuant to 35 U.S.C. § 112(f))[11] (labeled as "Claim I") and direct infringement under 35 U.S.C. § 271(a) (labeled as "Claim II"). Doc. No. [1], 7, 10.

More specifically, Plaintiffs state that both the claimed invention and the "unpatented HeRO graft perform [an] identical function, that is of depositing purified blood after dialysis into the right atrium of the heart." Doc. No. [1], 10.

---

[11] In their direct infringement claim, Plaintiffs cite 35 U.S.C. § 271(a), which will be discussed infra and 35 U.S.C. § 112. In referencing § 112, Plaintiffs use a numerical reference for paragraph 6 of § 112 in their Complaint. "Paragraph 6 of 35 U.S.C. § 112 was replaced with 35 U.S.C. § 112(f) when the Leahy-Smith America Invents Act (AIA), Pub. L. No. 112-29, 125 Stat. 284 (2011), took effect on September 16, 2012." Chrimar Holding Co., LLC v. ALE USA Inc., 732 F. App'x 876, 884 n.5 (Fed. Cir. 2018), as amended (June 1, 2018). Because Plaintiffs' application for the '344 Patent was filed on October 5, 2012, the Court utilizes the AIA version of § 112 and substitutes the format § 112(f) for all of Plaintiffs' references to the former "§ 112(6)." See id. (looking to the date the patent application was filed to determine which version of § 112 to apply); see also Amdocs (Israel) Ltd. v. Openet Telecom, Inc., 841 F.3d 1288, 1295 (Fed. Cir. 2016) ("This, of course, is the "means-plus-function" practice codified in 35 U.S.C. § 112 ¶ 6 (now § 112(f))."). The statutory language of § 112(f) is as follows:

> An element in a claim for a combination may be expressed as a means or step for performing a specified function without the recital of structure, material, or acts in support thereof, and such claim shall be construed to cover the corresponding structure, material, or acts described in the specification and equivalents thereof.

35 U.S.C. § 112(f).

11

Plaintiffs note structural differences between the '344 Patent and the HeRO graft, but assert that the differences are insubstantial. Id. Plaintiffs state: "[i]n the HeRO graft the metallic connector is disposed within the lumen of the graft and the venous outflow catheter, whereas in the claimed device it is disposed about the graft and the venous outflow catheter, but the function is identical in the HeRO graft and the claimed invention." Id.

As noted above, in their Motion to Dismiss, Defendant CryoLife argues that Plaintiffs' Complaint lacks sufficient detail to support a plausible claim for literal direct infringement and that Plaintiffs are

estopped from establishing direct infringement under the Doctrine of Equivalents. Doc. No. [12-1], 21, 24.[8]

---

In opposition, Plaintiffs focus the Court on their allegations under 35 U.S.C. § 112(f) (or "means-plus-function")[13] and argue that Defendant's citation of authority does not apply. Doc. No. [17].

In reply, Defendant argues that Plaintiffs' § 112(f)/means-plus-function arguments are "red herrings," to avoid dismissal. Doc. No. [19], 6. However, without more, the Court must accept the allegations of the Complaint as true in accordance with the above-stated authority and consider the § 112(f) allegations.

The Court further recognizes Defendant's additional arguments that basically sound in claim construction. For example, Defendant states: "[e]ven if the claims were interpreted as a means-plus-function claim—and they should not be—there is no question that the Asserted Patent cannot be interpreted to capture a 'cuff means' that is 'disposed about' as being equivalent to one that is disposed in the affected ends of the graft and catheter." Doc. No. [19], 7.

However, the Court declines Defendant's request to interpret Plaintiffs' claim as the Federal Circuit has held that: "[w]hether certain claim language

---

13 "In order to meet a means-plus-function limitation, an accused device must (1) perform the identical function recited in the means limitation and (2) perform that function using the

---

8 As noted, infra, Plaintiffs indicate in their briefing that they are not proceeding under the traditional contours of the Doctrine of Equivalents, but pursuant to the "equivalents" basis of 35 U.S.C. § 112(f). See Doc. No. [17], 9; see also Kemco Sales, Inc. v. Control Papers Co., 208 F.3d 1352, 1364 (Fed. Cir. 2000) ("A key feature that distinguishes 'equivalents' under section 112, paragraph 6 and 'equivalents' under the doctrine of equivalents is that section 112, paragraph 6 equivalents must perform the identical function of the disclosed structure, while equivalents under the doctrine of equivalents need only perform a substantially similar function.") (citations omitted).

12

structure disclosed in the specification or an equivalent structure." <u>Carroll Touch, Inc. v. Electro Mech. Sys., Inc.</u>, 15 F.3d 1573, 1578 (Fed. Cir. 1993).

13

invokes § 112, ¶ 6 is an exercise in claim construction." <u>Inventio AG v. ThyssenKrupp Elevator Ams. Corp.</u>, 649 F.3d 1350, 1356 (Fed. Cir. 2011), <u>overruled on other grounds by</u> <u>Williamson v. Citrix Online, LLC</u>, 792 F.3d 1339

(Fed. Cir. 2015); <u>see also</u> <u>Skky, Inc. v. MindGeek, s.a.r.l.</u>, 859 F.3d 1014, 1019 (Fed. Cir. 2017) ("In determining whether a claim term invokes § 112 ¶ 6, 'the essential inquiry is not merely the presence or absence of the word 'means' but whether the words of the claim are understood by persons of ordinary skill in the art to have a sufficiently definite meaning as the name for structure.'") (citations omitted).

"[D]istrict courts have generally been 'cautioned against resolving claim construction disputes' at the motion to dismiss stage." <u>Healthier Choices Mgmt.</u>

<u>Corp. v. Philip Morris USA, Inc.</u>, No. 1:20-CV-4816-TCB, 2021 WL 3121487, at *6

(N.D. Ga. July 23, 2021) (citations omitted); <u>see also</u> <u>Nalco Co. v. Chem-Mod, LLC</u>, 883 F.3d 1337, 1349 (Fed. Cir. 2018) (noting that "[d]efendants' arguments boil down to objections to [plaintiff's] proposed claim construction . . . a dispute not suitable for resolution on a motion to dismiss.").

14

Here, Defendant's argument and citation of authority do not support disregarding the cautionary instruction against resolving claim construction disputes at the motion to dismiss stage.

To this regard, without venturing into claim construction, the Court notes that the applicable standard for literal infringement under § 112(f) is as follows: "an accused device with structure not identical to the structure described in the patent will literally infringe the patent if the device performs the identical function required by the claim with a structure equivalent to that described in the patent." <u>Cybor Corp. v. FAS Techs., Inc.</u>, 138 F.3d 1448, 1457 (Fed. Cir. 1998) <u>abrogated on other grounds by</u> <u>Teva Pharms. USA, Inc. v. Sandoz, Inc.</u>, 789 F.3d 1335 (Fed. Cir. 2015); <u>see also</u> <u>Micro Chem., Inc. v. Great Plains Chem. Co.</u>, 103

F.3d 1538, 1547 (Fed. Cir. 1997) <u>abrogated on other grounds by</u> <u>Pfaff v. Wells</u>

<u>Elecs., Inc.</u>, 525 U.S. 55 (1998)[14] ("Literal infringement of a claim containing a

---

[14] The Federal Circuit has further stated:

> Literal infringement of a claim with a means-plus-function clause requires that the accused device perform a function identical to that identified in the means clause. <u>See</u> <u>Micro Chem., Inc. v. Great Plains Chem. Co.</u>, 103 F.3d 1538, 1547, 41 USPQ2d 1238, 1245–46 (Fed. Cir. 1997). If it performs the identical function, an accused device literally infringes a claim element under § 112 ¶ 6 only if it is insubstantially

15

means clause requires that the accused device perform the identical function as that identified in the means clause and do so with structure which is the same as or equivalent to that disclosed in the specification."). [9]

After liberally construing the pleadings in the case *sub judice*, the Court concludes that the Complaint's allegation of infringement is plausible as to literal infringement under § 112(f) in that the Complaint contains factual allegations that the HeRO graft (i.e., the accused device) contains a structure with

---

> different from the corresponding structure in the patent specification. <u>See</u> <u>Chiuminatta Concrete Concepts, Inc. v. Cardinal Indus. Inc.</u>, 145 F.3d 1303, 1309, 46 USPQ2d 1752, 1756 (Fed. Cir. 1998). The "insubstantial difference" analysis requires a determination of "whether the 'way' the accused structure performs the claimed function, and the 'result' of that performance, are substantially different from the 'way' the claimed function is performed by the 'corresponding structure . . . described in the specification,' or its 'result.'" <u>Odetics, Inc. v. Storage Tech. Corp.</u>, 185 F.3d 1259, 1267, 51 USPQ2d 1225, 1229–30 (Fed.Cir.1999) (quoting 35 U.S.C. § 112 ¶ 6).

<u>Ishida Co. v. Taylor</u>, 221 F.3d 1310, 1316–17 (Fed. Cir. 2000).

---

[9] This standard is different from the general infringement standard that Defendant references in its briefing. <u>See</u> Doc. No. [12-1], 22 (citing <u>Southwall Techs., Inc. v. Cardinal IG Co.</u>, 54 F.3d 1570, 1575 (Fed. Cir. 1995) ("To establish literal infringement, every limitation set forth in a claim must be found in an accused product, exactly.")). Because the Complaint utilizes the § 112 citation and language in its "Claim I," the Court applies the § 112(f) line of authority as opposed to the general infringement authority cited by Defendant in its briefing.

16

insubstantial differences to the '344 Patent that performs the identical function

"of depositing purified blood after dialysis into the right atrium of the heart." Doc. No. [1], 10.[16] See Cybor Corp., 138 F.3d at 1457 ("[A]n accused device with structure not identical to the structure described in the patent will literally infringe the patent if the device performs the identical function required by the claim with a structure equivalent to that described in the patent.").

Next, the Court considers Defendant's prosecution history estoppel arguments.

"[P]rosecution history estoppel [17] may bar a plaintiff from arguing infringement [pursuant to the doctrine of equivalents] in cases . . . [where] the

---

[16] The Court clarifies that this is not a merits determination as "[t]he 'purpose of a motion to dismiss is to test the sufficiency of the complaint, not to decide the merits.'" Nalco Co. v. Chem-Mod, LLC, 883 F.3d 1337, 1350 (Fed. Cir. 2018).

[17] As stated by the Federal Circuit,

> "Prosecution history estoppel applies as part of an infringement analysis to prevent a patentee from using the doctrine of equivalents to recapture subject matter surrendered from the literal scope of a claim during prosecution." Trading Techs. Int'l, Inc. v. Open E Cry, LLC, 728 F.3d 1309, 1322 (Fed. Cir. 2013). Prosecution history estoppel can occur in two ways: "either (1) by making a narrowing amendment to the claim ('amendment-based estoppel') or (2) by surrendering claim scope through argument to the patent examiner ('argument-based

17

applicant 'narrows a claim to avoid the prior art, or otherwise to address a specific concern . . . that arguably would have rendered the claimed subject matter unpatentable." Healthier Choices Mgmt. Corp., 2021 WL 3121487, at *7 (citations omitted). It has been held that the question of "[w]hether prosecution history estoppel applies is appropriately considered at the motion-to-dismiss

stage." Id.[10]

In its Motion to Dismiss, Defendant CryoLife argues that Plaintiffs are estopped from establishing direct infringement. Doc. No. [12-1], 24. Defendant asserts that Plaintiffs "are precluded

---

[10] This line of authority derives from the Supreme Court's opinion in Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co., 344 F.3d 1359, 1368 (Fed. Cir. 2003).

18

from establishing infringement under the doctrine of equivalents due to narrowing amendments made during the prosecution of the ['344 Patent], especially as it relates to the claim elements

---

        estoppel')." Conoco, Inc. v. Energy & Envtl. Int'l, L.C., 460 F.3d 1349, 1363 (Fed. Cir. 2006). To invoke argument-based estoppel, "the prosecution history must evince a clear and unmistakable surrender of subject matter." Id. at 1364 (quoting Deering Precision Instruments, L.L.C. v. Vector Distribution Sys., Inc., 347 F.3d 1314, 1326 (Fed. Cir. 2003)).

Amgen Inc. v. Coherus BioSciences Inc., 931 F.3d 1154, 1159 (Fed. Cir. 2019).

directed to the relationship between the cuff (i.e., the connector) and the graft components." Doc. No. [12-1], 25.

      In opposition, Plaintiffs argue that there is a difference between "equivalents" under 35 U.S.C. § 112(f) (as a "means plus function claim" or the statutory equivalence context) and "equivalents" under the doctrine of equivalents and therefore, the restrictions placed on the doctrine of equivalents by the Festo line of authority do not apply here as the analysis is performed under the mantle of literal infringement. Doc. No. [17], 10, 16.

                              There is Federal Circuit precedent that supports Plaintiffs' statement as in

Wenger Manufacturing, Inc. v. Coating Machinery Systems, Inc., 239 F.3d 1225, 1238 (Fed. Cir. 2001), the Federal Circuit stated: "[t]his court has previously stated that the doctrine of prosecution history estoppel is 'irrelevant' to the determination of literal claim scope." Additional Federal Circuit precedent shows that the prosecution history argument is applied in the § 112(f) cases in the context of claim construction, which as noted above, is not the current procedural posture of this case. See Cybor Corp., 138 F.3d at 1457 ("'[J]ust as prosecution history estoppel may act to estop an equivalence argument under the doctrine of equivalents, positions taken before the PTO may bar an inconsistent position on

19

**claim construction** under § 112, ¶ 6.' Clear assertions made in support of patentability thus may affect the range of equivalents under § 112, ¶ 6.")
(emphasis added) (citations omitted); Trivascular, Inc. v. Samuels, 812 F.3d 1056, 1063 (Fed. Cir. 2016) (noting that the "same general tenets" apply for purposes of considering the prosecution history in both contexts); Regents of Univ. of Minnesota v. AGA Med. Corp., 717 F.3d 929, 942 (Fed. Cir. 2013) ("Our law makes clear that '[j]ust as prosecution history estoppel may act to estop an equivalence argument under the doctrine of equivalents, positions taken before the PTO may bar an inconsistent position on claim construction under § 112, ¶ 6.'").

In light of the above-stated authority, the Court declines to apply Defendant's prosecution estoppel arguments to Plaintiffs' § 112(f) claims at the current motion to dismiss procedural posture. The Motion to Dismiss is due to be denied on this ground.

### 2. *Direct Infringement*

In their Complaint, Plaintiffs allege a claim for "direct infringement"[11] under 35 U.S.C. § 271(a), which states in relevant part: "whoever without

---

authority makes, uses, offers to sell, or sells any patented invention, within the United States or imports into the United States any patented invention during the term of the patent therefor, infringes the patent."

It has been held that "[a] well-pleaded direct infringement complaint requires the plaintiff to: (1) allege ownership of the patent; (2) name each defendant; (3) cite the patent allegedly infringed; (4) state how the defendant allegedly infringes; and (5) point to the sections of patent law invoked." O.E. Wheel Distribs., LLC v. Mobile Hi-Tech Wheels, LLC, No. 8:21-CV-2573-CEHSPF, 2022 WL 2918028, at *8 (M.D. Fla. July 25, 2022) (citations omitted); see also Bot M8 LLC, 4 F.4th at 1353 ("There must be some factual allegations that, when taken as true, articulate why it is plausible that the accused product infringes the patent claim.").

---

to May 15, 2012) and CryoLife (from May 15, 2012 to February 4, 2016). Doc. No. [1], 12. Defendant Cryolife notes that under these allegations, the HeRO Graft was on the market long before the '344 Patent issued on June 10, 2014. Doc. No. [12-1], 16. Defendant CryoLife also cites excerpts from the patent prosecution file which indicate that Plaintiffs brought these alleged infringing sales of the HeRO graft to the attention of the examiner during the application process. Doc. No. [12-1], 16–17. Defendant did not formally move on these grounds. For purposes of perfecting the record, in the absence of a formal motion, the Court notes that this Order does not address any provisional/pre-issuance damages issues.

21

After liberally construing the pleadings, this Court concludes that the Complaint's allegation of direct infringement is plausible as the Complaint contains factual allegations of ownership of the '344 Patent, provides names of defendants, and cites how the patent at issue was allegedly infringed, i.e., Defendant CryoLife, through its predecessor, Hemosphere, sold the HeRO graft/accused device

---

[11] The infringement allegations concern the sale of the HeRO Graft for which Plaintiffs assert that the unpatented HeRO graft was sold by Hemosphere (from December 2008

20

unpatented (or without authority) from December 2008 to May 15, 2012. The Complaint also alleges that Defendant CryoLife sold the HeRO graft from May 15, 2012 to February 4, 2016. Doc. No. [1], 12. The Complaint also points to the sections of patent law invoked, i.e., §§ 112 and 271. The Motion to

Dismiss is due to be denied on this ground.

### 3.    *Induced Infringement*

On page 12 of the Complaint, Plaintiffs allege induced infringement. Doc. No. [1], 12. More specifically, Plaintiffs allege that CryoLife and Hemosphere were selling "the unpatented HeRO graft to hospitals" for physicians to implant into patients. Id.

"Patent law provides that whoever actively induces infringement of a patent shall be liable as an infringer." Vita-Mix Corp. v. Basic Holding, Inc., 581 F.3d 1317, 1328 (Fed. Cir. 2009). "Inducement requires a showing that the alleged

22

inducer knew of the patent, knowingly induced the infringing acts, and possessed a specific intent to encourage another's infringement of the patent." Id. "Intent can be shown by circumstantial evidence, but the mere knowledge of possible infringement will not suffice." Id.

The Federal Circuit has also stated: "[t]o state a claim for indirect infringement, therefore, a plaintiff need not identify a specific direct infringer if it pleads facts sufficient to allow an inference that at least one direct infringer exists." In re Bill of Lading Transmission & Processing Sys. Pat. Litig., 681 F.3d 1323, 1336 (Fed. Cir. 2012). The Federal Circuit has further stated: "[f]or an allegation of induced infringement to survive a motion to dismiss, a complaint must plead facts plausibly showing that the accused infringer 'specifically intended [another party] to infringe [the patent] and knew that the [other party]'s acts constituted infringement.'" Lifetime Indus., Inc. v. Trim-Lok, Inc., 869 F.3d 1372, 1379 (Fed. Cir. 2017).

Defendant CryoLife asserts that Plaintiffs' Complaint does not sufficiently plead the necessary

elements for an induced infringement claim. Doc. No. [12-1], 34. More specifically, Defendant asserts

that Plaintiffs have not established that a direct infringer exits; have not alleged any facts to show that

Defendant CryoLife

23

had knowledge of the '344 Patent; have not pleaded that Defendant CryoLife had specifically intended to induce infringement of the '344 Patent; and have not pleaded any facts to show that Defendant CryoLife's customers infringed the '344 Patent. Id. at 34–38.

In their opposition brief, Plaintiffs set forth additional facts regarding

Defendant CryoLife's alleged "presuit knowledge of" the '344 Patent and a Parent Patent in the form of a '591 Patent. Doc. No. [17], 14 (referencing Exhibit B).[12] Plaintiff states that "[a]ny reasonable person can conclude that the hybrid arteriovenous shunt of patent 591 was copied as the HeRO graft and this presuit knowledge existed since 9/29/2005." Doc. No. [17], 15.

A review of Plaintiffs' allegations concerning induced infringement shows that said allegations are conclusory and do not plead facts plausibly showing that the Defendant CryoLife specifically intended hospitals and physicians to infringe the '344 Patent — or knew that such acts constituted infringement. The Court recognizes the additional factual allegations that Plaintiffs raise in their opposition brief; however, a party may not amend a complaint through

argument made in an opposition brief. <u>Miccosukee Tribe of Indians of Fla. v. United States</u>, 716 F.3d 535, 559 (11th Cir. 2013). Defendant's motion is due to be granted on this ground.

### 4.    *Willful Infringement*

In their Complaint, Plaintiffs allege intentional copying and willful infringement of the '344 Patent. Doc. No. [1], 12. Plaintiffs assert that Defendant CryoLife "willfully copied" the '344 Patent "in the manufacture of the HeRO graft, to position the venous outflow catheter in the right atrium of the heart," as opposed to the vein under the Prior Art. <u>Id.</u> at 12–13.

"When a defendant willfully infringes a patent, a plaintiff may be entitled to recover enhanced damages." <u>Karl Storz Endoscopy-Am. Inc. v. Integrated</u>

<u>Med. Sys. Int'l, Inc.</u>, 400 F. Supp. 3d 1248, 1258 (N.D. Ala. 2019) (citing 35 U.S.C. § 284). "The United States Supreme Court has 'limit[ed] the award of enhanced damages to egregious cases of misconduct beyond typical infringement.'" <u>Karl</u>

<u>Storz Endoscopy-Am Inc.</u>, 400 F. Supp. 3d at 1258 (citing <u>Halo Elecs., Inc. v. Pulse</u>

<u>Elecs., Inc.</u>, —— U.S. ——, 136 S. Ct. 1923, 1935 (2016)).[13] "To state a claim for

---

[12] Exhibit B was attached to the opposition brief is a copy of the '591 Patent (Patent No. US 8,282,591 B2). Doc. No. [17], 23. Said exhibit was not attached to the Complaint.

24

[13] In <u>Karl Storz</u>, the court further stated: "[t]he court can hardly make a determination of the egregiousness of [a defendant's] conduct at the dismissal stage, so it instead

25

willful patent infringement, a plaintiff must allege that the alleged infringer: (1) knew of the patent; (2) infringed the patent after having acquired that knowledge; and (3) had knowledge or reckless disregard that its conduct amounted to patent infringement." O.E. Wheel Distribs., LLC, 2022 WL 2918028, at *9 (citations omitted). "A plaintiff need only allege facts allowing a court to plausibly infer the defendants had, or should have had, knowledge of their infringement at an earlier date, then continued to infringe directly, or declined to cease its conduct that allegedly facilitated indirect infringement." Id. (citations omitted).

In its Motion to Dismiss, Defendant CryoLife asserts that Plaintiffs'

Complaint lacks plausible facts to support their willful infringement claims. Doc. No. [12-1], 39. After liberally constructing the Complaint, the Court agrees as

Plaintiffs' Complaint only contains conclusory statements about willfulness. Plaintiff has not alleged facts that set forth circumstances of egregiousness or otherwise state a claim in accordance with the cases cited herein. Defendant's motion is due to be granted on this ground.

---

merely looks to [the plaintiff's] complaint for factual allegations sufficient to plausibly demonstrate subjective willfulness." Id.

26

### 5.  *Damages*

Defendant CryoLife asserts that should the Court deny its Motion to Dismiss, Plaintiffs damages period must be limited to eight months under 35 U.S.C. § 286, which states in relevant part: "[e]xcept as otherwise provided by law, no recovery shall be had for any infringement committed more than six years prior to the filing of the complaint or counterclaim for infringement in the action." 35 U.S.C. § 286. In opposition, Plaintiffs interpret Defendant's argument as a laches argument and argue that they are allowed to recover damages of ten percent of all devices sold for eight years. Doc. No. [17], 15. Plaintiffs cite the case of SCA Hygiene Prod. Aktiebolag v. First Quality Baby Prod., LLC, ---U.S. ---- (2017), which holds that "[l]aches cannot be interposed as a defense against damages where the infringement occurred within the period prescribed by

§ 286." Id. at 16.

The Court notes that Defendant has not presented authority that shows that a plaintiff "must plead facts in avoidance of a defense under § 286." Power

Density Sols. LLC v. IBM Corp., No. 19-CV-03710-RS, 2020 WL 4876895, at *3 (N.D. Cal. Mar. 20, 2020). Without more, the Court declines to grant the motion to dismiss (or otherwise impose a damages limitation) on the basis of § 286 at this

27

time. In the event that this case reaches the damages stage, Defendant CryoLife may raise said argument at such time.

## C.    Motion for Summary Judgment

In the absence of discovery, claim construction, or a reason that such procedures are not necessary, the Court is not convinced of the wisdom of ruling on a summary judgment motion at this time. The Court considers the motion for summary judgment (Doc. No. [21]) premature and denies the motion.

## D.    Request for Protective Order

Defendant CryoLife's Request for Protective Order (Doc. No. [25]) in which it requests a stay of proceedings until the Court rules upon the Motion to Dismiss is moot.

## IV.    CONCLUSION

For the foregoing reasons, the Motion to Dismiss filed by Defendant CryoLife, Inc. (Doc. No. [12]) is **GRANTED IN PART (WITHOUT PREJUDICE) and DENIED IN PART**. More specifically, the motion is granted as to Plaintiffs' induced and willful infringement claims. The Motion is denied as to Plaintiffs' literal and direct infringement claims.

28

In light of Defendant's statement that Plaintiffs' allegations in the Complaint were difficult to follow (Doc. No. [12-1], 22) and as, absent certain exceptions,[14] the Court is required to advise *pro se* plaintiffs of the deficiencies of the Complaint and give an opportunity to amend, the Court now provides the opportunity to amend the entire Complaint in accordance with the following instructions:

> The amended complaint shall be replead in an effort to make all claims as clear as possible and to eliminate the deficiencies noted in this Order. The amended complaint shall provide the relevant facts that Plaintiffs believe entitle them to relief. Plaintiffs shall provide facts sufficient to show that each claim is plausible. See Ashcroft v. Iqbal, 566 U.S. 662, 678-79 (2009). More specifically, the induced infringement and willful infringement claims shall be replead to eliminate the conclusory allegations and provide sufficient factual allegations that plausibly give rise to an entitlement to relief.

---

[14] Said exceptions and the law on amending *pro se* complaints are found in Horn v. Est. of Camacho, 817 F. App'x 872, 874 (11th Cir. 2020) and the binding authority cited therein.

29

Plaintiffs shall attach to their amended complaint any documents forming the basis for this lawsuit, and any other documents that they believe are relevant to their claims. The documents shall be organized and clearly labeled as exhibits to the amended complaint and each exhibit referenced in the amended complaint shall be identified therein by its exhibit number. Plaintiffs should not incorporate by reference any documents already on the docket. Plaintiffs shall re-file relevant complaint exhibits so that the complaint and exhibits are together in one docket entry on CM/ECF.

---

The counts of the amended complaint shall not incorporate by reference all foregoing paragraphs.

Plaintiffs are cautioned that the Court will view the amended complaint as superseding and entirely replacing the original complaint.

The amended complaint shall be styled as naming Artivion, Inc. as the named-defendant, but may reference CryoLife, Inc. when necessary to add clarity to the historical context and factual allegations.

Plaintiffs' Amended Complaint shall be filed within **THIRTY DAYS** of the entry of this Order. Failure to comply with this Order may result in sanctions, including dismissal of the case pursuant to Local Rule 16.5, NDGa.

The Motion to Compel filed by Plaintiffs (Doc. No. [15]) is **DENIED**. The Motion for Summary Judgment filed by Plaintiffs (Doc. No. [21]) is **DENIED** as premature.

Defendant CryoLife's Request for Protective Order (Doc. No. [25]) in which it requests a stay of proceedings until the Court rules upon the Motion to Dismiss is **MOOT**.

The Court recognizes that after the briefing for the pending motions concluded, Defendant CryoLife filed a Motion to Change Name and Case

30

Caption (Doc. No. [27]). There has been no response in opposition. Accordingly, Defendant's Motion (Doc. No. [27]) is **GRANTED. IT IS THEREFORE ORDERED** that the case caption and the Court's records for the above-captioned action shall be changed from this point forward to indicate the corporate name change of Defendant CryoLife, Inc. to "**Artivion, Inc.**"

In addition, pursuant to Federal Rule of Civil Procedure 21, the Court *sua sponte* drops Hemosphere as a party to this case based on the filings showing that this entity ceases to exist. Doc. Nos. [1], 2; [12-1], 16, n.1; [12-19]. The Clerk is **DIRECTED** to terminate Hemosphere as a party-defendant.

As stated above, the Court has **ORDERED** the *pro se* Plaintiffs to replead their Complaint within **THIRTY DAYS** of the entry of this Order. In the interim, pursuant to the Court's inherent authority to control the disposition of matters on its docket, the Clerk is **DIRECTED** to administratively terminate this case from the Court's pending case list. The case shall be immediately reopened upon the filing of the Amended Complaint.

**IT IS SO ORDERED** this 4th day of August, 2022.

**HONORABLE STEVE C. JONES**
**UNITED STATES DISTRICT JUDGE**

31

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
### ATLANTA DIVISION

NAZIR KHAN,
IFTIKHAR KHAN
 CIVIL ACTION FILE NO.
  Plaintiffs,
  1:21-CV-2291-SCJ v.


ARTIVION, INC.,

 Defendant.

## <u>ORDER</u>

 This matter appears before the Court on Defendant Artivion, Inc.'s Motion to Dismiss Plaintiffs'
Amended *pro se* patent infringement Complaint (Doc. No.

[35-3]) and Plaintiffs' Motion to Enter into Court Docket the ruling of the District

Court of Utah (Doc. No. [40]).[15]

---

## I.      BACKGROUND

---

[15] All citations are to the electronic docket unless otherwise noted and all page numbers
are those imprinted by the Court's docketing software.

A review of the record shows that on September 1, 2022, Plaintiffs filed an Amended Complaint that alleges literal, direct, induced, and willful infringement of U.S. Patent No. 8,747,344 (the "Asserted Patent" or "'344 Patent") against Defendant Artivion, Inc. (hereinafter "Defendant"). Doc. No. [31].[16] As correctly stated by Defendant, Plaintiffs have filed an almost identical civil action in the Utah District Court against Merit Medical Systems, Inc.

("Merit Medical")—the subsequent owner of the HeRO product line—in the United States District Court for the State of Utah ("Utah Action"). Doc. No. [35-1],

10; see also Doc. Nos. [35-2], 17 (complaint); [35-2], 33 (amended complaint). Plaintiffs advance the same infringement allegations relating to the same patent/HeRO Graft in both actions, with the exception of the dates of damages. Defendant has also submitted exhibits that show that the Utah court has considered completed summary judgment briefing in the matter and granted the

---

motion for summary judgment filed be Merit Medical. See Doc. Nos. [35-2], 70– 141; [45] (judgment). As correctly summarized by Defendant Artivion, "the Court in the Utah Action—considering the very same claims at issue here against the very same medical device—granted summary judgment of no infringement in favor of Merit Medical and against Plaintiffs on each of their patent infringement claims related to the HeRO Graft." Doc. No. [35-1], 14; see also Doc. No. [35-2], 112–41. In a report and recommendation by the magistrate judge (subsequently adopted by the district judge), the court stated that "the undisputed facts show that under the 'disposed about' limitation, the HeRO® Graft does not as a matter of law infringe Claim 13 of the '344 patent, literally, under the doctrine of equivalents, or under 35 U.S.C. § 112(f)." Doc. No. [35-2], (R&R, page 11). The court also found that "Plaintiffs' claims for direct and induced infringement, copying and willful infringement, and injunctive relief [were] subject to dismissal." Id. (R&R, page 27). The court further stated that Plaintiffs' claim for

"copying and willfulness" were to be "dismissed as baseless." Id. (R&R, page 26).

The Utah district court adopted the R&R by docket text order stating:

On August 17, 2022, Magistrate Judge Romero entered 67 Report and Recommendation recommending that the court grant Defendant's motion for summary judgment. On August 29, 2022, Plaintiffs filed

---

[16] When, as here, a complaint is filed by a pro se plaintiff, it is "held to a less stringent standard than pleadings drafted by attorneys and will, therefore, be liberally construed." Tannenbaum v. United States, 148 F.3d 1262, 1263 (11th Cir. 1998). Nonetheless, pro se plaintiffs are subject to the same law and rules of court as a litigant represented by counsel. See Moon v. Newsome, 863 F.2d 835, 837 (11th Cir. 1989); Trawinski v. United Techs., 313 F.3d 1295, 1299 (11th Cir. 2002); see also Ottah v. Fiat Chrysler, 884 F.3d 1135, 1141 (Fed. Cir. 2018) (applying this same standard to a pro se plaintiff-filed patent case).

2

3

objections. Having carefully reviewed the Report and Recommendation and the objections, the court concludes that Plaintiffs' objections are not well taken. The court agrees with Judge Romero that all of Plaintiffs' claims necessary fail because, as a matter of law, Plaintiffs cannot establish infringement. First, Plaintiffs concede that they cannot establish literal infringement. See Dkt. No. 68 at 9. Second, Plaintiffs' attempt to establish infringement under 35 USC § 112(f) fails as a matter of law because the relevant limitation is not a means plus function limitation. To be sure, the limitation does refer to a cuff "means," but on the one hand, it does not identify any function, and on the other hand, it does identify a specific structure. Finally, Plaintiffs' attempt to establish infringement under the doctrine of equivalents fails as a matter of law because of prosecution history estoppel. The court agrees with Judge Romero that Plaintiffs clearly surrendered the scope that they are trying to reclaim through their infringement by equivalents argument. The court recognizes that in Khan v. Cryolife Inc., No. 1:21-CV2291-SCJ (N.D. Ga. August 04, 2022), the court held that Plaintiffs had sufficiently pleaded infringement to survive a motion to dismiss. It does not follow, however, that summary judgment is inappropriate. To the contrary, it is well settled that "a party opposing a properly supported motion for summary judgment may not rest upon the mere allegations or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986) (cleaned up).

Plaintiffs have failed to do so here.

Doc. No. [35-2], 141.

The Utah court entered judgment on July 31, 2023. Doc. No. [45-1].

4

## II.    LEGAL STANDARDS AND ANALYSIS

In its Motion to Dismiss, Defendant raises arguments that range from standing to collateral estoppel to failure to state a claim. This Court will first consider the standing and collateral estoppel issues—as the first implicates the authority of this Court and the latter is determinative. After that, the Court will address aspects of Plaintiffs' various motions and arguments.

## A.     Standing[17]

In its standing argument, Defendant asserts that Plaintiff Iftikhar Khan lacks standing to bring this action because the Asserted Patent only identifies

Plaintiff Nazir Khan as an inventor/owner and there is nothing to show that Iftikhar Khan is an assignee. Doc. No. [35-1], 17, 54.

In response, Plaintiffs state Plaintiff Iftikhar Khan has standing based on being a named inventor in the parent patent (i.e., the '591 patent) and the allegation that he has suffered monetary loss based upon the '344 patent being a continuation of the '591 parent patent. Doc. No. [36], 19.

---

Because only one plaintiff in a lawsuit must have standing to seek each form of relief requested in the Complaint and there is no issue as to Plaintiff Nazir Khan's standing, the Court declines to address Defendant's standing arguments concerning Iftikhar Khan. See Naval Logistics, Inc. v. M/V PETRUS, No. 21-12934, 2022 WL 4128603, at *3 n.8 (11th Cir. Sept. 12, 2022) ("And because only one plaintiff must have standing to seek each form of relief requested in the complaint, we decline to address [defendant's] arguments that Pack and the vessel lack standing."); see also Town of Chester, N.Y. v. Laroe Ests., Inc., 581 U.S. 433, 439 (2017) ("The same principle applies when there are multiple plaintiffs. At least one plaintiff must have standing to seek each form of relief requested in the complaint."); Vill. of Arlington Heights v. Metro. Hous. Dev. Corp., 429 U.S. 252, 264 n.9 (1977) ("'Because of the presence of this plaintiff [who has demonstrated standing], we need not consider whether the other individual and corporate plaintiffs have standing to maintain the suit.'").

6

---

[17] Because it is jurisdictional and implicates the authority of a federal court to decide a case, this Court must consider standing first. Rojas v. City of Ocala, 40 F. 4th 1347, 1350 (11th Cir. 2022).

5

### B.    Collateral Estoppel

As the collateral estoppel issue is determinative, the Court addresses that issue now.[18]

The Court recognizes that in a patent case, decisions of the United States Court of Appeals for the Federal Circuit provide controlling authority; however, the Federal Circuit will apply Eleventh Circuit law to procedural issues, which this Court will do likewise. See Dana v. E.S. Originals, Inc., 342 F.3d 1320, 1323 (Fed. Cir. 2003) ("On procedural issues not unique to this circuit's exclusive jurisdiction, we apply the law of the regional circuit, which in this case is the Eleventh Circuit."); see also Arlaine & Gina Rockey, Inc. v. Cordis Corp., No. 0222555-CIV, 2004 WL 5504978, at *17 n.5 (S.D. Fla. Jan. 5, 2004) ("Decisions by the U.S. Court of Appeals for the Federal Circuit provide controlling authority on the aspects of this case that are unique to patent law. Decisions by the Eleventh Circuit govern issues that are not unique to patent law . . . .") (citations omitted).

---

"The doctrine of collateral estoppel precludes relitigation . . . of issues that were actually litigated in the initial suit, whether or not the second suit is based on the same cause of action." Precision Air Parts, Inc. v. Avco Corp., 736 F.2d 1499, 1501 (11th Cir. 1984). Here, the Court is specifically examining defensive collateral estoppel, which a defendant may "use to prevent a plaintiff from relitigating an issue that he has already lost in a previous case." Id. (footnote omitted) (citing Deweese v. Town of Palm Beach, 688 F.2d 731, 733 (11th Cir. 1982)). "Defensive use of collateral estoppel precludes a plaintiff from relitigating identical issues by merely 'switching adversaries.'" Parklane Hosiery Co. v.

Shore, 439 U.S. 322, 329–30 (1979) (footnote omitted) (citing Bernhard v. Bank of Am. Nat'l Trust & Sav. Ass'n, 19 Cal. 2d 812, 813, 122 P.2d 892 (1942). "In general, collateral estoppel is applied against the losing party in the original action even in situations where the party asserting collateral estoppel was not a party to the original action. In other words, non-mutual collateral estoppel is available." Uniloc USA, Inc. v. Motorola Mobility LLC, 52 F.4th 1340, 1347 (Fed. Cir. 2022)

(citing Blonder-Tongue Labs., Inc. v. Univ. of Ill. Found., 402 U.S. 313, 334 (1971);

Hartley v. Mentor Corp., 869 F.2d 1469, 1470–71 (Fed. Cir. 1989); Peloro v. United

States, 488 F.3d 163, 175 (3d Cir. 2007)). "For defensive collateral estoppel . . . to

---

[18] To the extent that the term "issue preclusion," is the more appropriate term, this ruling also constitutes an issue preclusion analysis. See e.g., Harvey v. United States, 770 F. App'x 949, 953 (11th Cir. 2019) ("The Supreme Court has clarified that the term 'issue preclusion' should be used in place of 'collateral estoppel' and, for consistency, we do so here.") (citing Taylor v. Sturgell, 553 U.S. 880, 892 n.5 (2008)).

8

apply, the party to be precluded must have had a 'full and fair' opportunity to litigate the issue in the first action." Uniloc USA, Inc., 52 F.4th at 1347 (citing Peloro, 488 F.3d at 174–75). In addition, "[g]enerally, collateral estoppel cannot be denied because [a party argues that] the [prior] decision was incorrect." Uniloc

USA, Inc., 52 F.4th at 1350.[5]

The legal standard governing collateral estoppel is as follows:

A party asking the court to apply collateral estoppel must establish that: "(1) the issue at stake is identical to the one involved in the prior proceeding; (2) the issue was actually litigated in the prior proceeding;[19] (3) the

---

[5] Another summary of the defensive use of the collateral estoppel doctrine is as follows:

once the claims of a patent are held invalid in a suit involving one alleged infringer, an unrelated party who is sued for infringement of those claims may reap the benefit of the invalidity decision under principles of collateral estoppel. Mutuality of estoppel is no longer required. Thus, the benefits of collateral estoppel (now generally termed issue preclusion) arising from a final judgment of patent invalidity were extended to an alleged infringer other than the defendant who earlier successfully litigated the matter and those in privity therewith.

Mendenhall v. Barber-Greene Co., 26 F.3d 1573, 1577 (Fed. Cir. 1994), as corrected on reh'g (Sept. 14, 1994).

determination of the issue in the prior litigation must have been 'a critical and necessary part' of the judgment in the first action; and (4) the party against whom collateral estoppel is asserted must have had a full and fair opportunity to litigate the issue in the prior proceeding."

---

[19] "In determining when an issue has been 'actually litigated,'" the Eleventh Circuit has "cited with approval the Restatement's formulation that '[w]hen an issue is properly raised, by the pleadings or otherwise, and is submitted for determination, and is determined, the issue is actually litigated.'" Christo v. Padgett, 223 F.3d 1324, 1339–40

9

Pleming v. Universal–Rundle Corp., 142 F.3d 1354, 1359 (11th Cir. 1998); see also Christo v. Padgett, 223 F.3d 1324, 1339 (11th Cir. 2000).

Dana v. E.S. Originals, Inc., 342 F.3d 1320, 1323 (Fed. Cir. 2003).

In the case *sub judice*, all of the elements for issue preclusion have been satisfied in that: (1) the issues decided in the Utah patent action are identical to those asserted in the case *sub judice*; (2) those issues were actually litigated; (3) determination of those issues was essential to the court's judgment in the Utah litigation; (4) and the record of the Utah court shows that Plaintiffs had a full and fair opportunity to present their evidence on the issues.

Plaintiffs' opposition argument that the Utah court was incorrect is without merit for purposes of collateral estoppel as the Federal Circuit has stated that "[g]enerally, collateral estoppel cannot be denied because [a party argues that] the [prior] decision was incorrect." Uniloc USA, Inc., 52 F.4th at 1350.

---

(11th Cir. 2000) (citing Pleming v. Universal–Rundle Corp., 142 F.3d 1354, 1359 (11th Cir. 1998) (quoting Restatement (Second) of Judgments § 27 cmt. d (1982)).

10

Accordingly, Plaintiffs are precluded from relitigating the patent issues raised in this litigation. Defendant's Motion to Dismiss is subject to being granted on the ground of collateral estoppel.[20] The Court's prior plausibility ruling on the Motion to Dismiss does not prohibit application of the doctrine of collateral estoppel as the Court stated in footnote 16 of its order at Doc. No. [28] that it was not a merits determination in that "[t]he 'purpose of a motion to dismiss is to test the sufficiency of the complaint, not to decide the merits.'" Nalco Co. v. ChemMod, LLC, 883 F.3d 1337, 1350 (Fed. Cir. 2018).

## C. Plaintiffs' Motion to Enter into Court Docket the ruling of the District Court of Utah

In their Motion, Plaintiffs ask the Court to enter the Utah District Court's

January 3, 2023 docket text order in which the Utah court struck its September 27, 2022 judgment and reopened the case "[i]n light of the Federal

---

[20] As the collateral estoppel issue is determinative, no ruling is made on the sanctions allegation on page 15 of the Amended Complaint (Doc. No. [31], 15) — or on Defendant's additional dismissal arguments (in Doc. No. [35]) concerning failure to correct deficiencies, etc.

11

Circuit's order dismissing Plaintiffs' appeal for lack of jurisdiction." Doc. No. [40], 1, 6. The December 29, 2022 order of the United States Court of Appeals for the Federal Circuit is in the Utah docket at Doc. No. [104].

---

The Court construes Plaintiffs' Motion as one for judicial notice pursuant to Federal Rule of Evidence 201. The Motion is **GRANTED**. <u>See</u> <u>Schwartz v. Cap. Liquidators, Inc.</u>, 984 F.2d 53, 54 (2d Cir. 1993) (taking judicial notice of filings in a district court).

## D.    Plaintiffs' Opposition Brief

In its reply brief, Defendant request that the Court disregard Plaintiffs' opposition brief as untimely. Doc. No. [37], 13.

Because Plaintiffs were served with Defendant's motion by mail, they had an additional three days to act/file a response brief in accordance with Federal

Rule of Civil Procedure 6(d).[21] <u>See e.g.</u>, <u>Claiborne v. JPMorgan Chase Bank, N.A.</u>, No. 1:18-CV-5542-SDG-CCB, 2022 WL 469128, at *3 n.2 (N.D. Ga. Jan. 3, 2022), <u>report and recommendation adopted sub nom.</u> <u>Claiborne v. JP Morgan Chase Bank, N.A.</u>, No. 118CV05542SDGCCB, 2022 WL 1285690 (N.D. Ga. Mar. 24, 2022) (reading Federal Rule of Civil Procedure 6(d) and LR 7.1(C), NDGa together).

---

As Defendant's motion does not account for Rule 6(d), the Court declines to find Plaintiffs' opposition brief untimely. The Court has given full

consideration to Plaintiffs' opposition brief.

## E.    Plaintiffs' Request for Sanctions

In their response brief, Plaintiffs request sanctions against Defendant and Defense Counsel. Doc. No. [36], 19–23. Said request is denied as procedurally improper in that Plaintiffs have failed to file a separate motion in accordance with Federal Rule of Civil Procedure 11(c), which states in relevant part: "[a] motion for sanctions must be made separately from any other motion and must describe the specific conduct that allegedly violates Rule 11(b)." Fed. R. Civ. P. 11(c)(2).

## IV.    CONCLUSION

---

[21] The Court warns Plaintiffs (and provides clarification) that the additional three days only applies to general service rules/deadlines. If a court provides a date certain to file a document, Plaintiffs must comply with the date certain.

12

Defendant Artivion, Inc.'s Motion to Dismiss Plaintiffs' Amended Complaint (Doc. No. [35-3]) is **GRANTED** on the ground of collateral estoppel. As the collateral estoppel issue is determinative, the Court declines to consider the remaining grounds of Defendant's motion. The Court also declines to strike Plaintiffs' opposition brief as untimely. And the Court finds Plaintiffs' sanctions/opposition brief arguments procedurally improper.

## 13

Plaintiffs' Motion to Enter into Court Docket the ruling of the District Court of Utah (Doc. No. [40]) construed as a motion for judicial notice pursuant to Federal Rule of Evidence 201 is **GRANTED**. The Court has taken judicial notice of the Utah District Court's rulings filed by both parties, as well as independently reviewed the Utah District Court's docket in Civil Action No. 2:21-cv-0037.

This case stands **DISMISSED WITH PREJUDICE.** The Clerk is

**DIRECTED** to enter judgment and close this case.

**IT IS SO ORDERED** this 4th day of August, 2023.

*Steve C Jones*

**HONORABLE STEVE C. JONES**
**UNITED STATES DISTRICT JUDGE**

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

NAZIR KHAN,
IFTIKHAR KHAN

    **Plaintiffs,**

v.

ARTIVION, INC.,

    **Defendant.**

CIVIL ACTION FILE NO.

1:21-CV-2291-SCJ

<u>ORDER</u>

This matter appears before the Court on Plaintiffs' Motion for Reconsideration (Doc. No. [54]) as corrected at Doc. No. [55]).

In their corrected motion, Plaintiffs argue that this Court made an error when it granted Defendant's motion to dismiss on the ground of collateral estoppel based upon a Utah judgment. Doc. No. [55], 3. Plaintiffs assert that the Court was misled by Defense Counsel and requests sanctions. <u>Id.</u> Defendant has responded in opposition. Doc. No. [61]. Plaintiffs also filed a reply brief. Doc. No. [64-3].

"A motion for reconsideration made after final judgment falls within the ambit of either Rule 59(e) (motion to alter or amend a judgment) or Rule 60(b) (motion for relief from judgment or order)." <u>Region 8 Forest Serv. Timber Purchasers Council v. Alcock</u>, 993 F.2d 800, 806 n.4 (11th Cir. 1993)

A motion to reconsider under Rule 59(e) is only granted in "certain limited circumstances" and is within the "sound discretion" of the Court. <u>In re Wright Med. Tech. Inc., Conserve Hip Implant Prod. Liab. Litig.</u>, 178 F. Supp. 3d 1321, 1335 (N.D. Ga. 2016), <u>aff'd in part sub nom.</u> <u>Christiansen v. Wright Med. Tech., Inc.</u>, 851 F.3d 1203 (11th Cir. 2017) (quoting <u>Am. Home Assurance Co. v. Glenn Estess & Assocs.</u>, 763 F.2d 1237, 1238–39 (11th Cir. 1985)). Accordingly, a motion to reconsider under Rule 59(e) can be granted if there has been "an intervening change in controlling law, the availability of new evidence, or the need to correct clear error or prevent manifest injustice." <u>Id</u>. (quoting <u>United States v. Battle</u>, 272 F. Supp. 2d 1354, 1357 (N.D. Ga. 2003)).

"Parties [however] may not employ a motion for reconsideration [under Rule 59(e)] as a vehicle to present new arguments or evidence that should have been raised earlier, introduce novel legal theories, or repackage familiar

2

arguments to test whether the Court will change its mind." Brogdon ex rel. Cline

v. Nat'l Healthcare Corp., 103 F. Supp. 2d 1322, 1338 (N.D. Ga. 2000).

Rule 60(b) provides that the Court may relieve a party from a final

judgment or order for the following reasons:

> (1) mistake, inadvertence, surprise, or excusable neglect;
> (2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b);
> (3) fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party;
> (4) the judgment is void;
> (5) the judgment has been satisfied, released, or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; or
> (6) any other reason that justifies relief.

Fed. R. Civ. P. 60.

The Eleventh Circuit has held that the provisions of Rule 60 "must be

carefully interpreted to preserve the delicate balance between the sanctity of final

judgments and the 'incessant command of the court's conscience that justice be

done in light of all the facts.'" Griffin v. Swim-Tech Corp., 722 F.2d 677, 680 (11th

Cir. 1984) (citing Bankers Mortgage Co. v. United States, 423 F.2d 73, 77 (5th Cir.

1970)).

3

The basic premise of Plaintiffs' reconsideration argument is that this Court misunderstood the actual ruling and judgment of the Utah court and that the Utah court was wrong. After review, the Court is unable to uphold Plaintiffs' arguments as the Court did not misunderstand the Utah court's ruling (or the case's procedural history). Further, as stated in this Court's prior order:

> Plaintiffs' opposition argument that the Utah court was incorrect is without merit for purposes of collateral estoppel as the Federal Circuit has stated that "[g]enerally, collateral estoppel cannot be denied because [a party argues that] the [prior] decision was incorrect." Uniloc USA, Inc., 52 F.4th at 1350.

Doc. No. [46], 10.

After review and after consideration of the record and briefing, the Court finds no basis under either Rule 59(e) or Rule 60(b) for reconsideration.

In conclusion, Plaintiffs' Motion for Reconsideration (Doc. No. [54]) as corrected at Doc. No. [55] is **DENIED**. For purposes of perfecting the record, the Court **DIRECTS** the Clerk to amend the description of Doc. No. [64] to indicate that it is Plaintiffs' "reply brief."[1] Plaintiffs' request for sanctions is **DENIED**. The

---

[1]  The Court recognizes that Plaintiffs labeled the document "response;" however, in construing substance over form, the Court has considered the document as a reply brief.

4

Clerk is **DIRECTED** to forward a copy of this Order to the United States Court of Appeals for the Federal Circuit in response to the appeal inquiry at Doc. No. [68].

**IT IS SO ORDERED** this ⎯13th⎯ day of October, 2023.

**HONORABLE STEVE C. JONES**
**UNITED STATES DISTRICT JUDGE**

5

# IN THE UNITED STATES DISTRICT COURT
## FOR THE
## NORTHERN DISTRICT OF GEORGIA



FILED IN CLERK'S OFFICE
U.S.D.C. - Atlanta

JUN - 1 2021

JAMES N. HATTEN, Clerk
By: _____ Deputy Clerk

Nazir Khan
Iftikhar Khan                          )                    **No**
                                       )
Plaintiff                              )
                                       )
                                       )
v.                                     )          1:21-CV=2291

Defendants

Cryolife Inc and Hemosphere

# INTRODUCTION

Plaintiffs, Nazir Khan and Iftikhar Khan, invented hybrid arteriovenous shunt patent No US 8,747,344 B2 dated June 10th, 2014. The device is used for hemodialysis, meaning clearing the blood of toxins and the purified blood is deposited into the right atrium of the heart in patients with chronic renal failure. The patent is a continuation of patent US 8,282,591 B2 dated October 9th, 2012. The beneficial effect is from March 29th, 2004, the date of filing patent 591.

The plaintiffs are in possession of the written description of patent No US 8,747,344 B2 from March 29 2004. A copy of the patent-in-suit is attached as exhibit C.

Cryolife Inc., literally infringed upon patent 344, under 35 USC section 112, para 6 and willfully copied the patent. When the patent was granted, the deputy director of the United States Patent and Trademark Office stated in the covering letter that this patent is a new and useful invention and the patent owners have exclusive right to exclude others from making, using, offering for sale, or selling the invention throughout the United States of America, or importing into the United States of America, products made by that process, for the term set forth in 35 U.S.C. 154(a)(2) or (c)(1), subject to the payment of maintenance fees as provided by 35 U.S.C. 41(b).

The patent term is for 20 years up to 2028.

Cryolife Inc acquired the HeRo graft from Hemosphere on May 15th 2012 for 17 million dollars. Hemosphere Inc. started manufacturing and selling the unpatented HeRO graft from December 2008 until May 15th 2012. Hemosphere Inc. went out of business after May 15th, 2012 and CryoLife Inc. bears the responsibility for damages of Hemosphere Inc. from December 2008 to May 15th, 2012. In the prosecution of patent infringement case with a Federal Appeals Circuit Court case No. 19-1952 CryoLife Inc., prosecuted the case with Hemosphere inc. as a subsidiary corporation of Cryolife Inc.

# PARTIES

Plaintiffs, Nazir Khan MD and Iftikhar Khan MD are licensed physicians and surgeons in Illinois and have the  exclusive right to exclude the defendants CryoLife Inc and Hemosphere Inc. from making, using, selling, or offering to sell the invention of patent 344, as the copied and unpatented HeRO Graft.

# JURISDICTION

This is an action for patent infringement arising under the patent laws of the United States, Title 35 of the United States Code. This court has subject matter jurisdiction under 28 U.S.C. § 1331.

# BACKGROUND

**Claimed invention.**

The claimed invention of patent 344 has three parts.  See Exhibit 1 of Fig. 1 of patent 344 and Fig. 2 of patent 344.  All the three parts are described in the specifications of patent 344.  The structure in No. 11, represents the arterial graft which is 2-8 mm in diameter, preferably 6 mm in diameter,  which is connected to the artery at one end and to the cuff connector represented by No. 13 at the other end.  No 12 is the venous outflow catheter, 1-7 mm in diameter, preferably 6mm, which is configured for insertion through the vein and proceeds into the right atrium of the heart.

In the classic arteriovenous shunt, which is in use now, the graft is connected to the vein, and this leads to neointimal hyperplasia and 80% graft failure within 3 years (See Exhibit B, Fig 4.)

The patent owners invented the hybrid arteriovenous shunt with the venous outflow catheter (No. 12) to bypass the vein and avoid blood contact with the vein wall.   The distal catheter end is positioned in the right atrium of the heart, where no neointimal hyperplasia occurs and thereby long-term patency is achieved. The purified blood after dialysis is deposited in the right atrium of the heart (see Fig. 1.)  The method of dialysis, as shown in patent claim 17, consists of taking the blood from the arterial graft by a dialysis cannula to the dialysis machine and then the purified blood is returned to the graft and is then transmitted by the connector cuff to the venous outflow catheter to be deposited in the right atrium of the heart.

**The Prior Art of the Squitieri Device.**

The defendants, CryoLife Inc. and Hemosphere Inc. are assignees of Rafael Squitieri's device (see Exhibit A., Fig 2), where the blood after hemodialysis goes **only into the vein** (See Exhibit A, Fig 2.) **and not the right atrium of the heart**. The Squitieri device has two patents: US 6,582, 409 B1, dated June 24th 2003 and US RE44,639 E dated December 10th, 2013.   In both of these patents the blood after hemodialysis goes only into the vein.

The patent owners Hybrid Arteriovenous Shunt, patents 591 and 344, were granted by the US Patent and Trademarks Office Appeals Board based upon two factors, namely that the blood after hemodialysis in the Khan's hybrid shunt is deposited in the right atrium of the heart, and the cuff connector connecting the venous outflow catheter and the arterial.   The arterial graft and the cuff connector are disposed about the venous outflow catheter.   Squitieri's device was thus differentiated under 35 USC, section 102.   During the prosecution of the reissued application No. 14/509,949, the Patent Trial and Appeal Board agreed that the appellants overcame the anticipated rejection under 35 USC, section 102 by demonstrating two points.   First, that the cylindrical cuff connects securely, the

arterial graft and the venous outflow catheter and that secondly that the blood is deposited into the right atrium of the heart via the venous outflow catheter.

### The Accused Device—HeRO Graft

The HeRO graft is an unpatented device (see Exhibit A, Fig 3.) It has three components: the arterial graft which is 6 mm in diameter, a metallic connector, and a venous outflow catheter, measuring 5mm in diameter, that goes into the right atrium of the heart.   The difference between the claimed invention and the accused HeRO graft device is only in the connector disposition. In the HeRO Graft, the metallic connector is disposed in, connecting the arterial graft and venous outflow catheter, and in the claimed invention, the cuff connector is disposed about on the venous outflow catheter. In both, the function is exactly the same: transmitting blood from the arterial graft into the venous outflow catheter. The cuff connector of the claimed device is equivalent in structure to the metallic connector of HeRO Graft, because both have the identical function of transmitting blood from the graft to the venous outflow catheter.    Thus, the change is insubstantial (see Fig.1 and Fig.3.) The method of dialysis function is identical to the claimed invention of patent 344. The blood is taken from the arterial graft to the dialysis machine by dialysis cannulas, and the returned purified blood goes back into the arterial graft and then is transmitted into the venous outflow catheter to be deposited in the right atrium of the heart. Therefore, the hemodialysis function of the HeRO graft is identical to the hemodialysis function of the claimed invention, patent 344.

### Court Opinions on Patent Infringement of US 8,747,344 B2

The three companies (Merit Medical Systems Inc., CryoLife Inc. and Hemosphere Inc.) and the physician defendants infringed upon patent 344 under 35 USC section 112 para 6, by making and selling the unpatented HeRO graft.

4

The plaintiffs acting as prose,  filed a complaint on August 7th 2018, alleging patent infringement under 35 USC 112 para 6 and also under 35 USC 271(a) , 271(b) and 271(c).  The district court of Northern District of Illinois did not decide the infringement case,  and however stated in the background section of the decision, that the plaintiffs are "Illinois surgeons who have the exclusive rights to patent 8,747,344, Hybrid arteriovenous shunt that serves as a conduit connecting an artery to the right atrium of the heart whereby the impure arterial blood flows continuously to the right atrium.  The defendants, a collection of corporations, hospitals, and individual physicians, allegedly infringed on the patent by implanting the HeRO graft into patients."  The plaintiffs were subjected to sanctions by the district court for improper venue and service and the court dismissed the case No. 18 cv-5368 with prejudice on those grounds. The motion for sanctions was brought by 110 non-Illinois physicians for improper venue and improper service.  The District Court of the Northern District of Illinois sanctioned the plaintiffs, not deciding patent infringement case.  Merit Medical Inc. indemnified the 110 non-Illinois physicians to bring motion for sanctions against the plaintiffs.   The Plaintiffs then appealed to the Federal Circuit Court of appeals in case No 19-1952, 2394.   In their decision, the Federal Circuit Court of Appeals on August 13th, 2020, affirmed the District Court's decision, but stated in the background section of the decision,  that "the Khans are Illinois physicians  and have the exclusive right to patent 344", stating  "In their complaint filed on August 7th, 2018, the Khans alleged that the defendant corporations, hospitals and physicians directly and indirectly infringed claim 13 of patent 344 by manufacturing or implanting into patients, the accused HeRO graft shunt."

**CLAIMS**

### Claim I. Literal infringement of Patent 344, claim 13 under 35 USC section 112, para 6.

**Legal Standards.**

The statute under 35 USC section 112, para 6, states, "An element in a claim for a combination may be expressed as a…means or step for performing a specified function without a recital of structure. Material or acts in support thereof, and such claim shall be construed to cover the corresponding structure, material, or acts described in the specifications and equivalents thereof."

In order for an accused structure to literally meet a section 112, paragraph 6 means-plus-function limitation, the accused structure must either be the same as the disclosed structure or be a section 112, paragraph 6 "equivalent," i.e., (1) perform the identical function and (2), be otherwise insubstantially different with respect to structure (See Odetics, Inc. v. Storage Tech. Corp., 185 F.3d 1259, 1267, 51 USPQ2d 1229 (Fed. Cir. 1999); Pennwalt Corp. v. Durand-Wayland, Inc., 833 F.2d 931, 934, 4 USPQ2d 1737, 1739 (Fed. Cir. 1987) (en banc). Under a modified version of the function-way-result methodology described in Graver Tank & Manufacturing Co. v. Linde Air Products Co., 339 U.S. 605, 608, 85 USPQ 328, 330 (1950), two structures may be "equivalent" for the purposes of section 112, paragraph 6, if they perform the identical function, in substantially the same way, with substantially the same result (See Odetics, 185 F.3d at 1267, 51 USPQ2d at 1229-30 ) setting forth a modified function-way-result analysis, acknowledging that "this tripartite test developed for the doctrine of equivalents is not wholly transferable to the § 112, ¶ 6 statutory equivalence context" due to the functional identity requirement.

If an accused structure is not a section 112, paragraph 6 equivalent of the disclosed structure because it does not perform the identical function of that

6

disclosed structure and hence does not literally infringe, it may nevertheless still be an "equivalent" under the doctrine of equivalents. Thus, if one applies the traditional function-way-result test, the accused structure must perform substantially the same function, in substantially the same way, to achieve substantially the same result, as the disclosed structure (See Dawn Equip. Co. v. Kentucky Farms Inc., 140 F.3d 1009, 1016, 46 USPQ2d 1109, 1113 (Fed. Cir. 1998). A key feature that distinguishes "equivalents" under section 112, paragraph 6 and "equivalents" under the doctrine of equivalents is that section 112, paragraph 6 equivalents must perform the identical function of the disclosed structure, see Odetics, 185 F.3d at 1267, 51 USPQ2d at 1229; Pennwalt, 833 F.2d at 934, 4 USPQ2d at 1739, while equivalents under the doctrine of equivalents need only perform a substantially similar function, see Al-Site Corp. v. VSI Intl, Inc., 174 F.3d 1308, 1320-21, 50 USPQ2d 1161, 1168 (Fed. Cir. 1999).

Because the function is identical in both the accused HeRO graft, and the claimed invention, the structural differences are insubstantial with respect to the connector, therefore claim 13 of patent 344 is being infringed upon by the HeRO graft under 35 USC section 112, paragraph 6-- means plus function limitation.

Because the "way" and "result" prongs are the same under both section 112, paragraph 6 and the doctrine of equivalents test, a structure failing the section 112, paragraph 6 test under either or both prongs must fail the doctrine of equivalents test for the same reason(s). That was the case in Chiuminatta, in which the "way" was determined to be substantially different under a section 112, paragraph 6 analysis (See Chiuminatta, 145 F.3d at 1309, 46 USPQ2d at 1757). Accordingly, we concluded that the accused structure did not infringe under the doctrine of equivalents for precisely the same reason (See id. 1311, 46 USPQ2d. 1758).

The defendants, CryoLife Inc. and Hemosphere Inc., cannot file for non-infringement, because under the law, all the components of the claimed invention, that is an arterial graft, venous outflow catheter and the connector, have to be

7

equally the same size and structure to fall under literal infringement. In the claimed invention the graft measures 2-8 mm in diameter and 6 mm diameter graft of the HeRO graft falls within the diameter of the claimed invention. The venous outflow catheter of the HeRO graft is 5 mm and falls within the diameter of 1 to 7 mm of the claimed invention's venous outflow catheter. The claimed invention meets the criteria of the "all element rule" and the "insubstantial test".

## ARGUMENTS

Claim 13 of patent 344 recites as:

A system for performing hemodialysis on a patient comprising:

a. an arteriovenous shunt means comprising:

i. an arterial graft means comprising a body, a lead end and a terminal end, wherein said lead end is operable for subcutaneous connection to an artery by anastomosis and has a first diameter; and

ii. a-single lumen venous outflow catheter means comprising an intake end and depositing end, wherein said depositing end is operable for insertion through a vein into the right atrium of the heart and has a second diameter different from said first diameter; and

iii. a cuff means comprising an inlet and an outlet, wherein:

1. said cuff is disposed about said terminal end of said subcutaneous graft; and

2. said cuff is disposed about said intake end of said venous outflow catheter; and

3. wherein the cuff provides a secure fit for said arterial graft first diameter and said venous outflow catheter second diameter; and

b. a hemodialysis apparatus.

The claim 13 structure in combination describes a specified function of hemodialysis, that is cleaning of the blood in patients with kidney failure. Claim 13 of patent 344 is written under USC 35 section 112 paragraph 6, means plus function format and is a section 112 para 6 equivalent. Both claimed inventions and

8

unpatented HeRO graft perform identical function, that is of depositing purified blood after dialysis into the right atrium of the heart. **The structural differences between the claimed device and unpatented HeRO graft are insubstantial. In the Hero graft the structural equivalency is in the connector. In the HeRO graft the metallic connector is disposed within the lumen of the graft and the venous outflow catheter, whereas in the claimed device it is disposed about the graft and the venous outflow catheter, but the function is identical in the HeRO graft and the claimed invention. The structural differences are insubstantial with respect to the connector. The HeRO graft infringes upon claim 13 of patent 344 under USC 35 section 112 para 6 equivalent means plus function.** The blood after the dialysis is transmitted from the graft to the venous outflow catheter. The venous outflow catheter to be deposited in the right atrium of the heart. See Chiuminatta, 145 F.3d at 1309, 46 USPQ2d at 1757. Therefore, for the "way" the function is performed is same under a section 112, para 6 analysis.

The structure of the claimed invention as described in the claim 13 of patent 344 is described in specification at Col 4, Line 30-65 describes three parts of Hybrid arteriovenous shunt:

1. Flexible graft No 11, with 6-8 mm in diameter;

2. Venous outflow catheter No. 12, 1-7 mm, 1 mm smaller than the graft preferably 5 mm of such length to reach the right atrium of the heart. Catheter is made of polyurethane or silicone.

3. Cuff No 13 connecting the graft and the venous outflow catheter.

Meeting the statute requirement under 35 USC, section 112 para 6. The statue states, "An element in a claim for a combination may be expressed as a…means or step for performing a specified function without a recital of structure. material or acts in support thereof, and such claim shall be construed to cover the corresponding structure, material, or acts described in the specifications and equivalents thereof."

Col 5 Line 45-65.) Fig. 2 of the patent 344 describes the act of hemodialysis in the upper extremity Col 5, Line 45. The blood is taken from the graft, which is connected brachial artery No 17 and goes to the dialysis machine, and after the blood is returned to the graft by dialysis cannula and then is transmitted to the venous outflow catheter by connector cuff to be deposited in the right atrium of the heart, meeting the statutory requirement under section 112 para 6. All requirements of the literal infringement of patent 344, claim 13 under 35 USC 112, para 6 are met. "An element in a claim for a combination may be expressed as a...means or step for performing a specified function without a recital of structure. material or acts in support thereof, and such claim shall be construed to cover the corresponding structure, material, or acts described in the specifications and equivalents thereof."

Because the function is identical in both, the accused HeRo graft, and the structural differences insubstantial, the HeRo graft infringes upon the claim 13 of the patent 344. See Odetics, Inc. v. Storage Tech. Corp., 185 F.3d 1259, 1267, 51 USPQ2d 1229 (Fed. Cir. 1999); Pennwalt Corp. v. Durand-Wayland, Inc., 833 F.2d 931, 934, 4 USPQ2d 1737, 1739 (Fed. Cir. 1987) (en banc). Under a modified version of the function-way-result methodology described in Graver Tank & Manufacturing Co. v. Linde Air Products Co., 339 U.S. 605, 608, 85 USPQ 328, 330 (1950), two structures may be "equivalent" for purposes of section 112, paragraph 6 if they perform the identical function, in substantially the same way, with substantially the same result. See Odetics, 185 F.3d at 1267, 51 USPQ2d at 1229-30 (setting forth a modified function-way-result analysis, acknowledging that "this tripartite test developed for the doctrine of equivalents is not wholly transferable to the § 112, ¶ 6 statutory equivalence context" due to the functional identity requirement).

In order to meet literal infringement, the HeRO graft accused device must either be the same as the claimed invention or be a section 112 paragraph 6 "equivalent." The estoppel under the doctrine of equivalents does not apply because there is a literal infringement under 35 U.S.C. section 112 para 6.

10

The plaintiff seeks damages more than $6,000,000 for infringement under 35 USC, section 112 para 6 from CryoLife Inc and Hemosphere Inc.

### Claim II.  Direct Infringement Under 35 U.S.C. Section 271 (a).

Hemosphere Inc. was manufacturing and selling the hybrid arteriovenous shunt of patent 344 as the unpatented HeRO graft from December 2008 until May 15th, 2012.  CryoLife was manufacturing and selling the HeRO graft, and thus infringing upon patent 344 under 35 USC section 271 (a) from May 15th, 2012 until February 4th, 2016.  CryoLife Inc. and Hemosphere Inc. are liable for damages. The Plaintiffs respectfully seek relief of $2,000,000 from CryoLife Inc. for direct infringement under 35 USC, section 271 (a).

### Claim III. Induced Infringement.

CryoLife Inc. and Hemosphere Inc. were selling the 3 parts of the unpatented HeRO graft to hospitals for making the HeRO graft by the physicians to implant the HeRO graft into patients. The plaintiffs seek damages of $2,000,000 from CryoLife Inc.  for induced infringement of patent 344 under 35 USC section 271(b).

### Claim IV. Intentional Copying and Willful Infringement of Patent 344.

Under the two assigned patents of CryoLife Inc., the venous outflow catheter remains in the vein.   CryoLife Inc. willfully copied the plaintiffs' venous outflow catheter, described as No. 12 in Fig. 2 of patent 344, in the manufacture of the HeRO graft,  to position the venous outflow catheter in the right atrium of

11

the heart. This constitutes copying of the venous outflow catheter of patent 344 and willful infringement. The plaintiffs seek damages more than $2,000,000 from CryoLife Inc. If the plaintiffs win, the Hon. Court may triple the damages to $6,000,000.

## CONCLUSION

The plaintiffs respectfully pray for the following relief:

1. Literal infringement of patent 344 under 35 USC section 112 para 6 for more than $6,000,000 as compensatory damages.

2. Direct infringement of patent 344 under section 271 (a) for $2,000,000.

3. Induced infringement of patent 344 for $2,000,000.

4. Copying and willful infringement of patent 344 for $2,000,000. If the plaintiffs win, the Hon. Court may triple the damages to $6,000,000.

5. CryoLife Inc. should pay the royalty fee of 10%, from all the HeRO grafts that they have sold from December 2008, until February 4th, 2016.

6. Punitive damages of $2,000,000.

Submitted by

/s/ Nazir Khan,

/s/ Iftikhar Khan

**150 Glenmora Drive, Burr Ridge, IL 60527**

nazirkhanmd2003@yahoo.com

(312)590-0589

Dated 5/27/2021

11.

# EXHIBIT A

Exhibit A   Fig. 3



HeRO Vascular
Access Device

# EXHIBIT A fig 1



APPX74

# EXHIBIT A  fig. 2



## Exhibit A    Fig. 2



Squitieri Device



HeRO Vascular
Access Device

# Exhibit A    Fig. 3



HeRO Vascular
Access Device

# HeRO Graft:  EXHIBIT B   Fig. 5



HERO 1002
Arterial Graft Component
[36830*]

HERO 1001
Venous Outflow Component
[36558*]



3 parts of HeRo Graft - Fig. 3



# FIG 1

https://patentimages.storage.googleapis.com/a2/66/7a/c2893d8ac87388/US08747344-20140610-D00001.png                    1/1

https://patentimages.storage.googleapis.com/a2/66/7a/c2893d8ac8/3881US08747344-20140610-000001.png                    1/1



**FIG 2**

# EXHIBIT B



**ARTERIOVENOUS SHUNT – (1976**
**Subcutaneous with ePTFE conduit**

# Fig IV

# EXHIBIT  C

The United States of America

## The Director of the United States Patent and Trademark Office

*Has received an application for a patent for a new and useful invention. The title and description of the invention are enclosed. The requirements of law have been complied with, and it has been determined that a patent on the invention shall be granted under the law.*

*Therefore, this*

### United States Patent

*Grants to the person(s) having title to this patent the right to exclude others from making, using, offering for sale, or selling the invention throughout the United States of America or importing the invention into the United States of America, and if the invention is a process, of the right to exclude others from using, offering for sale or selling throughout the United States of America, or importing into the United States of America, products made by that process, for the term set forth in 35 U.S.C. 154(a)(2) or (c)(1), subject to the payment of maintenance fees as provided by 35 U.S.C. 41(b). See the Maintenance Fee Notice on the inside of the cover.*

*Michelle K. Lee*

Deputy Director of the United States Patent and Trademark Office

US008747344B2

(12) **United States Patent**
Khan

(10) Patent No.: **US 8,747,344 B2**
(45) Date of Patent: **\*Jun. 10, 2014**

(54) **HYBRID ARTERIOVENOUS SHUNT**

(71) Applicant: Nazir A. Khan, Burr Ridge, IL (US)

(72) Inventor: Nazir A. Khan, Burr Ridge, IL (US)

(\*) Notice: Subject to any disclaimer, the term of this patent is extended or adjusted under 35 U.S.C. 154(b) by 0 days.

This patent is subject to a terminal disclaimer.

(21) Appl. No.: 13/645,862

(22) Filed: **Oct. 5, 2012**

(65) **Prior Publication Data**

US 2014/0100508 A1    Apr. 10, 2014

**Related U.S. Application Data**

(63) Continuation of application No. 10/812,380, filed on Mar. 29, 2004, now Pat. No. 8,282,591.

(51) **Int. Cl.**
*A61B 19/00*    (2006.01)

(52) **U.S. Cl.**
USPC .......................................................... **604/7**

(58) **Field of Classification Search**
USPC .......... 604/7, 10, 6, 16, 272, 533, 264, 507, 8,
604/271, 210/645, 646, 600, 634; 606/153, 606/167

See application file for complete search history.

(56) **References Cited**

U.S. PATENT DOCUMENTS

| | | | |
|---|---|---|---|
| 5,509,897 A | \* 4 1996 | Twardowski et al. | ............ 604 43 |
| 5,591,226 A | \* 1 1997 | Trerotola et al. | ............ 623 1.12 |
| 6,102,884 A | \* 8 2000 | Squitieri | ............ 604 8 |
| 8,282,591 B2 | \* 10 2012 | Khan et al. | ............ 604 8 |

\* cited by examiner

*Primary Examiner* — Leslie Deak

(57)    **ABSTRACT**

An apparatus for positioning a graft and catheter operable for subcutaneous access to the vascular system of a patient. A surgically created, hybrid arteriovenous shunt is provided which comprises a flexible graft and a venous outflow catheter connected to the graft via surgical anastomosis over a cuff. The graft is connected to an arterial source and then to a single lumen venous outflow catheter which deposits dialyzed blood directly into the heart at the right atrium. Methods of surgical placement and performing hemodialysis using embodiments of the apparatus are provided.

**20 Claims, 3 Drawing Sheets**



15
10
21
17
18
14

Appx 60

US08747344-20140610-D00001.png (1492x1979)





# FIG 1

Appx 61



**FIG 2**

U.S. Patent    Jun. 10, 2014    Sheet 3 of 3        US 8,747,344 B2



**FIG 3**

1

# HYBRID ARTERIOVENOUS SHUNT

## CROSS-REFERENCE TO RELATED APPLICATIONS

This application is a continuation of U.S. application Ser. No. 10/812,380 filed on Mar. 29, 2004 and entitled Hybrid Arteriovenous Shunt, which is hereby incorporated by reference herein in its entirety.

## BACKGROUND OF THE INVENTION

### Field of the Invention

Hybrid Arteriovenous Shunt

The present invention relates to devices, systems and methods for subcutaneously positioning a graft and catheter for access to the vascular system of a patient.

The present invention relates to methods and apparatus for subcutaneously positioning a graft and catheter for access to the vascular system of a patient. In particular, this invention relates to an arteriovenous (AV) shunt for use in conjunction with hemodialysis.

Hemodialysis is the purification of blood by removing toxic substances and restoring chemical balance using an extracorporeal dialysis machine. The process is used as a substitute for proper kidney function in those with renal failure. Despite the benefits, a persistent drawback of hemodialysis devices is patient morbidity and mortality caused by failure of and infection from the hemodialysis access site. In particular, nearly 80% of access failure in arteriovenous grafts is caused by blood returning from the hemodialysis machine into the patient with sufficient high pressure to damage vein walls. Morbidity and Mortality of Dialysis, NIH Consens. Statement 1993; 11:1-33.

Hemodialysis access sites include arteriovenous grafts, arteriovenous fistulas and hemodialysis catheters. An arteriovenous graft is a tube surgically placed under the skin, which is connected to an arterial source on one end and a venous source on the other. The graft is accessed by the cannulas of the dialysis machine, so the blood is removed from the body, cleansed in the dialysis filter and then returned to the patient. An AV fistula is a direct connection of an artery to a vein where a graft is not used. The vein is used for dialysis access. A hemodialysis catheter is a percutaneous tube placed through the skin and directly into the subclavian vein, internal jugular vein or femoral vein. The extracutaneous portion is used for dialysis access.

These access methods are problematic because they cause vein damage and leave the patient susceptible to infection and clotting. Furthermore, the weak veins of renal failure patients may not accommodate certain access methods.

In AV grafts, neointimal hyperplasia is caused when the cells of the inner layer of the vein hypertrophy and multiply in response to the high blood flow and pressure of the arteries. This multiplication along with turbulent flow causes frequent venous outflow obstruction and resultant clotting and failure of the AV graft. (Paulson, W. D.; Ram, S. J.; Zibari, G. B., "Vascular Access: Anatomy, Examination, Management". Semin. Nephrol., Vol. 22, No. 3. May 2002, pp. 183-194). In AV fistulas, the common cause of failure is formation of venous aneurysms and clotting on the venous portion of the graft. Venous aneurysms are caused because of the flow pressure differential between the high pressure grafted artery and the vein. High pressure arterial flow through the thin walls of the veins causes damage because veins lack the prominent arterial layers of elastic and muscular tissue. These aneu-

2

rysms then form clots because of the turbulent, irregular blood flow and subsequently the AV fistula completely clots off and fails. [U.S. Pat. Nos. 6,102,884; 6,086,553; 5,556,426; 4,822,341; 4,654,033; 4,479,798; 3,998,222; 3,826,257; 3,818,257; and 3,818,511—incorporated by reference.] Hemodialysis catheters are the least preferred in the surgical community. The large bore catheters can last from two months to one year and are frequently complicated by infection and clotting because the limbs of the catheters are outside of the skin.

It would be desirable to have an arteriovenous device placed subcutaneously that does not require anastomosis to a vein, eliminates exposure of the vein to high pressure blood returning to the patient from the dialysis apparatus and utilizes a single lumen venous outflow catheter. It would also be desirable to have an arteriovenous device that provides long term patency, prevents clotting and minimizes infection.

## SUMMARY

The present invention provides an arteriovenous shunt comprising:

a. an arterial graft comprising a body, a lead end and a terminal end, wherein said lead end is operable for subcutaneous connection to an artery by anastomosis;

b. a single lumen venous outflow catheter comprising an intake end and depositing end, wherein said depositing end is operable for insertion through a vein into the right atrium of the heart; and

c. a cuff comprising an inlet and an outlet, wherein:

i. said inlet is connected to said terminal end of said subcutaneous graft; and

ii. said outlet is connected to said intake end of said venous outflow catheter.

The present invention also provides a system for performing hemodialysis on a patient comprising:

a. an arteriovenous shunt comprising:

i. an arterial graft comprising a body, a lead end and a terminal end, wherein said lead end is operable for subcutaneous connection to an artery by anastomosis; and

ii. a single lumen venous outflow catheter comprising an intake end and a depositing end, wherein said depositing end is operable for insertion through a vein into the right atrium of the heart; and

iii. a cuff comprising an inlet and an outlet, wherein:

1. said inlet is connected to said terminal end of said subcutaneous graft; and

2. said outlet is connected to said intake end of said venous outflow catheter; and

b. a hemodialysis apparatus.

The present invention additionally provides a method of performing hemodialysis on a patient comprising:

a. inserting an arteriovenous shunt into a patient, wherein said arteriovenous shunt comprises:

i. an arterial graft comprising a body, a lead end and a terminal end, wherein said lead end is operable for subcutaneous connection to an artery by anastomosis;

ii. a single lumen venous outflow catheter comprising an intake end and depositing end, wherein said depositing end is operable for insertion through a vein into the right atrium of the heart; and

iii. a cuff comprising an inlet and an outlet, wherein:

1. said inlet is connected to said terminal end of said subcutaneous graft; and

2. said outlet is connected to said intake end of said venous outflow catheter;

3

b. connecting said arterial graft to a hemodialysis apparatus;

c. collecting blood from the patient through said subcutaneous graft;

d. passing said blood through the hemodialysis apparatus;

e. collecting purified blood from hemodialysis apparatus; and

f. transmitting said purified blood through said cuff into said venous outflow catheter.

It has been found that the methods and apparatus of this invention afford benefits over methods and apparatus among those known in the art. Such benefits include one or more of long term patency, prevention of clotting and minimizing infection. Further benefits and embodiments of the present invention are apparent from the description set forth herein.

## BRIEF DESCRIPTION OF THE DRAWINGS

The present invention will become more fully understood from the detailed description and the accompanying drawings, wherein:

FIG. 1 depicts the segments of an arteriovenous shunt of the present invention.

FIG. 2 depicts an arteriovenous shunt of the present invention in an upper extremity.

FIG. 3 depicts an arteriovenous shunt of the present in a lower extremity.

It should be noted that the figures set forth herein are intended to exemplify the general characteristics of an apparatus, materials and methods among those of this invention, for the purpose of the description of such embodiments herein. These figures may not precisely reflect the characteristics of any given embodiment, and are not necessarily intended to define or limit specific embodiments within the scope of this invention.

## DETAILED DESCRIPTION OF THE INVENTION

While this invention is susceptible of embodiments in many different forms, there are shown in the drawings and will herein be described in detail, preferred embodiments of the invention with the understanding that the present disclosure is to be considered as an exemplification of the principles of the invention and is not intended to limit the broad aspect of the invention to the embodiments illustrated.

The present invention provides devices, systems and methods for subcutaneously positioning a graft and catheter for access to the vascular system of a patient.

The following definitions and non-limiting guidelines must be considered in reviewing the description of this invention set forth herein.

The headings (such as "Introduction" and "Summary,") and sub-headings (such as "Surgical Methods") used herein are intended only for general organization of topics within the disclosure of the invention, and are not intended to limit the disclosure of the invention or any aspect thereof. In particular, subject matter disclosed in the "Introduction" may include aspects of technology within the scope of the invention, and may not constitute a recitation of prior art. Subject matter disclosed in the "Summary" is not an exhaustive or complete disclosure of the entire scope of the invention or any embodiments thereof.

The citation of references herein does not constitute an admission that those references are prior art or have any relevance to the patentability of the invention disclosed herein. Any discussion of the content of references cited in the Introduction is intended merely to provide a general summary

4

of assertions made by the authors of the references, and does not constitute an admission as to the accuracy of the content of such references. All references cited in the Description section of this specification are hereby incorporated by reference in their entirety.

The description and specific examples, while indicating the embodiment of the invention, are intended for purposes of illustration only and are not intended to limit the scope of the invention. Moreover, recitation of multiple embodiments having stated features is not intended to exclude other embodiments having additional features, or other embodiments incorporating different combinations of the stated features.

As used herein, the words "preferred" and "preferably" refer to embodiments of the invention that afford certain benefits, under certain circumstances. However, other embodiments may also be preferred, under the same or other circumstances. Furthermore, the recitation of one or more preferred embodiments does not imply that other embodiments are not useful, and is not intended to exclude other embodiments from the scope of the invention.

As used herein, the word "include" and its variants is intended to be non-limiting, such that recitation of items in a list is not to the exclusion of other like items that may also be useful in the materials, compositions, devices, and methods of this invention.

Materials

An embodiment of this invention consists of 3 parts. FIG. 1. The first part is a flexible graft 11. The graft 11 measures from about 2 to 8 mm in diameter. In a preferred embodiment, the diameter is about from 6 to 8 mm. In general, graft lengths range from 20 to 60 cm in length. Preferably, the graft is about 40 cm in length. The diameter and length of the graft depends on whether insertion is through an upper or lower extremity and the patient's body size. A graft placed in the lower extremity will be longer than a graft placed in the upper extremity. For example, the graft dimensions in a child with a graft in the upper extremity will be of smaller dimensions than those in an adult with a graft in the lower extremity. The flexible material is biocompatible and does not substantially adversely affect the function, growth and any other desired characteristics of the tissue cells surrounding the implanted device. In a preferred embodiment, the graft is made of polytetrafluoroethylene (PTFE) or polyurethane (Vectra® Graft by Thoratec).

The second part consists of a single lumen venous outflow catheter 12. The venous outflow catheter 12 has a smaller diameter than the PTFE graft 11. In a most preferred embodiment, the catheter is 1 mm smaller in diameter than the graft. Venous outflow catheters have a diameter from about 1 to 7 mm. Preferably, the catheter diameter is 5 mm. The catheter diameter should be sufficient to allow for the proper fit of the catheter in the cuff 13. Similar to the graft size, the catheter size will vary depending on the age and/or body size of the patient. The catheter length can range from 20 to about 80 cm. A preferred length is from about 40 to about 60 cm. The length of the catheter must be sufficient to advance through the vein into the right atrium. The catheter is polyurethane, silicone or other biocompatible materials can be used.

The single lumen venous outflow catheter is connected to the graft by surgical anastomosis over a cuff 13. The cuff inlet is connected to the graft 11 terminal end and the cuff outlet is connected to the venous outflow catheter 12 inlet. In a preferred embodiment, the inside diameter of the cuff is graded to compensate for the size difference between the graft and the venous outflow catheter. The cuff is preferably Teflon® or Dacron®.

5

The total length and various diameters of shunt components will vary depending on the size of the patient, the vein or artery used and the extremity length of the patient. The shunt 10 is placed under the skin-via strict sterile surgical technique and connected to the artery (brachial, axillary, femoral or external iliac) via careful anastomosis. The shunt can be used for extracorporeal vascular access 21 through the graft. For example, hemodialysis is performed by using dialysis cannulas temporarily placed into the graft in a sterile fashion.

Embodiments of this invention begin in the artery and have a final deposit site in the right atrium. In addition to being an arteriovenous shunt due to the path between the artery and vein, embodiments of this invention are "arterioatrial" due to the path created between the artery and the right atrium. The term "arterioatrial" is not limiting to the path or methods of creating a path, but is used as a supplemental explanation and description of embodiments of this invention. This connection eliminates the need for anastomosis to a vein and thus eliminates the frequent problems that exist when a high flow system transmits into a vein such as venous aneurysms in AV fistulas and neointimal hyperplasia in AV grafts.

Methods of Use

Surgical Methods

The surgical technique for these procedures is best suited for a vascular surgical text or journal. (Benedetii, E.; DeiPino, A; Cintron J., Duurle, B., "A New Method of Creating an Arteriovenous Graft Access", Am. /. Surg., Vol. 171, No. 3, March 1996. pp. 369-370.) It is understood that one skilled in the art would recognize modifications needed to surgical procedures depending on the dimensions of the graft and individual patient needs.

The arteriovenous shunt is inserted into the patient subcutaneously using open surgical methods. The PTFE graft is anastomosed to an artery and the cuff is attached to the terminal end of the graft. The intake end of the venous outflow catheter is attached to the Teflon or Dacron cuff. A vein is "cut down" and a glide wire is inserted into the vein. The length of the glide wire required to reach the right atrium is used to determine the appropriate length of the catheter. The catheter is passed over the glide wire through the vein into the right atrium. A purse string stitch is then used to close the opening of the vein around the catheter and prevent bleeding from the vein "cut down" site.

Purified Blood Flow in a Functioning Shunt

FIG. 2 demonstrates purified blood flow from an extracorporeal source 21, such as a hemodialysis apparatus in embodiments of an arteriovenous shunt 10 functioning in the upper extremity. As embodied, the graft is anastomosed to the brachial artery 17. The graft can also be anastomosed to the axillary artery. Blood flows from the high pressure brachial artery into the flexible graft of the shunt 10. The graft is accessed by the dialysis cannula closest to the artery in the usual sterile fashion. The blood is then filtered through a 55 dialysis machine, the toxins removed, and the purified blood is returned to the flexible graft via the other dialysis cannula closest to the cuff. The purified blood then flows via the venous outflow catheter through the cephalic vein 18 and deposits directly into the right atrium 14. In another preferred embodiment, the catheter passes through the axillary vein. A key advantage of embodiments of this invention is the complete avoidance of stenosis which contributes to the 80% failure rate of various access methods. The high pressure blood returning from the hemodialysis apparatus is guided directly into the right atrium and all vein wall contact is avoided.

6

FIG. 3 depicts purified blood flow in an embodiment of the shunt functioning in the lower extremity. The graft is anastomosed to the femoral artery 20. Blood flows from the high pressure femoral artery 20 into the graft portion of the shunt 10. The graft is accessed in the usual sterile fashion, by the dialysis cannula closest to the artery. The blood is then filtered through the dialysis machine, the toxins removed, and the purified blood is returned to the graft via the other dialysis cannula closest to the cuff. The purified blood then flows via the venous outflow catheter through the femoral vein 19. In addition to the femoral vein, external iliac vein is also preferred. Blood then flows into the inferior vena cava 16 and deposits directly into the right atrium 14.

A key advantage of embodiments of this invention is the elimination of vein wall damage, including stenosis, which normally causes the high failure rate of various vascular access methods. The high pressure blood returning from the hemodialysis apparatus is guided directly into the right atrium and therefore venous contact with the reentering blood is avoided.

Methods of Performing Hemodialysis

Embodiments of this invention include methods of performing hemodialysis on a patient. Blood is removed from the patient through the subcutaneous graft and is passed through the hemodialysis apparatus for purification. Purified blood is collected from the hemodialysis apparatus and then transferred to the cuff and then to the venous outflow catheter. The purified blood is then transferred through the catheter which passes through the vein into the patient's right atrium. The high flow system controlled by the hemodialysis apparatus is maintained directly to the right atrium.

While specific embodiments have been illustrated and described, numerous modifications come to mind without significantly departing from the spirit of the invention and the scope of protection is limited by the scope of the accompanying claims.

What is claimed is:

1. An arteriovenous shunt comprising:

a. an arterial graft comprising a body, a lead end and a terminal end, wherein said lead end is operable for subcutaneous connection to an artery by anastomosis and has a first diameter; and

b. a single lumen venous outflow catheter comprising an intake end and depositing end, wherein said depositing end is operable for insertion through a vein into the right atrium of the heart and has a second diameter different from said first diameter; and

c. a cuff comprising an inlet and an outlet, wherein:

i. said inlet is disposed about said terminal end of said subcutaneous graft; and

ii. said outlet is disposed about said intake end of said venous outflow catheter;

wherein the cuff provides a secure fit for said arterial graft first diameter and said venous outflow catheter second diameter.

2. The arteriovenous shunt of claim 1 wherein said subcutaneous graft is made of a biocompatible flexible material.

3. The arteriovenous shunt of claim 2, wherein said biocompatible flexible material is epolytetrafluoroethylene (PTFE) or polyurethane.

4. The arteriovenous shunt of claim 1, wherein said arterial graft has a diameter from about 2 mm to about 8 mm and a length from about 20 cm to about 60 cm.

5. The arteriovenous shunt of claim 4, wherein said arterial graft has a diameter of from about 6 mm to about 8 mm and a length of about 40 cm.

US 8,747,344 B2

**7**

6. The arteriovenous shunt of claim 1, wherein said artery is the brachial, axillary, femoral or external iliac artery.

7. The arteriovenous shunt of claim 1, wherein said cuff comprises polyethylene terephthalate or polytetrafluoroethylene.

8. The arteriovenous shunt of claim 1, wherein said venous outflow catheter has a diameter from about 1 mm to about 7 mm and a length of from about 20 cm to about 80 cm.

9. The arteriovenous shunt of claim 1, wherein said venous outflow catheter has a diameter from about 5 mm to about 7 mm and a length of from about 40 cm to about 60 cm.

10. The arteriovenous shunt of claim 1, wherein said venous outflow catheter is made of polyurethane or silicone.

11. The arteriovenous shunt of claim 1, wherein said vein is the cephalic, axillary, jugular, femoral or external iliac vein.

12. The arteriovenous shunt of claim 1, wherein said venous outflow catheter has a diameter of about 1 mm smaller than the subcutaneous graft.

13. A system for performing hemodialysis on a patient comprising:

 a. an arteriovenous shunt means comprising:

 i. an arterial graft means comprising a body, a lead end and a terminal end, wherein said lead end is operable for subcutaneous connection to an artery by anastomosis and has a first diameter; and

 ii. a single lumen venous outflow catheter means comprising an intake end and depositing end, wherein said depositing end is operable for insertion through a vein into the right atrium of the heart and has a second diameter different from said first diameter; and

 iii. a cuff means comprising an inlet and an outlet, wherein:

 1. said cuff is disposed about said terminal end of said subcutaneous graft; and

 2. said cuff is disposed about said intake end of said venous outflow catheter; and

 3. wherein the cuff provides a secure fit for said arterial graft first diameter and said venous outflow catheter second diameter; and

 b. a hemodialysis apparatus.

14. The system according to claim 13, wherein said venous outflow catheter means has a diameter of about 1 mm smaller than said graft means.

15. The system according to claim 13, wherein said artery is the brachial, axillary, femoral or external iliac artery.

**8**

16. The system according to claim 13, wherein said vein is the cephalic, axillary, jugular, femoral or external iliac vein.

17. A method of performing hemodialysis on a patient comprising:

 a. inserting an arteriovenous shunt into a patient, wherein said arteriovenous shunt comprises:

 i. an arterial graft comprising a body, a lead end and a terminal end, wherein said lead end is operable for subcutaneous connection to an artery by anastomosis wherein said arterial graft has a first diameter of about 2-8 mm and length about 20 cm to 60 cm; and

 ii. a single lumen venous outflow catheter comprising an intake end and depositing end, wherein said depositing end is operable for insertion through a vein into the right atrium of the heart wherein said venous outflow catheter has a second diameter of about 1-7 mm; and a length from about 20 cm to about 80 cm;

 iii. a cuff comprising an inlet and an outlet, wherein:

 1. said inlet is disposed about said terminal end of said subcutaneous graft; and

 2. said outlet is disposed about said intake end of said venous outflow catheter;

 3. wherein the cuff provides a secure fit for said arterial graft first diameter and said venous outflow catheter second diameter; and

 b. connecting said arterial graft to a hemodialysis apparatus;

 c. collecting blood from the patient through said subcutaneous graft;

 d. passing said blood through the hemodialysis apparatus;

 e. collecting purified blood from hemodialysis apparatus; and

 f. transmitting said purified blood to the graft and then through said cuff into said venous outflow catheter to be deposited into the right atrium.

18. The method according to claim 17, wherein said venous outflow catheter has a diameter of about 1 mm smaller than said subcutaneous graft.

19. The method according to claim 17, wherein said artery is the brachial, axillary, or femoral, external iliac artery.

20. The method according to claim 17, wherein said vein is the axillary, jugular, femoral or external iliac vein.

* * * * *

Appx 68

JS 44 (Rev. 12/12)

**CIVIL COVER SHEET**

**I. (a) PLAINTIFFS**
Nazir Khan
Iftikhar Khan

**(b)** County of Residence of First Listed Plaintiff
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**DEFENDANTS**
CryoLife Inc/Hemosphere 1655 Roberts Blvd., NW
Kennesaw, GA 30144 USA

**(c)** Attorney's *(Firm Name, Address, and Telephone Number)*
Pro-se-attorneys
150 Glenmora drive, Burr Ridge, IL 60527 (312)590-0689

Attorney's *(If Known)*

**II. BASIS OF JURISDICTION** *(Place an "X" in One Box Only)*

| | | |
|---|---|---|
| ☐ 1 U.S. Government Plaintiff | ☒ 3 Federal Question *(U.S. Government Not a Party)* | |
| ☐ 2 U.S. Government Defendant | ☐ 4 Diversity *(Indicate Citizenship of Parties in Item III)* | |

**III. CITIZENSHIP OF PRINCIPAL PARTIES** *(Place an "X" in One Box for Plaintiff)*
*(For Diversity Cases Only)* and One Box for Defendant)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. NATURE OF SUIT** *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - Product Liability | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 376 Qui Tam (31 USC 3729(a)) |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 367 Health Care/ Pharmaceutical | | **PROPERTY RIGHTS** | ☐ 400 State Reapportionment |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | Personal Injury Product Liability | **LABOR** | ☐ 820 Copyrights | ☐ 410 Antitrust |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 710 Fair Labor Standards Act | ☐ 830 Patent ☒ 830 Patent - Abbreviated New Drug Application | ☐ 430 Banks and Banking |
| ☐ 151 Medicare Act | ☐ 340 Marine | **PERSONAL PROPERTY** | ☐ 720 Labor/Management Relations | ☐ 840 Trademark | ☐ 450 Commerce |
| ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans) | ☐ 345 Marine Product Liability | ☐ 370 Other Fraud | ☐ 740 Railway Labor Act | **SOCIAL SECURITY** | ☐ 460 Deportation |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 371 Truth in Lending | ☐ 751 Family and Medical Leave Act | ☐ 861 HIA (1395ff) | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 380 Other Personal Property Damage | ☐ 790 Other Labor Litigation | ☐ 862 Black Lung (923) | ☐ 480 Consumer Credit |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 385 Property Damage Product Liability | ☐ 791 Employee Retirement Income Security Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 490 Cable/Sat TV |
| ☐ 195 Contract Product Liability | ☐ 362 Personal Injury - Medical Malpractice | | | ☐ 864 SSID Title XVI | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 196 Franchise | **CIVIL RIGHTS** | **PRISONER PETITIONS** | | ☐ 865 RSI (405(g)) | ☐ 890 Other Statutory Actions |
| **REAL PROPERTY** | ☐ 440 Other Civil Rights | **Habeas Corpus:** | | **FEDERAL TAX SUITS** | ☐ 891 Agricultural Acts |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 463 Alien Detainee | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 893 Environmental Matters |
| ☐ 220 Foreclosure | ☐ 442 Employment | ☐ 510 Motions to Vacate Sentence | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 895 Freedom of Information Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ Accommodations | ☐ 530 General | | | ☐ 896 Arbitration |
| ☐ 240 Torts to Land | ☐ 445 Amer. w/Disabilities - Employment | ☐ 535 Death Penalty | **IMMIGRATION** | | ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ☐ 245 Tort Product Liability | ☐ 446 Amer. w/Disabilities - Other | **Other:** | ☐ 462 Naturalization Application | | ☐ 950 Constitutionality of State Statutes |
| ☐ 290 All Other Real Property | ☐ 448 Education | ☐ 540 Mandamus & Other ☐ 550 Civil Rights ☐ 555 Prison Condition ☐ 560 Civil Detainee - Conditions of Confinement | ☐ 465 Other Immigration Actions | | |

**V. ORIGIN** *(Place an "X" in One Box Only)*

☒ 1 Original Proceeding  ☐ 2 Removed from State Court  ☐ 3 Remanded from Appellate Court  ☐ 4 Reinstated or Reopened  ☐ 5 Transferred from Another District *(specify)*  ☐ 6 Multidistrict Litigation – Transfer  ☐ 8 Multidistrict Litigation – Direct File

**VI. CAUSE OF ACTION**
Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
Patent Infringement under 35 USC 112 para 6

Brief description of cause:
Literal Infringement claim 13 of patent US 8,747,344 B2 under 35 USC 112 para 6 dated Jun 10, 2014, copying within infringement

**VII. REQUESTED IN COMPLAINT:**  ☐ CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.   DEMAND $   CHECK YES only if demanded in complaint:   JURY DEMAND: ☒ Yes ☐ No

**VIII. RELATED CASE(S) IF ANY**   *(See instructions):*   JUDGE Virginia M. Kendall   DOCKET NUMBER 1:18-cv-05368

DATE 5/24/2021   SIGNATURE OF ATTORNEY OF RECORD   NKhan

**FOR OFFICE USE ONLY**

RECEIPT #        AMOUNT        APPLYING IFP        JUDGE        MAG. JUDGE

POSTAL SERVICE | EXPRESS®

EJ 828 495 095 US

**CUSTOMER USE ONLY**

FROM: (PLEASE PRINT)    PHONE (312) 590-0589

Nazir Khan
150 Glenmora Drive
Burr ridge Illinois
60527

**DELIVERY OPTIONS (Customer Use Only)**

☑ SIGNATURE REQUIRED Note: The mailer must check the "Signature Required" box if the mailer: 1) Requires the addressee's signature; OR 2) Purchases additional insurance; OR 3) Purchases COD service; OR 4) Purchases Return Receipt service. If the box is not checked, the Postal Service will leave the item in the addressee's mail receptacle or other secure location without attempting to obtain the addressee's signature on delivery.

**Delivery Options**
☐ No Saturday Delivery (delivered next business day)
☐ Sunday/Holiday Delivery Required (additional fee, where available)*
*Refer to USPS.com® or local Post Office™ for availability.

TO: (PLEASE PRINT)    PHONE ( )

Clerk of Northern District
Court Georgia Richard
federal Building 2211
united states Calvert House
75 Ted Turner Drive
ZIP + 4® (U.S. ADDRESSES ONLY)
Atlanta Georgia 30303-3309 S.W

■ For pickup or USPS Tracking™, visit USPS.com or call 800-222-1811.
■ $100.00 insurance included.

⬑ **PEEL FROM THIS CORNER**

**PAYMENT BY ACCOUNT (if applicable)**
USPS® Corporate Acct. No. | Federal Agency Acct. No. or Postal Service™ Acct. No.

**ORIGIN (POSTAL SERVICE USE ONLY)**
☑ 1-Day  ☐ 2-Day  ☐ Military  ☐ DPO

PO ZIP Code: 60559
Scheduled Delivery Date (MM/DD/YY): 05/29/21
Postage: $ 36.90

Date Accepted (MM/DD/YY): 05/28/21
Scheduled Delivery Time: ☑ 6:00 PM
Insurance Fee: $
COD Fee: $

Time Accepted: 1:58 ☐ AM ☑ PM
Return Receipt Fee: $
Live Animal Transportation Fee

Special Handling/Fragile: $
Sunday/Holiday Premium Fee: $
Total Postage & Fees: 36.90

Weight: 1 lb 2.00 oz    ☐ Flat Rate
Acceptance Employee Initials: pm.

**DELIVERY (POSTAL SERVICE USE ONLY)**
Delivery Attempt (MM/DD/YY) | Time ☐ AM ☐ PM | Employee Signature
Delivery Attempt (MM/DD/YY) | Time ☐ AM ☐ PM | Employee Signature

LABEL 11-B, MAY 2021    PSN 7690-02-000-9996

CLEARED
JUN 1 2021
U.S. Marshal
N. District GA

Appx 69

130339    *13033/*

2291-SCJ Document 1-2 Filed 06/01/

'curt Hae: Northern Distdct of Geogia Divis c,m 1

Re:tli pt ,.be-r: GNH \ 0130339 Cashi r lll: swbynum frans,i.. ion Date: 0&/03/2021 P·ye, Haa •: NAZIR A KHAN

Receipt Number: GAN100130339

Cashier for payment------------c VIL IL l 'G FEE- NOtHRISONH<

fo: NAZIR A KHAN 0/03/2021
Player Name: NAZIR A KHAN

Case/P rt: !)-GO -1-21-CV-002291-001

CIVIL FILING FEE- NON-PRISONER
For NAZIR A KHAN 2. 0    2291-001

Pliv-:f< WECK cnwmSICH

~hecldl'lc;ney O-rd~r Nu : 1634216862 !lmt h:ndered: $402. 00 fotal    e:    $~-02.00

Total Te..:ferral: S402.0  1634216862
Amt Tendered: $402.00

~n~~,e At:    t0. 0

tith a chf-ck payment yov authorize us e1 ther to use infofIlahon fro111 your d,etk tt, tiake a one-ti ele bonic fund transfer frnm your

,count or tti p·roi.:P:.!i the payment a~ a ,jieck transurtlon. For inquinE-s or privacy Hiforlllation,call 404-215-1625

With a check payment you authorize us either to use information from your check to make a one-time electronic fund transfer from your account or to process the payment as a check transaction. For inquiries or privacy information,call 404-215-1625

 UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
United States Patent and Trademark Office
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450.
www.uspto.gov

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 10/812,380 | 03/29/2004 | Iftikhar Khan | 1800-000e1 | 2606 |

| | | | | |
|---|---|---|---|---|
| 7590 | 07/27/2012 | | EXAMINER | |

Nazir A Khan MD
150 Glenmora Drive
Burr- Ridge, IL

DBAK, LESLIE R

| ART UNIT | PAPER NUMBER |
|---|---|
| 3761 | |

| MAIL DATE | DELIVERY MODE |
|---|---|
| 07/27/2012 | PAPER |

Please find below and/or attached an Office communication concerning this application or proceeding.

The time period for reply, if any, is set in the attached communication.

UNITED STATES PATENT AND TRADEMARK OFFICE

BEFORE THE BOARD OF PATENT APPEALS
AND INTERFERENCES

*Ex parte* IFTIKHAR KHAN and NAZIR KHAN

Appeal 2012-006569
Application 10/812,380
Technology Center 3700

Before STEVEN D.A. MCCARTHY, PHILLIP J. KAUFFMAN
and GAY ANN SPAHN, *Administrative Patent Judges.*

MCCARTHY, *Administrative Patent Judge.*

DECISION ON APPEAL

1       The Appellants[1] appeal under 35 U.S.C. § 134 from the Examiner's

2    final decision rejecting claims 1-20. The Examiner rejects under 35 U.S.C.

3    § 103(a) claims 117 ,7-10,12-14 ,5¯ and 18 as being unpatentable over

4    Squitieri (US 6,102,884, issued Aug. 15,2000); Twardowski (US 5,509,897,

5    issued Apr. 23, 1996); and Parks (US 5,399,173, issued Mar. 21, 1995); and

---

[1]          The Appellants are the real party in interest.

J
L_

Appeal No. 2012006569⁻
Application No. 10/812,380

1  claims 6,11,15,16,19 and 20 as being unpatentable over Squitieri,

2  Twardowski, Parks and Trerotola (US 5,591,226, issued Jan. 7, 1997). An

3  oral argument was held on June 5,2012. We have jurisdiction under 35

4  U.S.C. § 6(b).

5      We REVERSE.*

6      Claims 120⁻ as entered by the Examiner on November 30,2011 are at

7  issue in this appeal. Claims 1,13 and 17 are independent. Claim 17 is

8  illustrative of the claimed subject matter:* * ³

9          17.  A method of performing hemodialysis on a
10              patient comprising:

11      a. Surgically inserting an arteriovenous shunt
12          into a patient, wherein said arterio venous
13          shunt comprises:

14              i.    An arterial graft comprising a
15                    body, a lead end and a terminal
16                    end, said lead end being
17                    configured for subcutaneous
18                    connection to an artery by
19                    anastomosis, wherein said
20                    arterial graft has a first diameter
21                    of about 28⁻ mm; and

22

    We also recommend that the Appellants consider whether they
intended method claims 1820⁻ to depend from system claim 16 or method
claim 17.

---

³    The version of claim 17 reproduced in this opinion is taken from an
amendment which was filed November 3, 2011 and entered November 30,
2011. Strikeouts and underlining are omitted.

2

Appeal No. 2012006569⁻
Application No. 10/812,380

| | | | |
|---|---|---|---|
| 1 | | ii. | A single lumen venous outflow |
| 2 | | | catheter comprising an intake |
| 3 | | | end and depositing end, said |
| 4 | | | depositing end being |
| 5 | | | configured for insertion |
| 6 | | | through a vein into the right |
| 7 | | | atrium of the heart, wherein |
| 8 | | | said venous outflow catheter |
| 9 | | | has a second diameter of about |
| 10 | | | 17⁻mm different from said first |
| 11 | | | diameter; and |
| 12 | | iii. | A cylindrical cuff operable to |
| 13 | | | direct passage of blood from |
| 14 | | | said arterial graft to said venous |
| 15 | | | outflow catheter, said cuff |
| 16 | | | comprising an inlet in blood |
| 17 | | | communication with an outlet: |
| 18 | | I. | Said inlet being |
| 19 | | | disposed about and |
| 20 | | | connected to said |
| 21 | | | terminal end of |
| 22 | | | said arterial graft; |
| 23 | | | and |
| 24 | | II. | Said outlet being |
| 25 | | | disposed about and |
| 26 | | | connected to said |
| 27 | | | intake end of said |
| 28 | | | venous outflow |
| 29 | | | catheter, wherein |
| 30 | | | said cuff provides |
| 31 | | | a secure fit for said |
| 32 | | | arterial graft first |
| 33 | | | diameter and said |
| 34 | | | venous outflow |
| 35 | | | catheter second |
| 36 | | | diameter; |

3

Appeal No. 2012-006569
Application No. 10/812,380

b. connecting said arterial graft to a
hemodialysis apparatus;

c. collecting blood from the patient through
said arterial graft with a dialysis catheter;

d.    passing said blood through the hemodialysis
apparatus;

e.    collecting purified blood from hemodialysis
apparatus with a dialysis cannula to the
graft; and

f.    Transmitting said purified blood through
said cuff into said venous outflow catheter
which is located in the right atrium and the
blood is directly deposited into the right
atrium.

Claims 1 and 13 each recite an arterio venous shunt including an arterial graft, a single lumen venous outflow catheter and a cylindrical cuff. Claim 17 recites a method including the step of surgically inserting an arteriovenous shunt into a patient. The arteriovenous shunt inserted into the patient includes an arterial graft, a single lumen venous outflow catheter and a cylindrical cuff. The shunts of claims 1, 13, and 17 each have an inlet of the cylindrical cuff disposed about and connected to a terminal end of the arterial graft. Likewise, an outlet of the cuff is disposed about and connected to an intake end of the venous outflow catheter.

In a Final Decision mailed August 24, 2010 in Appeal 2010003194 ("Prior Decision"), a panel of this Board sustained the rejection of claim 17 under § 103(a) as being unpatentable over Squitieri, Parks and Twardowski. The panel did not sustain rejections of claims 1-17, 14-5, 7-10, 12- and 18 as being unpatentable over Squitieri and Parks; claims 6, 11, 15, 16, 19 and 20 under § 103(a) as being unpatentable over Squitieri, Parks and Trerotola;

4

Appeal No. 2012006569⁻
Application No. 10/812,380

1  and claim 10 under § 103(a) as being unpatentable over Squitieri and

2  Trerotola. The dispositions of these rejections were based on the language

3  of the claims at issue and the arguments presented by the Appellants in that

4  appeal.

5      As in FF 1 of the Prior Decision, we adopt the Examiner's finding

6  that:

7      Squitieri discloses an arteriovenous shunt system
8      comprising an arterial graft 53 with a lead end 62
9      anastomosed to an artery and [a] terminal end
10     connected to needle access site [20], which acts as
11     a connector that corresponds to applicant's cuff.
12     .   .   .   The access site [20], corresponding to
13     applicant's cuff, directs passage of blood from the
14     arterial catheter to the venous catheter, and is in
15     communication with the terminal end of the
16     arterial graft and the inlet end of the venous
17     catheter (see FIGS 69⁻, column 5, lines 1960⁻).

18  (Ans. 5). Squitieri further discloses that the access site *20* includes an in line

19  aperture *16* conducting a blood stream accessible by needles *15*. (Squitieri,

20  col. 4,11.1518⁻). Squitieri teaches that the access sites *20* "are designed in

21  such a way to preserve laminar flow as far as possible (i.e. not a reservoir

22  arrangement)." (Squitieri, col. 4,11. 32-35).

23      Figure 11 of Squitieri depicts a connection between the arterial graft

24  *53* and a port *46* of an access site *20*. (Squitieri, col. 5, 11. 6667⁻; fig. 11). In

25  this depiction, the port *46* itself is not disposed around the terminal end of

26  the graft *53*. Instead, the port *46* fits within the terminal end of the graft *53*.

27  Figure 12 of Squitieri depicts an access site having inlet and outlet couplings

28  *73, 74* which fit within tubing *(e.g., 88)* to which the access site is to be

29  connected. *(See* Squitieri, col. 6,11. 1420⁻).

5

Appeal No. 2012006569‑
Application No. 10/812,380

In their briefs, the Appellants seek to identify stmctaral differences between the claimed subject matter and the prior art. For example, the Appellants state that:

> In Claimed Invention, the cuff connects the graft and the venous outflow catheter. The cuff is made of biocompatible material. *It encircles the inlet end of the venous out flow catheter* and it is sutured to the outlet end of the graft by an anastomosis (see specification and abstract of the published patent application, US 2005/0215938 Al).... In Squitieri's art, the cuff consists of two reservoirs which connect the ^aft and the venous outflow catheter (see fig 9, US Patent US 6.582,409, Bl, Sheets 5 of 8). The resercoirs are metallic chambers with a silicone membrane.

(App. Br. 8 (italics added)). The Examiner has not provided reasoning with some rational undeipinning sufficient to show that one of ordinary skill in the art would have had reason to modify Squitieri's catheter to include a cuff having an outlet end *disposed about* and connected to an intake end of the venous outflow catheter

In particular. Parks discloses an enteral, feeding device including a ferrule. (Parks, col. 3,11. 67‑68‑ *see* Prior Decision at 7 (FF 11)). Parks describes embodiments in which tubing connects to the ferrule by means of a taper lock. *(See, e.g.,* Parks, col. 6,11. 60-63; col. 7,11. 5054‑; and figs. 7,9 and 13). In each case, the upstream end of the ferrule engages the tubing by being disposed about and connected to ends of the tubing. Parks does not appear to disclose any embodiment in which the downstream end of the fenule engages rnbing by being disposed about and connected to ends of the tabing. *(See, e.g.,* figs. 8 and 10).

6

Appeal No. 2012-006569
Application No. 10/812,380

1    This conclusion is not inconsistent with the Prior Decision. Although

2    the Prior Decision addressed the recited cuff in general terms, the Prior

3    Decision did not specifically address the manner in which the outlet end of

4    the cuff connects to the inlet end of the venous outflow catheter. *(See, e.g.,*

5    Prior Decision at 12,1. 9 22 .13,1⁻). Since neither Squitieri, nor

6    Twardowski, nor Parks discloses at least one limitation recited in each of

7    independent claims 1,13 and 17; and since the Examiner articulates no

8    persuasive reason for modifying Squitieri's shunt system to include this

9    limitation, we do not sustain the rejection of claims 117 ,14⁻5,7⁻10, 12⁻ and

10   18 under § 103(a) as being unpatentable over Squitieri; Twardowski; and

11   Parks. Furthermore, since the Examiner does not cite Trerotola for any

12   teaching which might remedy the deficiencies in the combined teachings of

13   Squitieri, Twardowski and Parks *(see* Ans. 9; Prior Decision at 89⁻ (FF 18)),

14   we do not sustain the rejection of claims 6, 11, 15,16, 19 and 20 under

15   § 103(a) as being unpatentable over Squitieri, Twardowski, Parks and

16   Trerotola.

17

18   DECISION

19   We REVERSE the Examiner's decision rejecting claims 120⁻.

20   <u>REVERSED</u>

21

22

23   Klh

79  A79779



**Comparison of different devices**

U.S. District Court
Northern District of Georgia (Atlanta)
CIVIL DOCKET FOR CASE #: 1:21-cv-02291-SCJ

Khan et al v. Artivion, Inc.                                    Date Filed: 06/01/2021
Assigned to: Judge Steve C. Jones                              Date Terminated: 08/04/2023
                                                                Jury Demand: Plaintiff
Case in other court: USCA- 11th Circuit, 23-12821-D            Nature of Suit: 830 Patent
                                                                Jurisdiction: Federal Question
                     USCA- 11th Circuit, 23-12821-D

                     USCA - 11th Circuit, 23-12821-D

Cause: 28:1338 Patent Infringement


**Plaintiff**

**Nazir Khan**                                    represented by **Nazir Khan**
                                                                150 Glenmora Drive
                                                                Burr Ridge, IL 60527
                                                                312-590-0589
                                                                PRO SE


**Plaintiff**

**Iftikhar Khan**                                 represented by **Iftikhar Khan**
                                                                150 Glenmora Drive
                                                                Burr Ridge, IL 60527
                                                                312-590-0589
                                                                PRO SE


V.

**Defendant**

**Cryolife Inc**                                  represented by **Kathryn Allison Vance**
*TERMINATED: 08/04/2022*                                        Quicker Law, LLC
                                                                900 Circle 75 Parkway
                                                                Suite 100
                                                                Atlanta, GA 30339
                                                                678-750-0455
                                                                Fax: 470-533-1182
                                                                Email:

Appx 80

Kvance@quickerlaw.com
*ATTORNEY TO BE
NOTICED*

**Katrina M. Quicker**
Quicker Law, LLC
900 Circle 75 Parkway
Ste 100
Atlanta, GA 30339
678-750-0450
Fax: 470-533-1182
Email:
kquicker@quickerlaw.com
*ATTORNEY TO BE
NOTICED*

**Defendant**

**Hemosphere**
*TERMINATED: 08/04/2022*

**Defendant**

**Artivion, Inc.**                    represented by **Katrina M. Quicker**
                                     (See above for address)
                                     *LEAD ATTORNEY
                                     ATTORNEY TO BE
                                     NOTICED*

                                     **Kathryn Allison Vance**
                                     (See above for address)
                                     *ATTORNEY TO BE
                                     NOTICED*

| Date Filed | # | Docket Text |
|---|---|---|
| 06/01/2021 | 1 | COMPLAINT with Jury Demand filed by Nazir Khan and Iftikhar Khan. (Filing fee $402.00, receipt number GAN100130339) (Attachments: # 1 Civil Cover Sheet, # 2 Exhibit -Receipt)(eop) Please visit our website at http://www.gand.uscourts.gov/commonly-used-forms to obtain Pretrial |

| | | |
|---|---|---|
| | | Instructions and Pretrial Associated Forms which includes the Consent To Proceed Before U.S. Magistrate form. (Entered: 06/03/2021) |
| 06/02/2021 | 2 | MOTION for Electronic Filing Access by Iftikhar Khan and Nazir Khan. (eop) (Entered: 06/03/2021) |
| 06/02/2021 | 3 | Summons Issued as to Cryolife Inc. (eop) (Entered: 06/03/2021) |
| 06/03/2021 | | Notice of deficiency re AO Form 120. Plaintiff must complete and file AO Form 120. See LR 3.4 and LPR 1.4. Docket the form using the event *AO 120*, located in the Other Filings/Other Documents menu. (eop) (Entered: 06/03/2021) |
| 06/07/2021 | 4 | ORDER REASSIGNING CASE. Case reassigned to Judge Steve C. Jones for all further proceedings. Judge Thomas W. Thrash, Jr. no longer assigned to case. NOTICE TO ALL COUNSEL OF RECORD: The Judge designation in the civil action number assigned to this case has been changed to 1:21-cv-2291-SCJ. Please make note of this change in order to facilitate the docketing of pleadings in this case. Signed by Judge Thomas W. Thrash, Jr. on 6/7/2021. (ah) (Entered: 06/07/2021) |
| 06/07/2021 | | Clerk's Certificate of Mailing as to Iftikhar Khan, Nazir Khan re 4 Order Reassigning Case. (ah) (Entered: 06/07/2021) |
| 06/14/2021 | | Notice of deficiency re AO Form 120. Plaintiff must complete and file AO Form 120. See LR 3.4 and LPR 1.4. Docket the form using the event *AO 120*, located in the Other Filings/Other Documents menu. (ddm) (Entered: 06/14/2021) |
| 06/14/2021 | | Clerk's Certificate of Mailing as to Iftikhar Khan, Nazir Khan re NEF from AO Form 120 - Notice to Parties and AO 120 form. (ddm) (Entered: 06/14/2021) |
| 06/22/2021 | | Submission of 2 MOTION Electronic Filing, to District Judge Steve C. Jones. (rsg) (Entered: 06/22/2021) |
| 06/22/2021 | 5 | ORDER denying 2 Plaintiffs' Motion for Permission for Electronic Case Filing. Signed by Judge Steve C. Jones on 6/22/2021. (ddm) (Entered: 06/22/2021) |
| 06/22/2021 | | Clerk's Certificate of Mailing as to Iftikhar Khan, Nazir Khan re 5 Order. (ddm) (Entered: 06/22/2021) |
| 07/15/2021 | | Submission of Notice of deficiency re AO Form 120 to pro se plaintiffs, to District Judge Steve C. Jones. (ddm)  (Entered: 07/15/2021) |

Appx 82

| 07/15/2021 | 6 | ORDER directing that Plaintiffs immediately comply with Local Rule 3.4, NDGa and file a complete form AO Form 120 so that the Clerk may submit the form to the U.S. Patent and Trademark Office. Plaintiffs shall return a completed form AO 120 on or before August 2, 2021. Signed by Judge Steve C. Jones on 7/15/2021. (ddm) (Entered: 07/15/2021) |
| 07/15/2021 | | Clerk's Certificate of Mailing as to Iftikhar Khan, Nazir Khan re 6 Order, AO 120 Form. (ddm) (Entered: 07/15/2021) |
| 07/30/2021 | 7 | Return of Service Executed by Nazir Khan, Iftikhar Khan. Cryolife Inc served on 7/14/2021, answer due 8/4/2021. (ddm) (Entered: 08/02/2021) |
| 08/02/2021 | 8 | AO Form 120 forwarded to Commissioner. (ddm) (Entered: 08/02/2021) |
| 08/04/2021 | 9 | MOTION for Extension of Time to File Answer re: 1 Complaint, by Cryolife Inc. (Attachments: # 1 Text of Proposed Order)(Quicker, Katrina) Modified on 8/5/2021 (rsg). (Entered: 08/04/2021) |
| 08/09/2021 | 10 | ORDER granting the 9 Consent Motion for Extension of Time, through and including September 3, 2021, for Defendant Cryolife Inc. to respond to 1 Plaintiffs' Complaint. Signed by Judge Steve C. Jones on 8/9/2021. (ddm) (Entered: 08/09/2021) |
| 08/09/2021 | | Clerk's Certificate of Mailing as to Iftikhar Khan, Nazir Khan re 10 Order. (ddm) (Entered: 08/09/2021) |
| 08/24/2021 | 11 | NOTICE of Appearance by Kathryn Allison Vance on behalf of Cryolife Inc (Vance, Kathryn) (Entered: 08/24/2021) |

| 09/03/2021 | 12 | MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM with Brief In Support by Cryolife Inc. (Attachments: # 1 Brief, # 2 Text of Proposed Order, # 3 Exhibit A: US Patent 8747344, # 4 Exhibit B: Illinois Complaint, # 5 Exhibit C: 591 File History Pt. 1, # 6 Exhibit C: 591 File History Pt. 2, # 7 Exhibit C: 591 File History Pt. 3, # 8 Exhibit C: 591 File History Pt. 4, # 9 Exhibit C: 591 File History Pt. 5, # 10 Exhibit C: 591 File History Pt. 6, # 11 Exhibit C: 591 File History Pt. 7, # 12 Exhibit C: 591 File History Pt. 8, # 13 Exhibit C: 591 File History Pt. 9, # 14 Exhibit C: 591 File History Pt. 10, # 15 Exhibit C: 591 File History Pt. 11, # 16 Exhibit C: 591 File History Pt. 12, # 17 Exhibit D: 862 File History, # 18 Exhibit E: 949 File History, # 19 Exhibit F: Hemosphere Certificate of Withdrawal)(Quicker, Katrina) (Entered: 09/03/2021) <br><br> Appx 83 |
| --- | --- | --- |
| 09/03/2021 | 13 | MOTION for Leave to File Excess Pages with Brief In Support by Cryolife Inc. (Attachments: # 1 Brief, # 2 Text of Proposed Order)(Quicker, Katrina) (Entered: 09/03/2021) |
| 09/07/2021 | 14 | ORDER granting 13 Defendant CryoLife, Inc.'s Motion for Leave to File Excess Pages. Defendant may file its Memorandum of Law in Support of Defendant CryoLife, Inc.'s Motion to Dismiss with page limitations not to exceed 37 pages. Signed by Judge Steve C. Jones on 9/7/2021. (ddm) (Entered: 09/07/2021) |
| 09/08/2021 | | Clerk's Certificate of Mailing as to Iftikhar Khan, Nazir Khan re 14 Order. (ddm) (Entered: 09/08/2021) |
| 09/13/2021 | 15 | MOTION to Compel Documents by Iftikhar Khan, Nazir Khan. (ddm) (Entered: 09/15/2021) |
| 09/13/2021 | 16 | NOTICE Of Filing clear copies of Patent 344 and Exhibits by Iftikhar Khan, Nazir Khan. (ddm) (Additional attachment(s) added on 9/16/2021: # 1 Corrected PDF) (ddm). Modified on 9/16/2021 to add color PDF of Patent/exhibits (ddm). (Entered: 09/15/2021) |
| 09/21/2021 | 17 | RESPONSE in Opposition re 12 MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM filed by Iftikhar Khan, Nazir Khan. (bgt) (Entered: 09/22/2021) |
| 09/29/2021 | 18 | RESPONSE in Opposition re 15 MOTION to Compel Documents filed by Cryolife Inc. (Vance, Kathryn) (Entered: 09/29/2021) |

| 10/05/2021 | 19 | REPLY to Response to Motion re 12 MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM filed by Cryolife Inc. (Quicker, Katrina) (Entered: 10/05/2021) |
|---|---|---|
| 10/06/2021 | | Submission of 12 MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM , to District Judge Steve C. Jones. (ddm) (Entered: 10/06/2021) |
| 10/12/2021 | 20 | RESPONSE to Defendant's Reply to Motion re 12 MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM filed by Iftikhar Khan, Nazir Khan. (Attachments: # 1 Exhibit A)(rsg) (Entered: 10/13/2021) |
| 10/12/2021 | 21 | MOTION for Summary Judgment by Iftikhar Khan, Nazir Khan. (Attachments: # 1 Exhibit A)(rsg) --Please refer to http://www.gand.uscourts.gov to obtain the Notice to Respond to Summary Judgment Motion form contained on the Court's website.-- (Entered: 10/13/2021)  <br><br>Appx 84 |
| 10/12/2021 | 22 | REPLY to Response to Motion re 15 MOTION to Compel Documents filed by Iftikhar Khan, Nazir Khan. (rsg) (Entered: 10/13/2021) |
| 10/13/2021 | 23 | RESPONSE in Opposition to Defendant Cryolife Inc.'s Reply in Support 19 of its Motion to Dismiss 12 filed by Iftikhar Khan, Nazir Khan. (ddm) (Entered: 10/14/2021) |
| 10/19/2021 | | Submission of 15 MOTION to Compel Documents, to District Judge Steve C. Jones. (ddm) (Entered: 10/19/2021) |
| 11/02/2021 | 24 | RESPONSE in Opposition re 21 MOTION for Summary Judgment filed by Cryolife Inc. (Vance, Kathryn) (Entered: 11/02/2021) |
| 11/02/2021 | 25 | (contained within 24 ) MOTION for Protective Order by Cryolife Inc. (ddm) (Entered: 11/04/2021) |
| 11/15/2021 | 26 | RESPONSE in Opposition to Defendant Cryolife Inc.'s Memorandum in Opposition to Plaintiffs' Motion for Summary Judgment 21 and Defendant's Motion for Protective Order 25 filed by Iftikhar Khan, Nazir Khan. (ddm) (Entered: 11/16/2021) |
| 11/22/2021 | | Submission of 21 MOTION for Summary Judgment, to District Judge Steve C. Jones. (ddm) (Entered: 11/22/2021) |
| 12/01/2021 | | Submission of 25 MOTION for Protective Order, to District Judge Steve C. Jones. (ddm) (Entered: 12/01/2021) |

| 03/16/2022 | 27 | MOTION to Change Name and Case Caption with Brief In Support by Cryolife Inc. (Attachments: # 1 Text of Proposed Order)(Quicker, Katrina) (Entered: 03/16/2022) |
|---|---|---|
| 04/12/2022 | | Submission of 27 MOTION to Change Name and Case Caption , to District Judge Steve C. Jones. (pdw) (Entered: 04/12/2022) |
| 08/04/2022 | 28 | ORDER directing that Plaintiffs file an Amended Complaint within THIRTY DAYS of the entry of this Order. The Motion to Compel filed by Plaintiffs (Doc. No. 15 ) is DENIED. The Motion for Summary Judgment filed by Plaintiffs (Doc. No. 21 ) is DENIED as premature. Defendant CryoLife's Request for Protective Order (Doc. No. 25 ) in which it requests a stay of proceedings until the Court rules upon the Motion to Dismiss is MOOT. The Court recognizes that after the briefing for the pending motions concluded, Defendant CryoLife filed a Motion to Change Name and Case Caption (Doc. No. 27 ). There has been no response in opposition. Accordingly, Defendant's Motion (Doc. No. 27 ) is GRANTED. IT IS THEREFORE ORDERED that the case caption and the Court's records for the above-captioned action shall be changed from this point forward to indicate the corporate name change of Defendant CryoLife, Inc. to "Artivion, Inc."In addition, pursuant to Federal Rule of Civil Procedure 21, the Court sua sponte drops Hemosphere as a party to this case based on the filings showing that this entity ceases to exist. Doc. Nos. 1 , 2; [12-1], 16, n.1; [12-19]. The Clerk is DIRECTED to terminate Hemosphere as a party-defendant. As stated above, the Court has ORDERED the pro se Plaintiffs to replead their Complaint within THIRTY DAYS of the entry of this Order. In the interim, pursuant to the Court's inherent authority to control the disposition of matters on its docket, the Clerk is DIRECTED to administratively terminate this case from the Court's pending case list. The case shall be immediately reopened upon the filing of the Amended Complaint. Signed by Judge Steve C. Jones on 08/04/2022. (ddm) (Entered: 08/04/2022) |
| 08/04/2022 | | Clerk's Certificate of Mailing as to Iftikhar Khan, Nazir Khan re 28 Order. (ddm) (Entered: 08/04/2022) |
| 08/04/2022 | | Civil Case Terminated. (ddm) (Entered: 08/04/2022) |
| 08/15/2022 | 29 | MOTION for Clarification filed by Iftikhar Khan, Nazir Khan. (ddm) (Entered: 08/16/2022) |
| 08/18/2022 | 30 | ORDER denying 29 Motion for Clarification as the August 4, 2022 Order contains the answer to the question presented. Said Order states that the entire Complaint is to be amended and also states that the [t]he amended complaint shall be replead in an effort to make all claims as clear as possible. Doc. No. 28 , 29 (emphasis added). Plaintiffs are also reminded of the case caption change found on |

Appx 85

| | | |
|---|---|---|
| | | page 31 of the Court's prior Order. Signed by Judge Steve C. Jones on 08/18/2022. (rsg) (Entered: 08/18/2022) |
| 08/18/2022 | | Clerk's Certificate of Mailing as to Iftikhar Khan, Nazir Khan re <u>30</u> Order on Motion for Clarification. (rsg) (Entered: 08/18/2022) |
| 09/01/2022 | <u>31</u> | AMENDED COMPLAINT against Artivion, Inc., with Jury Demand, filed by Nazir Khan, Iftikhar Khan.(ddm) Please visit our website at http://www.gand.uscourts.gov/commonly-used-forms to obtain Pretrial Instructions and Pretrial Associated Forms which includes the Consent To Proceed Before U.S. Magistrate form. (Entered: 09/02/2022) |
| 09/12/2022 | <u>32</u> | MOTION for Extension of Time to File Answer re <u>31</u> Amended Complaint, with Brief In Support by Artivion, Inc.. (Attachments: # <u>1</u> Text of Proposed Order)(Vance, Kathryn) (Entered: 09/12/2022) <div style="border:1px solid">Appx 86</div> |
| 09/14/2022 | <u>33</u> | ORDER granting <u>32</u> Defendant's Motion for Extension of Time, through and including October 15, 2022, to respond to the <u>31</u> Amended Complaint. Signed by Judge Steve C. Jones on 09/14/2022. (ddm) (Entered: 09/14/2022) |
| 09/14/2022 | | Clerk's Certificate of Mailing as to Iftikhar Khan, Nazir Khan re <u>33</u> Order. (ddm) (Entered: 09/14/2022) |
| 10/14/2022 | <u>34</u> | MOTION for Leave to File Excess Pages with Brief In Support by Artivion, Inc.. (Attachments: # <u>1</u> Brief, # <u>2</u> Text of Proposed Order)(Vance, Kathryn) (Entered: 10/14/2022) |
| 10/17/2022 | <u>35</u> | MOTION to Dismiss *Amended Complaint* with Brief In Support by Artivion, Inc.. (Attachments: # <u>1</u> Brief, # <u>2</u> Exhibit A: Declaration of Kathryn A. Vance, # <u>3</u> Text of Proposed Order)(Vance, Kathryn) (Entered: 10/17/2022) |
| 11/04/2022 | <u>36</u> | RESPONSE in Opposition to <u>35</u> MOTION to Dismiss *Amended Complaint* filed by Iftikhar Khan, Nazir Khan. (ddm) (Entered: 11/04/2022) |
| 11/18/2022 | <u>37</u> | REPLY to Response to Motion re <u>35</u> MOTION to Dismiss *Amended Complaint* filed by Artivion, Inc.. (Attachments: # <u>1</u> Exhibit 1: Text Order in Utah Case)(Quicker, Katrina) (Entered: 11/18/2022) |
| 11/30/2022 | <u>38</u> | (FILED WITHOUT LEAVE OF COURT) RESPONSE in Opposition to <u>37</u> Defendant Artivion, Inc.'s Reply in Support of its Motion to Dismiss filed by Iftikhar Khan, Nazir Khan. (ddm) Modified on 12/7/2022 (ddm). (Entered: 12/01/2022) |

| 12/07/2022 | 39 | ORDER proving the following INSTRUCTIONS TO PLAINTIFFS: Plaintiffs must comply with Local Rule 7.1, NDGa and only file one response to a motion. If Plaintiffs are desirous of filing additional responses (also known as surresponses or surreplies), they must in accordance with applicable law, file a motion for surreply and accompanying memorandum of law that includes a valid reason for why they think there should be additional briefing. For purposes of perfecting the record, the Court hereby DECLINES TO CONSIDER the filing at Doc. No. 38 and DIRECTS the Clerk to flag and otherwise mark the filing (at Doc. No. 38 ) as filed without leave of court. Signed by Judge Steve C. Jones on 12/07/2022. (ddm) (Entered: 12/07/2022) |
| --- | --- | --- |
| 12/07/2022 | | Clerk's Certificate of Mailing as to Iftikhar Khan, Nazir Khan re 39 Order. (ddm) (Entered: 12/07/2022) |
| 01/17/2023 | 40 | MOTION to Enter into Court Docket the Ruling of Honorable District Court Judge of Utah That Will Impact Ruling of this Court in Plaintiffs' Patent Infringement Case by Iftikhar Khan, Nazir Khan. (ddm) (Entered: 01/18/2023) |
| 01/30/2023 | | Submission of 34 MOTION for Leave to File Excess Pages , 35 MOTION to Dismiss *Amended Complaint*, to District Judge Steve C. Jones. (pdw) (Entered: 01/30/2023) |
| 01/30/2023 | 41 | RESPONSE in Opposition re 40 MOTION to Enter into Court Docket the Ruling of Honorable District Court Judge of Utah That Will Impact Ruling of this Court in Plaintiffs' Patent Infringement Case filed by Artivion, Inc.. (Vance, Kathryn) (Entered: 01/30/2023) |
| 01/31/2023 | 42 | ORDER granting 34 Defendant's Motion for Leave to File Excess Pages. Signed by Judge Steve C. Jones on 01/31/2023. (ddm) (Entered: 01/31/2023) |
| 01/31/2023 | | Clerk's Certificate of Mailing as to Iftikhar Khan, Nazir Khan re 42 Order. (ddm) (Entered: 01/31/2023) |
| 02/21/2023 | | Submission of 40 MOTION to Enter into Court Docket the Ruling of Honorable District Court Judge of Utah That Will Impact Ruling of this Court in Plaintiffs' Patent Infringement Case, 41 Response in Opposition to Motion, to District Judge Steve C. Jones. (pdw) (Entered: 02/21/2023) |

Appx 87

| 07/19/2023 | 43 | NOTICE by Artivion, Inc. *of Counsel's Change of Address* (Vance, Kathryn) (Entered: 07/19/2023) |
| 07/19/2023 | 44 | NOTICE by Artivion, Inc. re 35 MOTION to Dismiss *Amended Complaint of Supplemental Authority* (Attachments: # 1 Exhibit A: Report and Recommendation)(Vance, Kathryn) (Entered: 07/19/2023) |
| 07/31/2023 | 45 | NOTICE by Artivion, Inc. re 35 MOTION to Dismiss *Amended Complaint of Supplemental Authority* (Attachments: # 1 Exhibit A: Judgment)(Vance, Kathryn) (Entered: 07/31/2023) |
| 08/04/2023 | 46 | ORDER GRANTING Defendant Artivion, Inc.'s Motion to Dismiss Plaintiffs' AmendedComplaint (Doc. No. [35-3]) on the ground of collateral estoppel. As the collateral estoppel issue is determinative, the Court declines to consider the remaining grounds of Defendant's motion. The Court also declines to strike Plaintiffs' opposition brief as untimely. And the Court finds Plaintiffs' sanctions/opposition brief arguments procedurally improper. Plaintiffs' Motion to Enter into Court Docket the ruling of the District Court of Utah (Doc. No. 40 ) construed as a motion for judicial notice pursuant to Federal Rule of Evidence 201 is GRANTED. The Court has taken judicial notice of the Utah District Court's rulings filed by both parties, as well as independently reviewed the Utah District Court's docket in Civil Action No. 2:21-cv-0037. This case stands DISMISSED WITH PREJUDICE. The Clerk is DIRECTED to enter judgment and close this case. Signed by Judge Steve C. Jones on 08/04/2023. (ddm) (Entered: 08/04/2023)   Appx 88 |
| 08/04/2023 | 47 | CLERK'S JUDGMENT entered dismissing action. (ddm)--Please refer to http://www.ca11.uscourts.gov to obtain an appeals jurisdiction checklist-- (Entered: 08/04/2023) |
| 08/04/2023 | | Clerk's Certificate of Mailing as to Iftikhar Khan, Nazir Khan re 47 Clerk's Judgment, 46 Order. (ddm) (Entered: 08/04/2023) |
| 08/04/2023 | | Civil Case Terminated. (ddm) (Entered: 08/04/2023) |
| 08/04/2023 | 48 | AO Form 120 forwarded to Commissioner. (ddm) (Entered: 08/04/2023) |
| 08/04/2023 | | Clerk's Certificate of Mailing as to Iftikhar Khan, Nazir Khan re 48 A.O. Form 120. (ddm) (Entered: 08/04/2023) |
| 08/18/2023 | 49 | MOTION for Attorney Fees with Brief In Support by Artivion, Inc.. (Attachments: # 1 Brief, # 2 Exhibit 1: Declaration of Kathryn A. Vance, # 3 Exhibit 2: Declaration of |

| | | |
|---|---|---|
| | | Katrina M. Quicker, # 4 Text of Proposed Order)(Quicker, Katrina) (Entered: 08/18/2023) |
| 08/21/2023 | 50 | NOTICE OF APPEAL as to 47 Clerk's Judgment, and 46 Order on Motion to Dismiss, Order on Motion for Miscellaneous Relief, by Iftikhar Khan and Nazir Khan. Filing fee $ 505.00, receipt number 100005807. (pjm) (Entered: 08/22/2023) |
| 08/22/2023 | 51 | USCA Appeal Transmission Letter to USCA- Federal Circuit re: 50 Notice of Appeal filed by Nazir Khan and Iftikhar Khan. (pjm) Modified on 8/22/2023 to correct text (pjm). (Additional attachment(s) added on 8/22/2023: # 1 Corrected USCA Transmittal Letter) (pjm). (Entered: 08/22/2023) |
| 08/22/2023 | 52 | Transmission of Certified Copy of Notice of Appeal, Judgment, Order and Docket Sheet to US Court of Appeals- Federal Circuit re: 50 Notice of Appeal. (pjm) (Entered: 08/22/2023) |
| 08/23/2023 | 53 | RESPONSE in Opposition re 49 MOTION for Attorney Fees filed by Iftikhar Khan, Nazir Khan. (Attachments: # 1 Appendix A, # 2 Appendix B)(rsg) Modified to edit file date on 8/25/2023 (dnb). (Entered: 08/24/2023)<br><br>Appx 89 |
| 08/23/2023 | 54 | MOTION for Reconsideration re 46 Order on Motion to Dismiss by Iftikhar Khan, Nazir Khan. (rsg) (Entered: 08/24/2023) |
| 08/24/2023 | 55 | CORRECTED MOTION for Reconsideration re 46 Order on Motion to Dismiss, by Iftikhar Khan, Nazir Khan. (rsg) (Entered: 08/25/2023) |
| 08/30/2023 | 56 | DOCUMENT FILED IN ERROR USCA Acknowledgment of 50 Notice of Appeal filed by Nazir Khan, and Iftikhar Khan. Case Appealed to USCA- 11th Circuit. Case Number 23-12821-D. (pjm) Modified on 8/31/2023 (pjm). (Entered: 08/30/2023) |
| 08/31/2023 | 57 | USCA Acknowledgment of 50 Notice of Appeal filed by Nazir Khan, and Iftikhar Khan. Case Appealed to USCA- Federal Circuit. Case Number 23-2347-KH. (pjm) (Entered: 08/31/2023) |
| 08/31/2023 | 58 | USCA ORDER:Order deactivating appeal. Service as of this date by the Clerk of Court. The appeal will be reactivated upon entry of the order disposing of the last such outstanding motion re: 50 Notice of Appeal filed by Nazir Khan, Iftikhar Khan. Case Appealed to USCA- Federal Circuit. Case Number 23-2347-KH. (pjm) Modified on 8/31/2023 to correct text (pjm). (Entered: 08/31/2023) |

| 08/31/2023 | 59 | Appeal Notice: Clerk's Notice to the Originating Tribunal: Upon disposition of the motion(s) subject to FRAP 4(a)(4), please transmit a certified copy of the docket entries. Service as of this date by the Clerk of Court re: 50 Notice of Appeal. Case Appealed to USCA- Federal Circuit. Case Number 23-2347-KH. (pjm) (Entered: 08/31/2023) |
|---|---|---|
| 09/07/2023 | | Submission of 49 MOTION for Attorney Fees , to District Judge Steve C. Jones. (pdw) (Entered: 09/07/2023) |
| 09/08/2023 | 60 | REPLY to Response to Motion re 49 MOTION for Attorney Fees filed by Artivion, Inc.. (Vance, Kathryn) (Entered: 09/08/2023) |
| 09/08/2023 | 61 | RESPONSE in Opposition re 55 MOTION for Reconsideration re 46 Order on Motion to Dismiss,,,,, Order on Motion for Miscellaneous Relief,,,, filed by Artivion, Inc.. (Vance, Kathryn) (Entered: 09/08/2023) |
| 09/11/2023 | 62 | Appeal Remark re: 50 Notice of Appeal. Jurisdiction: FRAP 4 motion pending in district court as to Appellant Iftikhar Khan DE# 55 . Case Appealed to USCA- 11th Circuit. Case Number 23-12821-D. (pjm) (Entered: 09/11/2023) |
| 09/22/2023 | 63 | SUR-REPLY re 49 MOTION for Attorney Fees filed by Iftikhar Khan, Nazir Khan. (rsg) (Entered: 09/25/2023)<br><br>Appx 90 |
| 09/22/2023 | 64 | REPLY BRIEF in Opposition re 55 MOTION for Reconsideration. (Attachments: # 1 Exhibit C, # 2 Exhibit D)(rsg) (Additional attachment(s) added on 10/6/2023: # 3 Correct Main Document) (rsg). Modified on 10/16/2023 per doc.#69 Order(rsg). (Entered: 09/25/2023) |
| 09/26/2023 | | Submission of 49 MOTION for Attorney Fees , 55 MOTION for Reconsideration re 46 Order on Motion to Dismiss, 54 MOTION for reconsideration re 46 Order on Motion to Dismiss to District Judge Steve C. Jones. (pdw) (Entered: 09/26/2023) |
| 10/04/2023 | 65 | MOTION to SET ASIDE 49 MOTION for Attorney Fees by Iftikhar Khan, Nazir Khan. (rsg) (Entered: 10/05/2023) |
| 10/05/2023 | 66 | NOTICE by Artivion, Inc. re 63 Reply Brief, 64 Response in Opposition to Motion *of Clerical Error* (Attachments: # 1 Exhibit A: Sur-Reply, # 2 Exhibit B: Reply)(Vance, Kathryn) (Entered: 10/05/2023) |
| 10/06/2023 | | Notification of Docket Correction re 64 Response in Opposition to Motion. Updated event to add correct main document to entry. (rsg) (Entered: 10/06/2023) |

| 10/11/2023 | 67 | NOTICE by Artivion, Inc. re 49 MOTION for Attorney Fees *of Supplemental Authority* (Attachments: # 1 Exhibit A: Memorandum Decision and Order)(Vance, Kathryn) (Entered: 10/11/2023) |
|---|---|---|
| 10/12/2023 | 68 | USCA Inquiry regarding status 55 MOTION for Reconsideration re: 46 Order on Motion to Dismiss, Order on Motion for Miscellaneous Relief, filed by Nazir Khan, Iftikhar Khan. No ruling has been issued. Case Appealed to USCA- 11th Circuit. Case Number 23-12821-D. (pjm) (Entered: 10/12/2023) |
| 10/13/2023 | 69 | ORDER denying 54 55 Motion for Reconsideration. For purposes of perfecting the record, the Court DIRECTS the Clerk to amend the description of Doc. No. 64 to indicate that it is Plaintiffs' reply brief. Plaintiffs' request for sanctions is DENIED. The Clerk is DIRECTED to forward a copy of this Order to the United States Court of Appeals for the Federal Circuit in response to the appeal inquiry at Doc. No. 68 . Signed by Judge Steve C. Jones on 10/13/23. (rsg) (Entered: 10/16/2023) |
| 10/16/2023 |  | Clerk's Certificate of Mailing as to Iftikhar Khan, Nazir Khan re 69 Order on Motion for Reconsideration. (rsg) (Entered: 10/16/2023) |
| 10/16/2023 |  | Documents forwarded to USCA re 68 USCA Appeal Notice, 69 Order on Motion for Reconsideration. Case Appealed to USCA - 11th Circuit Case Number 23-12821-D. (rsg) (Entered: 10/16/2023)<br><br>Appx 91 |
| 10/16/2023 | 71 | MOTION to Dismiss Plaintiff Iftikhar Khan from lawsuit, by Iftikhar Khan. (rsg) (Entered: 10/17/2023) |
| 10/17/2023 | 70 | RESPONSE in Opposition re 65 MOTION to SET ASIDE 49 MOTION for Attorney Fees filed by Artivion, Inc.. (Vance, Kathryn) (Entered: 10/17/2023) |
| 10/19/2023 | 72 | REPLY to Response to Motion re 65 MOTION to SET ASIDE 49 MOTION for Attorney Fees filed by Nazir Khan. (rsg) (Entered: 10/20/2023) |
| 10/23/2023 |  | Submission of 65 MOTION to SET ASIDE 49 MOTION for Attorney Fees , to District Judge Steve C. Jones. (pdw) (Entered: 10/23/2023) |
| 10/25/2023 |  | Clerk's Certificate of Mailing to United States Court of Appeals for the Federal Circuit re 69 Order on Motion for Reconsideration. (rsg) (Entered: 10/25/2023) |